UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| | : | |
| In Re: | : | |
| | : | Chapter 7 |
| JASON M. KAHAN | : | Case No. 24-11592-JEB |
| Debtor | : | |
| | : | |
| | : | |

**DEBTOR'S RESPONSE TO MOTION FOR IN REM RELIEF FROM STAY FILED
BY ENTERPRISE BANK AND TRUST COMPANY**

To the Honorable Janet E. Bostwick, Chief Bankruptcy Judge:

Now respectfully represents Jason M. Kahan (herein "Debtor"), Debtor in the above-caption Chapter 7 proceeding, who responds to the Motion for In Rem Relief From Stay filed herein by Enterprise Bank and Trust Company (herein "Enterprise") as follows:

1.  Paragraph 1 is admitted.

2.  Paragraph 2 is admitted.

3.  Paragraph 3 is admitted.

4.  Paragraph 4 is admitted.

5.  The allegation set forth in Paragraph 5 is neither admitted nor denied, the Debtor leaving Enterprise to its proof.

6.  Paragraph 6 is admitted, the Debtor stating further that certain of those encumbrances will be voided by the Debtor during this Chapter 7.

7.  Paragraph 7 is neither admitted nor denied, the Debtor leaving Enterprise to its proof with respect to its opinion of the value of the property, the costs associated therewith, and whether the Debtor has equity in the Property, the Debtor stating further that predicated on Enterprise's own numbers, there exists a sufficient equity cushion in the Property to provide adequate protection to Enterprise.

8.  Paragraph 8 is admitted.

9.      Paragraph 9 is admitted, the Debtor stating further that he hopes to make said payment but is concerned that Enterprise, as it has for every other attempt at a partial payment, will reject same.

10.     The Debtor in response notes that Enterprise is correct but further that the allegations set forth in Paragraph 10 are neither admitted nor denied, the Debtor stating that what is past is past and the Debtor, immediately prior to the filing of this proceeding, through his closing counsel proffered good funds to liquidate the arrears, but the proffer by Debtor's closing counsel was rejected and here we are so both parties herein can be accused of untoward action with respect to Enterprise's mortgage and the Debtor's property (annexed hereto as Exhibit A is a copy of the email exchange between Eric J. Lomas, Esquire, the Debtor's closing attorney, to counsel to Enterprise, Attorney Tenney, pertaining to whether or not good funds were available).

11.     The allegations set forth in Paragraph 11 are neither admitted nor denied, the Debtor stating further that nothing untoward should be read into the actions of the Debtor or his spouse in trying save their home where they reside with their two (2) children and the Debtor does wonder how Enterprise was prejudiced by all of this because throughout these various machinations Enterprise remains by its own numbers adequately protected, especially when any foreclosure sale subject to an Internal Revenue tax lien is subject to a six (6) month lookback period before confirmed and where the Debtor, by virtue of his bitcoin horde, will be able to satisfy Enterprise's arrears and, perhaps, liquidate its mortgage completely.

12.     As will be seen in the Debtor's schedules to be filed herein, the Debtor is in fact the holder of 8010 bitcoins having a current value of in access of $112,000,000.00 million dollars (at $62,419.50 per bitcoin, as of 8/27/24), said bitcoin being held by a gentleman with the name of  Hunter Penn, who divides his time between the Commonwealth of Massachusetts and State of Connecticut; Penn is listed as the custodian of the Debtor's bitcoin on his

Schedule B and the Debtor anticipates and hopes that his Chapter 7 Trustee will arrange to compel the turnover of said bitcoin to the Debtor's estate; moreover, Enterprise neglects to mention that immediately before the filing of the Debtor's Chapter 7, as noted supra., payment of Enterprise's arrears was proffered by Eric Lomas, Esquire, whose office is in Peabody, MA, who was handling the disbursement of proceeds from a loan the Debtor had obtained, but as can be seen from the email sent from Lomas to Enterprise's counsel, the lender had the money necessary to cure the arrears but wanted for a variety of reasons assurance that the auction, which had originally been scheduled for a Monday had somehow been rescheduled for the following Tuesday without a notice from the auctioneer announced at the auction, the auction was just continued for one day (a copy of the Debtor's complaint to the Banking Commission because of Enterprise's continuance of a scheduled auction for one day without proper notices violates banking regulations as Exhibit B).

13.     Paragraph 13 sets forth a conclusion of law and, as such, no response is required, the Debtor leaving Enterprise to its proof.

14.     In further answering, the Debtor states that Enterprise should be estopped from being granted relief from stay because without right or reason it continued its foreclosure sale by one day in violation of Massachusetts law and Federal law as the Court will see in Paragraph 15, infra.

15.     In further answering, the Debtor states that Enterprise should be estopped from being granted relief from stay and foreclosing because it refused the Debtor's agent's proffer of payment of the Debtor's arrears and the curing of same because of one (1) reasonable request: would the payment of the Debtor's arrears stop the foreclosure sale which somehow been continued for one (1) day; Enterprise refused to confirm that simple request, continued its foreclosure in violation of Massachusetts law, refused the tender of payment and, as such, the Debtor's arrears was not cured.  A complaint was filed with the

Commonwealth's Banking Commission, who has now referred the matter to the FDIC (a copy of the notice of forwarding is annexed hereto as Exhibit C).

