UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JASON M. KAHAN, | ) | Chapter 7 |
| | ) | Case No. 24-11592-JEB |
| Debtor | ) | |
| | ) | |
| WILLIAM K. HARRINGTON, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| REGION 1, | ) | |
| | ) | Adv. Proc. No. |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON M. KAHAN, | ) | |
| | ) | |
| Defendant | ) | |

**<u>COMPLAINT</u>**

By this Complaint, William K. Harrington, the United States Trustee for Region 1 (the "<u>United States Trustee</u>"), objects to the discharge of Jason M. Kahan ("<u>Kahan</u>"), the debtor in the above-captioned chapter 7 case, pursuant to section 727(a)(2), (3), (4), (5), (7) and (c)(1) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

Over the course of approximately one year, across four cases filed by Kahan or his insiders, Kahan has demonstrated a pattern of concealment, obfuscation, false oaths, and other conduct that is antithetical to the bankruptcy system. As one of several examples highlighted below, Kahan transferred funds out of his accounts prior to commencing this case, concealed the transfers by omitting them from the statement of financial affairs, concealed the accounts by failing to list them in his schedules, and continued to use estate funds in those accounts after commencing the case.

1

Kahan's acts and omissions should be considered in the context of his sophistication, experience, and knowledge of his obligations to the estate. Within the 6 months preceding this chapter 7 case, the Court dismissed Kahan's chapter 13 case and converted his company's chapter 11 case to chapter 7—in each instance highlighting the debtors' failure to comply with their obligations under the Bankruptcy Code. Kahan's continuation of this pattern of misconduct in the present case drives home the conclusion that he is not the honest but unfortunate debtor for whom the bankruptcy discharge was intended. For these and other reasons described below, the United States Trustee respectfully requests that Kahan be denied a discharge of his debts.

## PARTIES

1.      The plaintiff is the United States Trustee, with a usual place of business at Room 1000, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Boston, Massachusetts 02109.

2.      The defendant is Kahan, an individual with a last known address of 23 Sagamore Lane, Boxford, Massachusetts.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to hear this adversary proceeding under 28 U.S.C. § 157(b) and 1334(a) and (b) and 11 U.S.C. § 727(a), because it arises under title 11 of the United States Code or arises in or is related to the above-captioned bankruptcy case under title 11 of the United States Code.

4.      This adversary proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(J).

5.      Venue is proper in this Court under 28 U.S.C. § 1409(a).

6.      Pursuant to Fed. R. Bankr. P. 7008, the United States Trustee states that he consents to entry of final orders and/or judgment by the Court.

2

Document      Page 3 of 29

**STANDING AND TIMELINESS OF THE COMPLAINT**

7.      Sections 307 and 727(c)(1) of the Bankruptcy Code and Fed. R. Bankr. P. 7001(4) authorize the United States Trustee to commence an adversary proceeding to object to the granting of an individual chapter 7 debtor's discharge.

8.      By order dated November 20, 2024, the Court extended the United States Trustee's deadline for objecting to the Defendant's discharge through January 3, 2025. This Complaint is therefore timely.

**FACTS**

**A.  The Kahan Chapter 13 Case.**

9.      On November 7, 2023, Kahan filed a petition under chapter 13 of the Bankruptcy Code, commencing case number 23-11830-JEB (Bankr. D. Mass.) (the "Chapter 13 Case").

10.     At the time Kahan filed the Chapter 13 Case, there were one or more pending lawsuits against him.

11.     On December 6, 2023, Kahan filed the following documents in the Chapter 13 Case: (i) Schedule A/B, C, D, E/F, G, H, I, and J (as amended on or about January 12, 2024, the "C13 Schedules"); (ii) Declaration About An Individual Debtor's Schedules ("C13 Declaration"); and (iii) Statement of Financial Affairs ("C13 SOFA").

12.     Kahan electronically signed the C13 Declaration stating under penalty of perjury that the C13 Schedules were true and correct.

13.     Kahan electronically signed the C13 SOFA stating under penalty of perjury that the answers contained therein was true and correct.

14.     In response to Question 7 on the C13 Schedule A/B, which asked whether Kahan owned any electronics, Kahan answered, "No."

15.    Upon information and belief, Kahan's verified answer to Question 7 was false.

16.    In response to Question 12 on the C13 Schedule A/B, which asked whether Kahan owned any jewelry, Kahan answered, "No."

17.    Upon information and belief, Kahan's verified answer to Question 12 was false.

18.    In response to Question 19 on C13 Schedule A/B, which asked whether Kahan owned interests in any incorporated or unincorporated businesses, including an LLC, Kahan answered, "No."

19.    Kahan's verified answer to Question 19 was false.

20.    At all times during the pendency of the Chapter 13 Case, Kahan owned an interest in WJH Elm Street Somerville, LLC that was not disclosed in the C13 Schedules or SOFA.

21.    At all times during the pendency of the Chapter 13 Case, Kahan owned an interest in Cedar Street Development, LLC that was not disclosed in the C13 Schedules or SOFA.

22.    At all times during the pendency of the Chapter 13 Case, Kahan owned an interest in 74-76 Dana Street, LLC that was not disclosed in the C13 Schedules or SOFA.

23.    As of the petition date in the Chapter 13 Case through the date on which Kahan filed the C13 Schedules, Kahan owned interests in Somer Hill, Inc., Box Capital, Inc., Local Ventures Group, LLC, and 69 Rush Street, LLC, which were not disclosed in the C13 Schedules or SOFA.