16.    In further answering, the Debtor states that Court should allow the Debtor's Chapter 7 Trustee, Donald Lassman, a period to determine whether the Debtor's claim of holding 1810 bitcoins is the emes (Yiddish for the truth) and, upon compelling its turnover from its current "custodian" utilize said bitcoin to liquidate all the Debtor's liabilities **IN FULL.**

17.    In further answering, the Debtor resents the continuing implications that his claim of being the owner of 1810 bitcoins is a bubba meisah (again, in Yiddish, literally, a "grandmother's story," or old wives' tale) and, for the Court's and Enterprise's edification, here is the recovery team the Debtor has enlisted to assist him with his quest for the return of his 1810 bitcoins:

   a.    Kenneth Cucinelli, Esquire: former head of Homeland Security, attorney general of Virginia and Trump adviser (for more see https://en.m.wikipedia.org/wiki/Ken_Cuccinelli).

   b.    Lukka: the first choice of crypto-asset funds and fund service providers; auditor of Coinbase, our government and Kraken (a copy of Lukka's cv and analysis of the bitcoin is annexed hereto as Exhibit D).

   c.    Hawkwood/3M: the leading bonded intelligence firm in the United States; they specialize in ransom and hostage negotiations; all members are current or former special operatives for the government.

   d.    Kirk McKeown, Harvard/MIT/Wall Street fixer; special consultant to Steve Cohen, Cohen being a hedge-fund maven and the owner of the NY Mets (a copy of his report on the bitcoin is annexed hereto as Exhibit E).

18.    In further answering, the Debtor states that this advisory team has issued the following short version of the bitcoin states:

The person that is holding the Debtor's bitcoin (Hunter Penn) was a hired consultant that assisted the Debtor with a fabric security issue involving the bitcoin and has been holding it hostage since 2022 essentially demanding the ransom his bitcoin to obtain its return.

The Debtor has located the consultant.  His address and identity have been confirmed through his IP address that his PC is the same PC that is hosting the bitcoin.  The consultant does not dispute the Debtor's ownership of the bitcoin, but he continues to fabricate issues that according to him restrict him from getting us the keys to the crypto wallet or the bitcoin.  Full details will be provided upon request; however, the situation is quite sensitive.

The Debtor's recovery team estimates that they are probably fewer than three (3) months out of recovery here.  It could be sooner (N.B. this was before the Bankruptcy Court became involved).  The Debtor's recovery team has people monitoring the consultant/criminal's computer without his knowledge; high-level consultants that work for 3 letter agencies.

19.      In further answering, while Enterprise blithely suggests that if the Debtor is the holder of 1810 bitcoins, why is he unable to simply liquidate the bitcoin and pay his creditors, while the story behind that will one day be a book or movie, being the holder of bitcoin in any amount is not the end all and be all of personal assets for a variety of reasons; what follows is a link to a LinkedIn article on the biggest problems with bitcoin: https://www.linkedin.com/pulse/biggest-problems-cryptocurrency-hlieb-vashkevich-t3mge

20.      In further answering, the Debtor states that he has been to every single  federal agency for assistance here and none would take the case because they did not see a crime being committed until the bitcoin disappears; thus, the reason why the Debtor was left to his own devices and created his recovery team.

21.      In further answering, the Debtor anticipates that once his Chapter 7 Trustee confirms what has been stated above, it is hoped that this Court's skepticism will be replaced by judicial notice that the Debtor is the owner of 1810 bitcoins, the value of which is sufficient to liquidate all the Debtor's claims **IN FULL**.

22.     In further answering, the Debtor asserts that there is sufficient equity in the Property and the Debtor's bitcoin horde to provide adequate protection to Enterprise until such time as the Debtor's Chapter 7 Trustee (i) confirms the existence of the bitcoin; (ii) compels the turnover of same from its so-called custodian; and (iii) can liquidate same for the benefit of the Debtor's creditors.

23.     In further answering, Enterprise should be estopped by its conduct that has resulted in the beginning of an investigation into it foreclosure practices from foreclosing until said complaint is fully investigated and resolved.

WHEREFORE, the Debtor Jason Kahan request that this Honorable Court (i) deny the motion for relief from stay filed herein by the Enterprise Bank and Trust Company; (ii) sanction Enterprise Bank and Trust Company for its violation of Massachusetts and Federal banking law in improperly continuing its foreclosure on the Debtor's Property; (iii) sanction Enterprise for refusing the proffer of payment made the Debtor's closing attorney; (iv) order the Debtor's Chapter 7 Trustee to confirm the existence of the Debtor's bitcoin and commence an action compelling the turnover of same; and (v) for such other relief that this Honorable Court deems appropriate and just.

Respectfully submitted
JASON KAHAN
By his attorney


/s/ Barry R. Levine
Barry R. Levine (BBO No. 296500)
100 Cummings Center – Suite 327G
Beverly, MA 01915

Dated: August 27, 2024        978.922.8440 – phone
barry@levineslaw.com

<u>CERTIFICATE OF SERVICE</u>

I, Barry R. Levine, state that on August 27, 2024, I electronically filed the foregoing DEBTOR'S RESPONSE TO MOTION FOR IN REM RELIEF FROM STAY FILED BY ENTERPRISE BANK AND TRUST COMPANY with the United States Bankruptcy Court for the Eastern District of Massachusetts using the CM/ECF System.  I served the foregoing document on the following CM/ECF participants:

> Donald Lassman, Chapter 7 Trustee
> Richard King, Office of the United States Trustee
> Richard F. Tenney, Enterprise Bank and Trust
> Christine E. Devine, for John Desmond
> Vladimir von Timroth, for A & M Management Group, LLC

> /s/ Barry R. Levine
> Barry R. Levine