24.    Upon information and belief, as of the petition date in the Chapter 13 Case through the date on which Kahan filed the C13 Schedules, Kahan had interests in other business organizations that were not disclosed in the C13 Schedules or SOFA.

25.     In response to Questions 37 through 44 on C13 Schedule A/B, which asked Kahan to identify any legal or equitable interests in business-related property, Kahan identified only

accounts receivable or commissions previously earned from Kronos Collaborative Inc in the amount of $0.

26.    In response to Question 42 on C13 Schedule A/B, which asked Kahan whether he held any interests in partnerships or joint ventures, Kahan answered, "No."

27.    In response to Question 53 on C13 Schedule A/B, which asked Kahan whether he had property not otherwise listed, Kahan identified interests in property located at 141 Walnut Street, Somerville, MA with a value of $0 and property located at 0 Malvern Ave, Somerville, MA with a value of $0.

28.    Upon information and belief, Kahan owned membership interests or other rights in Walnut Street 141 Development, LLC and Zero Malvern LLC, which owned the properties identified in Kahan's response to Question 53.

29.    Kahan identified the total value of his assets in the Chapter 13 Case as $860,222.00.

30.    Kahan identified the total amount of his liabilities in the Chapter 13 Case as $5,842,234.85.

31.    On C13 Schedule I, Kahan listed gross income of $10,625 per month.

32.    On C13 Schedule J, Kahan listed expenses of $8,495 per month, comprised of $7,500 on home ownership; $400 on utilities; $395 on food and housekeeping supplies; $0 for all other categories.

33.    In response to Question 4 on the C13 SOFA, which asked whether Kahan had "any income from employment or from operating a business during this year or the two previous calendar years," Kahan answered, "No."

34.    In response to Question 5 on the C13 SOFA, which asked whether Kahan had "any other income during this year or the two previous calendar years," Kahan answered, "No."

35.    Kahan's answers under oath to Questions 4 and/or 5 of the C13 SOFA were false.

36.    In response to Question 18 on the C13 SOFA, which asked whether Kahan had transferred any property outside the ordinary course of business or financial affairs in the two years preceding the Chapter 13 Case, Kahan answered, "No."

37.    Upon information and belief, Kahan's answer under oath to Question 18 on the C13 SOFA was false.

38.    In response to Question 27 on the C13 SOFA, which asked whether Kahan had owned or had a connection to any businesses within the four years preceding the Chapter 13 Case, Kahan identified only Kronos Collaborative, Inc.

39.    Kahan's answer to Question 27 on the C13 SOFA was false.

40.    Upon information and belief, Kahan had ownership interests or other material connections to more than one dozen other businesses during the relevant period for Question 27.

41.    Upon information and belief, within the four years preceding the Chapter 13 case, Kahan had ownership interests in or other material connections to at least the following entities: (i) WJH Elm Street Somerville, LLC; (ii) Cedar Street Development, LLC; (iii) Somer Hill, Inc.; (iv) Box Capital, Inc.; (v) Somerville Construction Development, Inc.; (vi) 69 Rush Street, LLC; (vii) Walnut Street 141 Development, LLC; (viii) Zero Malvern LLC; (ix) 227 Havre Street LLC; (x) Zero Dane LLC; (xi) 72 Dana Street, LLC; (xii) 74-76 Dana Street, LLC; (xiii); Coliseum Studio Inc; (xiv) Coliseum Fund I LLC; (xv) Coliseum Asset Management, LLC; and (xvi) Boardman Holdings, LLC.

42.    On February 29, 2024, the Court held a hearing in the Chapter 13 Case.  At the hearing, the Court expressed concerns regarding Kahan's "lack of disclosure" and "lack of compliance", and observed it was "hard to believe that it has taken [Kahan] more than three months

6

to file schedules and statements that are accurate, particularly being a sophisticated businessperson. . . . ."

43.     On March 1, 2024, the Court entered an Order Dismissing Case, in which the Court discussed "concerns regarding Kahan's good faith, including Kahan's inaccurate initial filings, with omissions of key creditors, and the Debtor's failure to file complete and accurate schedules and statement of affairs in the over 16 weeks the case has been pending," and noted that "[s]uch inaccuracies and omissions are particularly troubling given the sophistication of the Debtor."

44.     At the time the Chapter 13 Case was dismissed, there were still one or more pending lawsuits against Kahan.

**B.  The Bassa Case**

45.     Kahan's spouse is Olga Bassa ("Bassa").

46.     On March 1, 2024, Bassa filed a voluntary petition under chapter 13, commencing case number 24-10404 (Bankr. D. Mass.) (the "Bassa Case").

47.     Bassa filed Schedule J in the Bassa Case wherein she listed expenses of $10,350 per month, comprised of $7,700 on home ownership; $1,000 on utilities; $1,400 on food and housekeeping supplies; $100 on medical and dental expenses; $100 on entertainment, clubs, recreation, newspapers, magazines, and books; $50 on personal care products and services; and $0 for all other categories.

48.     On April 1, 2024, Bassa filed a Chapter 13 Plan in the Bassa Case, which proposed among other things, to pay allowed secured and unsecured claims by a contribution from Kahan.

49.     The Chapter 13 Plan stated that (a) Kahan owned 1807 bitcoins with a then fair market value of $128,322,631; and (b) Kahan intended to liquidate bitcoin in an amount sufficient to satisfy all allowed claims against the Debtor.

50.     At the time Kahan offered this funding, he did not have access to – or the ability to liquidate – the alleged bitcoin.

51.     At the time Kahan made the offer to contribute bitcoin to fund Bassa's Chapter 13 Plan, he knew he did not have access to the alleged bitcoin and did not have the ability to liquidate the alleged bitcoin.

52.     Upon information and belief, Kahan lacked a reasonable basis to believe he would be able to liquidate the alleged bitcoin in time to satisfy claims in accordance with the terms of Bassa's Chapter 13 Plan.   In fact, as of December 2024, Kahan asserts he still does not have access to or the ability to liquidate the alleged bitcoin.

53.     The Bassa Plan did not disclose that Kahan lacked access to the alleged bitcoin and was unable to liquidate the alleged bitcoin at the time the Chapter 13 Plan was filed.

**C.  The WJH Case**

54.     On June 3, 2024, WJH Elm Street Somerville, LLC ("WJH") filed a voluntary petition under chapter 11, commencing case number 24-11110 (Bankr. D. Mass) (the "WJH Case").

55.     Kahan owned 100% of the membership interest in WJH.

56.     As WJH's managing member, Kahan controlled WJH and its records.

57.     WJH filed Schedules in the WJH Case, affirmed by Kahan, stating total liabilities of $1,839,343, comprised predominantly of three mortgage loans.

58.     On June 3, 2024, the United States Trustee sent the Operating Guidelines and Reporting Requirements For All Chapter 11 Cases (the "Operating Guidelines") to WJH's counsel, Barry Levine, Esq., which included requests for tax returns, financial statements, bank statements, and other information regarding WJH's financial condition and transactions.

59.     The Operating Guidelines also described WJH's obligations to submit monthly operating reports, pay quarterly fees, open a debtor-in-possession bank account, and disclose significant events affecting WJH's business to the United States Trustee.

60.     On June 11, 2024, the United States Trustee sent a follow-up request seeking still-outstanding financial information and documents from WJH.

61.     On July 1, 2024, Kahan appeared at the meeting of creditors of WJH and testified under oath as WJH's representative. At the meeting, WJH testified that the information contained in the schedules and statement of financial affairs was true and correct to the best of his knowledge.

62.     Kahan testified that he had personally guaranteed the three mortgage loans.

63.     Kahan did not identify himself as a co-debtor for the loans on Schedule H in the WJH Case.

64.     On July 26, 2024, the Court entered an Order in the WJH Case approving a sale of WJH's real estate for $1,900,000.

65.     Based on the amount of the sale price and the amount of liabilities stated in the Schedules, Kahan had reason to believe his equity interest in WJH was worth significantly more than $1,000.

66.     On July 29, 2024, the United States Trustee sent another follow-up request seeking still-outstanding financial information and documents from WJH.

67.     On August 9, 2024, the United States Trustee sent another follow-up request seeking still-outstanding financial information and documents from WJH.

68.     The Statement of Financial Affairs filed in the WJH Case, signed by Kahan, were inaccurate in multiple respects.  Kahan failed to identify a lawsuit filed by the City of Somerville

against WJH.  Kahan failed to identify the departure of managing member Reginaldo Schuwenck within one year prior to the filing of the WJH Case.

69.     The extent of inaccuracies in the WJH Schedules and Statement of Financial Affairs is unclear because Kahan, on behalf of WJH, failed to provide the financial and business information requested by the United States Trustee.

70.     Kahan also failed to provide records regarding WJH's debtor-in-possession bank account, including records that one was opened as required.

71.     Kahan failed to submit monthly operating reports disclosing WJH's financial activities and postpetition financial condition during the WJH Case.

72.     Kahan failed to voluntarily disclose to the United States Trustee in the WJH Case that Kahan had filed the Chapter 7 Case (defined below) on August 7 and therefore had lost his right to manage and control WJH.

73.     On August 27, 2024, the Court entered an Order converting the WJH Case to chapter 7 due to "the Debtor's failure to comply with its obligations under the Code."

**D.  The Kahan Chapter 7 Case**

74.     On August 7, 2024, Kahan filed a petition under chapter 7 of the Bankruptcy Code, commencing the above-captioned chapter 7 case (the "Chapter 7 Case").

75.     At the time the Chapter 7 Case was commenced, there was one or more pending lawsuits against Kahan.

76.     On September 11, 2024, Kahan filed the following documents in the Chapter 7 Case: (i) Schedule A/B, C, D, E/F, G, H, I, and J (the "C7 Schedules"); (ii) Declaration About An Individual Debtor's Schedules ("C7 Declaration"); and (iii) Statement of Financial Affairs ("C7 SOFA").

77. Kahan electronically signed the C7 Declaration stating under penalty of perjury that the C7 Schedules were true and correct.

78. Kahan electronically signed the C7 SOFA stating under penalty of perjury that the answers contained therein was true and correct.

79. Kahan's initial meeting of creditors was scheduled for September 24, 2024.

80. On September 16, 2024, the United States Trustee sent an email to Kahan's bankruptcy counsel, Barry Levine, Esq. ("Attorney Levine"), requesting documents and information relating to an inquiry regarding Kahan's schedules, statements, financial condition and transactions.

81. On September 17, 2024, the chapter 7 trustee requested copies of all responses, information, and documents requested by the United States Trustee.

82. The Debtor did not provide the requested responses, documents, and information by the September 24 meeting. The meeting did not occur and was rescheduled to October 8.

83. On October 8, Kahan provided a written response to the United States Trustee's email inquiry, wherein Kahan professed to lack explanations or documentation concerning multiple requests. For example, Kahan claimed that his tax returns for 2020, 2021, 2022, and 2023 had been prepared but he did not have access to them and would provide copies once he received them. To date, Kahan has not produced any tax returns or confirmed whether they were filed.

84. Kahan also could not explain the substantial increase in his expenses between his Chapter 13 Case and his Chapter 7 Case.

85. Kahan provided other misleading, false, and/or incomplete answers. For example, the United States Trustee (and chapter 7 trustee) requested all statements and cancelled checks for financial accounts in the Debtor's name or to which the Debtor had access since January 1, 2022.

Kahan responded, "Attached hereto," but attached only: (a) 2024 statements for an unscheduled CashApp account in the Debtor's name; (b) 2024 statements for a Kronos Collaborative BlueVine account; and (c) 2024 statements for a Kronos Collaborative Venmo account.  The cover email from Attorney Levine stated that, "the debtor, as a result of actions taken by enterprise, has been barred from opening a bank account.  He uses Venmo, Cash App and Blue Vine . . . ."

86.      In fact, Kahan owned and/or had access to numerous other accounts during the requested period and as of the date of his response to the United States Trustee.  Kahan's response was misleading and false because it suggested he was providing all responsive documentation for the requested accounts.

87.      Kahan also asserted in his response that he did not believe any amendments were required to his C7 Schedules or SOFA, despite his failure to list accounts he owned and the transfers identified in those accounts.

88.      Later on October 8, Kahan appeared at the meeting of creditors in the Chapter 7 Case and testified that the information contained in the C7 Schedules and SOFA was accurate. The meeting could not be concluded at that time and was continued to October 31.

89.      On or about October 31, Kahan's counsel informed the chapter 7 trustee they could not appear and the meeting of creditors was continued to November 21.

90.      On November 21, Kahan provided the United States Trustee with six months of bank accounts for an unscheduled Varo Bank account. On or about the same date, Kahan's counsel informed the chapter 7 trustee they could not appear and the meeting of creditors was continued to December 19.

91.      On or about December 19, Kahan's counsel informed the chapter 7 trustee they could not appear and the meeting was continued to December 27.

12

92.     Kahan has identified the total value of his assets in the Chapter 7 Case as $112,007,500, which includes $110,400,000 in Bitcoin that Kahan alleges is outside of his control and in the custody of a third party, Hunter Penn.

93.     The United States Trustee's September 16 email asked Kahan to identify his cryptocurrency transactions since 2022.  In response, Kahan stated that "[a]part from two (2) cryptocurrency transactions which the Debtor engaged in in 2012 and 2013 which is believed to have formed the basis for the identity theft that resulted in the Debtor being the holder of 1810 bitcoins, the Debtor has engaged in no trading in cryptocurrency."

94.     Upon information belief, Kahan engaged in additional and undisclosed cryptocurrency transactions during the requested period.  For example, Kahan's unscheduled Varo Bank account shows that on May 6, June 6, and August 1-2, 2024, Kahan executed multiple transactions transferring funds through Moonpay.  Moonpay is a cryptocurrency transactional platform.  Several of the transfers were for the benefit of Bassa.  After the petition date, Kahan made additional payments to or through Moonpay and Crypto Hub.  Despite repeated requests from the United States Trustee, Kahan has failed to provide documentation sufficiently evidencing his cryptocurrency assets and transactions.

95.     In early December 2024, Kahan's counsel sent a message to the United States Trustee stating that a "third party has recovered 1,000 bitcoin from the bad guy's wallet.  The twist, they want $100K.  Who should pay it . . . The debtor can (most of the bitcoin is his) . . . Debtor pays the $100K, [the chapter 7 trustee] winds up with a $100 million in bitcoin into his wallet, and everyone makes out fine."  The United States Trustee requested further information and documentation regarding these allegations, including Kahan's ability to make a payment of $100,000.  Kahan has not responded to that request.

96.     Kahan did not disclose the alleged recovery of 1,000 bitcoins to the chapter 7 trustee.

97.     In response to Question 7 on the C7 Schedule A/B, which asked whether Kahan owned any electronics, Kahan listed 3 cell phones, 5 TVs, 2 tablets, 1 plotter, 1 printer, 2 PCs, and 2 laptops.  These assets were not listed in his C13 Schedules.

98.     In response to Question 19 on the C7 Schedule A/B, which asked whether Kahan owned any interests in business, Kahan identified the following entities (by incorporation of his answer to Question 27 of the C7 SOFA): Somer Hill, Inc., Somerville Construction Development, Inc., Zero Dane LLC, Zero Malvern, LLC, Boardman Holdings, LLC, Box Capital, Inc., Cedar Street Development, LLC, Kronos Collaborative, Inc., Local Ventures Group, LLC, 74-76 Dana Street, LLC, 72 Dana Street, LLC, 69 Rush Street, LLC, 227 Havre Street, LLC, and WJH Elm Street Somerville, LLC.  Kahan asserted that the total combined value of his interests in such entities was $1,000.

99.     Kahan stated in his response to the United States Trustee's email inquiry that the reason the total value of all of his business interests was only $1,000, was that "[m]ost of the entities listed are defunct, dissolved by the secretary of state, have no assets, or if they have assets have no equity."  Upon information and belief, the value of Kahan's business interests is significantly greater than $1,000.00.

100.    For example, Kronos Collaborative appears to have been a profitable going concern as of the petition date in the Chapter 7 case, based on the net income it generated for Kahan as its owner.

101.    Upon information belief, after the petition date in the Chapter 7 Case, Kahan shut down Kronos Collaborative and formed a substantially identical business called Cap Design

14

Group, which operates from the same address and advertises its services on Kronos Collaborative's former Facebook page. Cap Design Group's website states: "CAP Design Group was originally founded as Kronos Collaborative…It later transitioned to CAP Design Group."

102.    Upon information and belief, Kahan formed CAP Design Group to prevent the chapter 7 trustee from receiving the profits that would otherwise have flowed into the estate on account of Kronos Collaborative.

103.    Kahan asserts that Olga Bassa also has an interest in Kronos Collaborative. However, Bassa did not disclose any such interest in her Schedules in the Bassa Case.

104.    Upon information and belief, the businesses owned or controlled by Kahan had bank or similar financial accounts between 2022 and the present, which Kahan failed to disclose and provide documentation for despite repeated requests by the United States Trustee.

105.    Upon information and belief, Kahan also had bank or similar financial accounts between 2022 and the present, which Kahan failed to disclose and provide documentation for despite repeated requests by the United States Trustee.

106.    On multiple occasions during the Chapter 7 Case, including on October 18, October 28, November 13, and November 20, the United States Trustee requested that Kahan provide copies of statements, cancelled checks, and check registers for all financial accounts in Kahan's name or to which Kahan had access from January 1, 2022, to present.

107.    Kahan failed to produce complete account documentation under his name to the United States Trustee or chapter 7 trustee.

108.    Kahan failed to produce complete account documentation for Kronos Collaborative to the United States Trustee or chapter 7 trustee. Kahan also failed to produce account documentation for other entities to the United States Trustee or chapter 7 trustee.

109.    On multiple occasions during the Chapter 7 Case, the United States Trustee requested that Kahan provide documents evidencing the assets and liabilities of each entity listed on the C7 Schedule A/B and SOFA.  The chapter 7 trustee requested copies of the same documents requested by the United States Trustee.

110.    Kahan produced only a seven-month profit and loss spreadsheet for Kronos Collaborative but no documents evidencing the income or expenses described therein.

111.    The Kronos Collaborative profit and loss statement showed net income of $9,692.91 from February 2024 through August 2024.

112.    Kahan has been unable to produce documents evidencing the income, expenses, assets, or liabilities of other entities owned or controlled by Kahan.

113.    On C7 Schedule E/F, Kahan indicated he had unfiled tax returns for 2021, 2022, and 2023.

114.    The United States Trustee requested copies of 2020-2023 tax returns if and when filed.

115.    Kahan has not provided any tax returns to the United States Trustee or chapter 7 trustee.

116.    Upon information and belief, Kahan has not filed state or federal tax returns for multiple years, including 2020, 2021, 2022, and 2023.

117.    Kahan identified the total amount of his liabilities in the Chapter 7 Case as $2,460,494.10.  Claims filed Chapter 7 Case total approximately $3.5 million, not including the secured claim of Enterprise Bank and Trust in the amount of approximately $1,255,785, pursuant to which, Enterprise was granted relief from the automatic stay to foreclose on Kahan's real estate.

118.    The Debtor has not explained how his liabilities reduced from more than $5.8 million in the Chapter 13 Case to approximately $4.7 million months later in the Chapter 7 Case. The C7 SOFA did not report payments to creditors in the 90 days preceding the Chapter 7 Case.

119.    Moreover, Enterprise Bank reported that Kahan paid them $235,315.95 on October 17.  Given the paucity of available assets described in Kahan's schedules, it is unclear where these funds originated.  At the meeting of creditors on October 8, Kahan indicated that he did not even have $75,000 to consummate a proposal he was negotiating with the taxing authorities.

120.    Although Kahan testified in the WJH case that he had guaranteed WJH's mortgage debt, Kahan failed to list such debt in the C7 or C13 Schedules.

121.    On C7 Schedule I, Kahan listed gross income of $8,562 per month, which was equal to the net income from Kronos Collaborative from February 2024 to July 2024.

122.    On C7 Schedule J, Kahan listed expenses of $15,050 per month, including $8,350 on home ownership; $2,100 on utilities; $1,500 on food and housekeeping supplies; $500 on transportation; and $1,200 on entertainment, clubs, recreation, newspapers, magazines, and books.

123.    The United States Trustee requested that Kahan explain his increase in expenses as between the C13 Schedules and C7 Schedules filed less than one year apart. Kahan has failed to provide an adequate explanation of such increase.

124.    On multiple occasions during the Chapter 7 Case, the United States Trustee requested that Kahan provide documentation of certain expenses in the C7 Schedule J, including utilities and entertainment.  The chapter 7 trustee requested copies of the documents sought by the United States Trustee. Kahan has failed to provide such documentation.

125.    In response to Question 4 on the C7 SOFA, Kahan reported approximately $245,000 in income from operating a business during calendar year 2023, $275,000 income from operating a business during calendar year 2022, and no other income during such years.

126.    In response to Question 8 on the C7 SOFA, which asked whether Kahan made any payments or transfers on account of a debt that benefited an insider within the year preceding the Chapter 7 Case, Kahan answered, "No."

127.    In response to Question 13 on the C7 SOFA, which asked whether Kahan made any gifts totaling more than $600 to one person within the two years preceding the Chapter 7 Case, Kahan answered, "No."

128.    In response to Question 18 on the C7 SOFA, which asked whether Kahan made any transfers outside the ordinary course of business within the two years preceding the Chapter 7 Case, Kahan answered, "No."

129.    Upon information and belief, Kahan's answers to Questions 8, 13, and/or 18 on C7 SOFA were false.

130.    Kahan failed to disclose thousands of dollars in transfers to his spouse Bassa (an insider) and Hunter Penn (the individual allegedly holding Kahan's bitcoin).  In fact, Kahan testified at the meeting of creditors that he had paid more than $1 million to Penn.  These transfers were not identified in the statement of financial affairs.

131.    Upon information belief, Kahan made other transfers outside the ordinary course of business or his financial affairs during the two years preceding the Chapter 7 Case.  By way of example, and not limitation, on August 1 and August 2, 2024, Kahan made three transfers from the unscheduled Varo Bank account totaling $1,450 using a cryptocurrency transaction platform called Moonpay, including to insider Bassa.

132. On August 6, Kahan received a deposit of $800 into the Varo Bank account.

133. As a result, the balance of funds in the Varo Bank account on the Chapter 7 petition date was $808.57.

134. On August 8, Kahan transferred $600 of estate funds from the Varo Bank account to Bassa. During the Chapter 7 case, Kahan used the remainder of the prepetition funds from the Varo Bank account for his own purposes.

135. Kahan failed to disclose any Varo Bank accounts in his C7 Schedules.

136. Kahan disclosed a Varo Bank account in his C13 Schedules. By omitting the account from his C7 Schedules, Kahan gave the false impression that he no longer maintained such an account.

137. As of the petition date in the Chapter 7 Case, Kahan had approximately $840 in a CashApp account.

138. After filing the Chapter 7 Case, Kahan continued to use prepetition funds from the CashApp account for his own purposes.

139. Kahan failed to disclose any CashApp accounts in his C7 Schedules. He also failed to disclose such an account in the C13 Schedules.

140. Kahan's unscheduled CashApp and Varo Bank account statements show numerous and frequent transfers to third parties with no clear explanation of their purpose, as well as funds cycling in and out from other accounts.

141. Upon information and belief, Kahan regularly maintained a balance of funds in an Apple Wallet and/or Apple Cash account prior to the Chapter 7 Case.

142. Upon information and belief, Kahan still had an existing Apple Wallet and/or Apple Cash account as of the petition date in the Chapter 7 Case.

Case 24-11592   Doc 102   Filed 12/20/24   Entered 12/20/24 16:00:15   Desc Main
Document      Page 20 of 29

143.     Kahan failed to disclose any Apple Wallet or Apple Cash account in his C7 Schedules.  He also failed to disclose such an account in the C13 Schedules.

144.     Upon information and belief, Kahan owned or had an interest in other accounts that he failed to disclose.  For example, the unscheduled Varo Bank and Cash App accounts show frequent transfers of funds between other accounts at Varo Bank, a Kahan PayPal account, and accounts at Coastal Community Bank, Piermont Bank, Alliant Credit Union, and Bankcorp Bank.

145.     Upon information and belief, Kahan also commingled his own funds in the accounts of Kronos Collaborative.

146.     Upon information and belief, Kahan made transfers of his own funds from Kronos Collaborative accounts to third parties.  Kahan failed to disclose such transfers on the C7 SOFA.

147.     Kahan has not turned over any funds to the chapter 7 trustee since filing this case.

148.     In response to Question 27 on the C7 SOFA, which asked Kahan to identify businesses in which he had an interest or management role in the four years preceding the Chapter 7 Case, Kahan identified the following 14 entities: Somer Hill, Inc., Somerville Construction Development, Inc., Zero Dane LLC, Zero Malvern, LLC, Boardman Holdings, LLC, Box Capital, Inc., Cedar Street Development, LLC, Kronos Collaborative, Inc., Local Ventures Group, LLC, 74-76 Dana Street, LLC, 72 Dana Street, LLC, 69 Rush Street, LLC, 227 Havre Street, LLC, and WJH Elm Street Somerville, LLC.

149.     Upon information and belief, Kahan had interests in other entities during the relevant period that he did not identify in his response to Question 27.

150.     For example, upon information and belief, Kahan had an interest and/or management role in Coliseum Fund I LLC, Coliseum Asset Management, LLC, and Walnut Street 141 Development, LLC during such period.  In 2021, Coliseum Fund I LLC and Coliseum Asset

Management LLC filed documents with the Massachusetts Secretary of the Commonwealth to remove Kahan as manager and otherwise as the person authorized to sign documents. On June 23, 2022, Kahan signed a Mortgage and Security Agreement and an Assignment of Leases and Rents on behalf of Walnut Street 141 Development, LLC purporting to be the company's managing member.

151.    Upon information and belief, Kahan had other assets as of the Chapter 7 petition date that he failed to disclose in his C7 Schedules.

152.    As of October 31, 2018, Kahan asserted ownership interests in at least 15 businesses with a total net value of approximately $14,250,000.

153.    As of October 31, 2018, Kahan asserted that his personal net worth (value of all assets less liabilities) was approximately $16,456,000.

154.    Kahan has failed to explain satisfactorily the loss or deficiency of assets to meet his liabilities.

## CAUSES OF ACTION

### COUNT ONE
### (Denial of Discharge Under 11 U.S.C. §727(a)(2)

155.    The United States Trustee re-alleges and incorporates by reference all other allegations of this Complaint as if set forth fully herein.

156.    Kahan, with the intent to hinder, delay or defraud his creditors and/or an officer of the estate, transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the date of the filing of the petition, including but not limited to:

    a.    Concealing jewelry, electronics, financial accounts, businesses, and other assets from his creditors and the Chapter 13 Trustee by failing to disclose them in the C13 Schedules; and

    b.   Transferring funds to an insider, Bassa, and to other parties before filing the Chapter 7 Case from one or more accounts that he failed to disclose to creditors and the chapter 7 trustee in the C7 Schedules.

157.    Kahan, with the intent to hinder, delay or defraud his creditors and/or an officer of the estate, transferred, removed, destroyed, mutilated, or concealed property of the estate after the date of the filing of the petition, including but not limited to:

    a.   Transferring and removing prepetition funds (including to insider Bassa) from his Varo Bank account after the filing of the Chapter 7 Case, which account he concealed from creditors and the chapter 7 trustee by omitting it from C7 Schedules.

    b.   Transferring and removing prepetition funds from his CashApp account after the filing of the Chapter 7 Case, which account he concealed from creditors and the chapter 7 trustee by omitting it from C7 Schedules.

    c.   Concealing his Apple account(s) and any funds contained therein from creditors and the chapter 7 trustee by omitting them from his C7 Schedules.

    d.   Concealing other accounts, assets, and transfers from creditors and the chapter 7 trustee by omitting them from his C7 Schedules and SOFA, and failing to timely provide documents showing such accounts, assets, and transfers.

    e.   Covertly shutting down Kronos Collaborative and re-opening essentially the same business under the name CAP Design Group, thereby diverting and retaining profits that would otherwise be payable to the chapter 7 estate.

158.    Kahan has repeatedly failed to provide information to the United States Trustee regarding his financial condition and the financial condition of his companies.

159.    Kahan retained the use and benefit of the accounts and funds he failed to disclose.

160.    Kahan concealed transfers from the C7 SOFA, which he was obligated to disclose.

161.    Upon information and belief, Kahan failed to file tax returns for at least 2020, 2021, 2022, and 2023.

162.    To the text Kahan prepared or filed any such returns, he failed to provide them to the United States Trustee or chapter 7 trustee.

163.    Kahan was legally obligated to disclose and provide information to creditors, the chapter 7 trustee, and the chapter 13 trustee, pursuant to the Bankruptcy Code and Bankruptcy Rules, including but not limited to 11 U.S.C. § 521, Fed. R. Bankr. P. 1007 & 4002, and MLBR 1007-1 & 4002-1.  Kahan failed to comply with these obligations.

164.    Kahan engaged in a pattern of mistruth, omission, and non-cooperation in multiple bankruptcy cases within the past year, including the Chapter 13 Case, the WJH Case, and the Chapter 7 Case.

165.    For these and the other reasons to be established at trial, the Court should deny Kahan a discharge pursuant to 11 U.S.C. § 727(a)(2).

## COUNT TWO
### (Denial of Discharge Under 11 U.S.C. § 727(a)(3))

166.    The United States Trustee re-alleges and incorporates by reference all other allegations of this Complaint as if set forth fully herein.

167.     Kahan concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which Kahan's financial condition or business transactions might be ascertained, including but not limited to income records, expense records, transaction records (including business, real estate, and

cryptocurrency transactions), bank account records, financial account records, and records regarding the assets and liabilities of Kahan's businesses.

168.    Kahan failed to file tax returns for at least 2020, 2021, 2022, and 2023.

169.    Income tax returns are quintessential documents from which a debtor's financial condition or business transactions might be ascertained.

170.    Moreover, bank, financial, business, and transactional records are necessary for Kahan to prepare his tax returns and any tax returns for Kahan's businesses.  Kahan was required to keep and preserve such records, particularly given that filing the tax returns is a legal obligation that remains outstanding.

171.    The United States Trustee and chapter 7 trustee requested such records and information from Kahan.

172.    Kahan failed to provide adequate records in response.

173.    If Kahan has the records, then his failure to provide them constitutes concealment.

174.    If Kahan does not have the records, then he has destroyed or otherwise failed to keep or preserve such records.

175.    Kahan's acts and omissions were not justified under the circumstances.

176.    Kahan was legally obligated to disclose and provide information pursuant to the Bankruptcy Code and Bankruptcy Rules, including but not limited to 11 U.S.C. § 521, Fed. R. Bankr. P. 1007 & 4002, and MLBR 1007-1 & 4002-1.  Kahan failed to comply with these obligations.

177.    Kahan had obligations to preserve and maintain records sufficient to enable his creditors to reasonably ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.  Kahan failed to satisfy such obligations.

178.    For these and the other reasons to be established at trial, the Court should deny

Kahan a discharge pursuant to 11 U.S.C. § 727(a)(3).

## COUNT THREE
### (Denial of Discharge Under 11 U.S.C. § 727(a)(4))

179.    The United States Trustee re-alleges and incorporates by reference all other

allegations of this Complaint as if set forth fully herein.

180.    Kahan knowingly and fraudulently made false oaths or accounts in the C7

Declaration and at the meeting of creditors by falsely stating that the C7 Schedules were accurate.

181.    Schedule A/B was not accurate, as Kahan omitted multiple assets, including but not

limited to the Varo Bank account and the CashApp account.

182.    There were funds in the Varo Bank account and CashApp accounts on the petition

date in the Chapter 7 case.

183.    Upon information and belief, Kahan had undisclosed funds or assets in other

accounts as of the petition date in the Chapter 7 case.

184.    Kahan secretly used such estate funds during the Chapter 7 Case, including by

making transfers to insider Bassa.

185.    Upon information and belief, Kahan also knowingly understated the value of

certain business interests, including WJH and Kronos Collaborative.

186.    Upon information and belief, Schedule J was also inaccurate.

187.    Upon information and belief, Kahan inflated the expenses on C7 Schedule J in an

effort to prevent this case from being deemed presumptively or otherwise abusive under section

707 of the Bankruptcy Code.

188.    The expenses reflected in C7 Schedule J were substantially higher than the

expenses reported on Schedule J in the Chapter 13 Case and in the Bassa Case.

25

189.    Kahan was unable to explain the large differential in ordinary living expenses reported in filings that were months apart.

190.    Kahan was unable to document his expenses stated in the C7 Schedule J.

191.    Kahan also knowingly and fraudulently made a false oath or account in the C7 SOFA and at the meeting of creditors by falsely stating that his answers were accurate.

192.    The SOFA was not accurate because, among other things, Kahan failed to disclose transfers and business interests he was required to report.

193.    Kahan knew the SOFA was inaccurate when he signed it.

194.    Kahan also knowingly and fraudulent withheld from the chapter 7 trustee, an officer of the estate entitled to possession, recorded information, including books, documents, records, and papers, relating to Kahan's property or financial affairs.

195.    For these and the other reasons to be established at trial, the Court should deny Kahan a discharge pursuant to 11 U.S.C. § 727(a)(4).

## COUNT FOUR
### (Denial of Discharge Under 11 U.S.C. § 727(a)(5))

196.    The United States Trustee re-alleges and incorporates by reference all other allegations of this Complaint as if set forth fully herein.

197.    Kahan cannot explain satisfactorily the loss and/or deficiency of assets to meet his liabilities.

198.    According to Kahan's personal financial statement as of October 2018, Kahan had a net worth of more than $16 million.

199.    Kahan has been involved in numerous business ventures since 2018.

200.    Notwithstanding unproven allegations that he owns more than $100 million worth of bitcoin to satisfy his debts, Kahan has no access to such bitcoin and is unable at this time to liquidate or leverage such bitcoin to pay his debts.

201.    Aside from the alleged bitcoin that Kahan cannot access, Kahan's only scheduled assets are his home that he valued at $1,600,000; business interests in the amount of $1,000; and other personal property in the amount of $5,500.

202.    Kahan has been unable to explain why he has debts of approximately $4.7 million (or more) without assets available in an amount sufficient to meet such debts.

203.    For these and the other reasons to be established at trial, the Court should deny Kahan a discharge under 11 U.S.C. § 727(a)(5).

## COUNT FIVE
### (Denial of Discharge Under 11 U.S.C. § 727(a)(7) in connection with Bassa Case)

204.    The United States Trustee re-alleges and incorporates by reference all other allegations of this Complaint as if set forth fully herein.

205.    Bassa is an insider of Kahan.

206.    Within one year of the filing of the Chapter 7 Case, Kahan falsely offered or made a promise of money, property, or advantage in the Bassa Case by offering to liquidate bitcoin in an amount sufficient to pay all of Bassa's creditors.

207.    Kahan's offer in the Bassa Case was knowingly false and fraudulent because Kahan knew that he did not have access to the bitcoin and was unable to liquidate the bitcoin.

208.    Upon information and belief, Kahan made the offer to mislead creditors, the Court, and the Chapter 13 Trustee and convince them to support Bassa's Chapter 13 Plan.

209.    Kahan's conduct constituted an act specified in section 727(a)(4) of the Bankruptcy Code in connection with the case of an insider of Kahan.

210.    For these and the other reasons to be established at trial, the Court should deny Kahan a discharge under 11 U.S.C. § 727(a)(7).

## COUNT SIX
### (Denial of Discharge Under 11 U.S.C. § 727(a)(7) in connection with WJH Case)

211.    The United States Trustee re-alleges and incorporates by reference all other allegations of this Complaint as if set forth fully herein.

212.    WJH is an insider of Kahan.

213.    Upon information and belief, Kahan was the custodian of WJH's books and records.

214.    Kahan concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which WJH's financial condition or business transactions might be ascertained, including bank statements and records of expenses and expenditures.

215.    WJH has not filed a tax return and at all times intended to sell its property.

216.    WJH had an obligation to preserve records, including but not limited to the purpose of preparing its tax returns.

217.    Kahan caused WJH to operate in violation of the United States Trustee's Operating Guidelines by failing to file monthly operate reports, disclose business and financial information, or demonstrate WJH was using a compliant debtor-in-possession bank account.

218.    If Kahan had the records, then his failure to provide them constituted concealment.

219.    If Kahan did not have the records, then it appears he destroyed or otherwise failed to keep or preserve such records.

220.    Kahan also concealed the existence and records of the Chapter 7 Case in the WJH Case, which he was obligated to disclose given that he was continuing to control the debtor-in-possession without authority.

221.    Kahan's acts and omissions were not justified under the circumstances.

222.    Kahan's conduct constituted an act specified in section 727(a)(3) of the Bankruptcy Code in connection with the case of an insider of Kahan.

223.    Upon information and belief, Kahan's conduct in the WJH Case may have also constituted an act specified under section 727(a)(2) or (a)(4).

224.    For these and the other reasons to be established at trial, the Court should deny Kahan a discharge under 11 U.S.C. § 727(a)(7).

## REQUEST FOR RELIEF

For these reasons, the United States Trustee requests that the Court enter orders denying Kahan's discharge under Counts One, Two, Three, Four, Five, and Six of this Complaint and granting him all such other and further legal and equitable relief to which he may be entitled.

Respectfully submitted,

WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE,
REGION 1

By:    */s/Justin A. Kesselman*
Justin A. Kesselman BBO#687793
U.S. DEPARTMENT OF JUSTICE
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
Justin.A.Kesselman@usdoj.gov
(202) 377-9602

Dated:  December 20, 2024.