**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>               Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**CHAPTER 7 TRUSTEE'S MOTION FOR: (I) ENTRY OF AN ORDER (A) APPROVING PROCEDURES GOVERNING TRUSTEE'S PROPOSED SALE OF CERTAIN OF THE DEBTOR'S ASSETS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING FORM AND MANNER OF NOTICE OF SALE, AND (C) GRANTING RELATED RELIEF; AND (II) AUTHORITY TO SELL CERTAIN OF THE DEBTOR'S ASSETS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES <u>AND OTHER INTERESTS</u>**

Donald Lassman, the duly appointed Chapter 7 Trustee (the "<u>Trustee</u>") of the bankruptcy estate of Jason M. Kahan (the "<u>Debtor</u>"), files this motion (the "<u>Motion</u>") pursuant to section 363 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-5 and 6004-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the District of Massachusetts (the "<u>MLBR</u>") seeking entry of an order:

     i.      establishing sale procedures for the Trustee's proposed sale of certain of the Debtor's assets (the "<u>Assets</u>"), as set forth on Exhibit A of the Asset Purchase Agreement, dated May 6, 2026 (the "<u>APA</u>"),[1] by and between the Trustee and Pioneer Funding Group LLC ("<u>Buyer</u>" or "<u>Stalking Horse Bidder</u>"); and

     ii.     authorizing the sale of the Assets free and clear of all liens, claims, encumbrances and interests and granting related relief to the Buyer or to such other entity that submits the highest or otherwise best offer to acquire

---

[1]    The APA is attached hereto as **Exhibit D**. Capitalized terms used but not defined in this Motion shall have the meanings ascribed to such terms in the APA. In the event that there is a conflict between this Motion, the Sale Procedures Order, the Sale Approval Order or the Sale Notice, on the one hand, and the APA, on the other hand, the APA shall control and govern.

the Assets as determined through the sale process to be governed by the proposed sale procedures as set forth herein (the "Proposed Sale").

This Motion requests that the Court hold two hearings to consider the relief requested: (i) an initial hearing (the "Sale Procedures Hearing") to consider approval of the proposed order attached as **Exhibit A** (the "Sale Procedures Order") approving the bidding and sale procedures for conducting the Proposed Sale (the "Sale Procedures");  and (ii) a subsequent hearing (the "Sale Approval Hearing") to consider any objections or counteroffers and to consider approval of the proposed order attached as **Exhibit B** (the "Sale Approval Order") approving the Proposed Sale. The notice of the Proposed Sale is attached as **Exhibit C** (the "Sale Notice").  The Proposed Sale is to be made pursuant to the APA between the Trustee and Buyer attached as **Exhibit D**, as it may be modified by agreement between the Trustee and the Successful Bidder for the Assets.

## PRELIMINARY STATEMENT

1.      Under the current APA, the Buyer has agreed to act as the "Stalking Horse Bidder" and submitted a "stalking horse bid" of Three Hundred Fifty Thousand Dollars ($350,000.00) for the Assets, which include Estate Bitcoin (as defined in the APA). The Estate Bitcoin are not currently in the possession or control of the Trustee or the Debtor and any successful bidder will need to recover the Estate Bitcoin.  The APA was the result of arm's length negotiations between the Trustee and the Buyer, and the Trustee believes that because the Buyer has agreed to act as the Stalking Horse Bidder, the Buyer should be granted certain protections set forth herein, including a break-up fee and an expense reimbursement.  The APA between the Trustee and the Buyer provides for a Closing no later than July 15, 2026 (the "Outside Date").

2.      The Trustee is not aware of any liens or security interests encumbering the Assets. To the extent any such liens, claims, or interests exist, they are in bona fide dispute, and the Proposed Sale will be made free and clear of all such liens, claims, and interests pursuant to section

363(f) of the Bankruptcy Code, with any such interests attaching to the proceeds of the sale with equal effect and priority.

3.     Notwithstanding Buyer's submission of the APA and the offer contained therein to acquire the Assets, the Trustee intends to sell the Assets to whichever entity submits the highest or otherwise best offer to acquire the Assets as determined through the Sale Procedures established by this Court.  The Sale Procedures propose a sale process leading to solicitation of qualified competing bids by a deadline to be set by the Court (the "Bid Deadline").  It is anticipated that this Court will permit the Trustee to accept sealed bids, conduct a live auction, or a combination of the two at the Sale Approval Hearing in the event one or more qualified bids are submitted (the "Auction").

4.     As grounds for this Motion, and for approval of the proposed Sale Procedures and Proposed Sale, the Trustee states as follows:

I.     **Background**

A.     **The Debtor and the Chapter 7 Case**

5.     On August 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and commenced this chapter 7 case in the United States Bankruptcy Court for the District of Massachusetts (this "Court"). The Trustee was appointed as Chapter 7 trustee for the Debtor's estate (the "Estate") on August 27, 2024.

6.     Since his appointment, the Trustee has engaged in an investigation, including discovery (the "Trustee's Investigations") in an attempt to recover possession and control of the Estate Bitcoin (as defined in the APA), which are not currently in the possession or control of the Trustee or the Debtor.  Among other things, the Trustee conducted a Rule 2004 examination of Hunter Penn and employed special counsel to assist in these investigatory efforts. *See* Dkt. Nos. 65, 121, 187, 189.

7.      The Assets consist primarily of the Debtor's and the Estate's right, title, and interest in certain Bitcoin wallets and Bitcoin addresses, including private keys (the "BTC Wallets"), any cryptocurrency currently located in or which has been transferred out of the BTC Wallets since their inception (the "Estate Bitcoin"), and all related legal and equitable rights, interests, title, and standing to pursue claims, suits, and causes of action relating to recovery of the BTC Wallets and Estate Bitcoin, including but not limited to causes of action arising under Chapter 5 of the Bankruptcy Code (as defined in the APA, the "Recovery Actions").

B.      **Need for Sale of the Assets**

8.      The Trustee has determined, in the exercise of his business judgment, that a sale of the Assets is in the best interests of the Estate and its creditors.  The Assets include cryptocurrency that the Trustee has been unable to recover through the Trustee's Investigations.  The Proposed Sale will allow the Estate to monetize these Assets and maximize recoveries for creditors.  Absent a sale, the Estate would be required to fund and pursue continued investigation, which, if successful, would only lead to protracted and expensive litigation to recover the Assets, with no guarantee of success.  The Proposed Sale provides certain and immediate value to the Estate and a source of recovery for creditors of the Debtor's Estate.

II.     **The Stalking Horse Bid and the APA**

9.      Beginning in January 2026, the Buyer and the Trustee commenced discussions regarding the Buyer's potential acquisition of the Assets.  After lengthy arm's-length negotiations, the parties agreed on the terms of the APA, which serve as the opening bid (the "Stalking Horse Bid") for sale of the Assets.  The Buyer has agreed to purchase the Assets for a cash purchase price of Three Hundred and Fifty Thousand Dollars ($350,000.00) (the "Purchase Price"), subject to adjustment if the Buyer submits an overbid at the Auction.  The Buyer has deposited the cash sum

of Thirty-Five Thousand Dollars ($35,000.00) (the "Deposit") as a deposit against the Purchase

Price.

10.     Subject to Bankruptcy Court approval, on the Closing Date (as defined in the APA),

the Trustee will transfer, sell, assign, and convey to the Buyer, and the Buyer will purchase and

acquire from the Trustee, free and clear of all liens, claims, licenses, encumbrances, interests, and

rights of setoff and recoupment, in accordance with Section 363 of the Bankruptcy Code, all of the

Debtor's and the Estate's right, title, and interest in the Assets, as set forth on Exhibit A to the APA.

The sale of the Assets shall be on an "as is" and "where is" basis, and, except as expressly provided

in the APA, the Trustee makes no representation or warranty of any kind with respect to the Assets.

**III.     Summary of the Proposed Sale**

11.     The Proposed Sale is embodied in, and is to be effected through the closing of the

transactions contemplated by, the APA, as may be modified through agreement between the

Trustee and the Successful Bidder.  The principal terms of the APA,[2] and the principal terms and

conditions of the Proposed Sale, are summarized below:

**A.     Assets Being Sold**

12.     Under the APA, the Assets to be sold consist of the Trustee's, the Debtor's and the

Estate's right, title, and interest in: (i) the BTC Wallets and all cryptocurrency therein; (ii) the

Estate Bitcoin, including any cryptocurrency transferred out of the BTC Wallets since their

inception; (iii) all legal and equitable rights, interests, title, and standing to pursue the Recovery

Actions, including causes of action arising under Chapter 5 of the Bankruptcy Code; (iv) all legal

and equitable rights, interests, and title to non-executory contracts, whether known or unknown,

---

[2]     Capitalized terms used but not defined in this section shall have the meaning ascribed to
such terms in the APA. In the event of an inconsistency between this summary and the APA, the
terms of the APA shall prevail.

which concern or relate to the BTC Wallets; and (v) the Trustee's and the Estate's rights and standing to seek and obtain recognition, domestication, and/or enforcement of the Sale Order in any jurisdiction. Only those assets constituting "Assets" as defined in the APA will be sold at the closing of the Proposed Sale. The Trustee will designate which offer represents the highest or otherwise best offer for the Assets, and will seek Bankruptcy Court approval of such offer.

13.     The current form of the proposed Sale Order also provides that the Buyer has the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor. Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of the Buyer. The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. The Trustee shall provide reasonable good-faith cooperation to Buyer in connection with its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions. The Trustee further agrees not to interfere with Buyer's Recovery Actions.

14.     Since the Estate Bitcoin are not currently in possession of the Trustee, the proposed Sale Order also provides that to the extent any third party is in possession, control or in any way interfering with Buyer's access to any of the Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS and NordCap Advisors SA, whom the Trustee believes may be involved in interfering with access to certain of the Assets, such third parties shall immediately deliver possession, control and access to the Assets (and any proceeds thereof) to the Buyer.

B.   **Purchase Price and Deposit**

15.   The Buyer has agreed to pay the Trustee, at closing, the Purchase Price of Three Hundred Fifty Thousand Dollars ($350,000.00) for the Assets (minus the Deposit), subject to adjustment if the Buyer submits an overbid at the Auction. The Buyer has deposited Thirty-Five Thousand Dollars ($35,000.00) as a deposit against the Purchase Price.  If the Buyer is the Successful Bidder, the balance of the Purchase Price (minus the Deposit) shall be delivered to the Trustee at the Closing via wire transfer.  After Closing and in connection with the Buyer's purchase of the Assets, the Buyer may initiate the Recovery Actions at its own cost and on its own behalf and as successor-in-interest to the Estate and the Debtor. Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of the Buyer.

C.   **Sale Free and Clear**

16.   The Proposed Sale of the Assets will, pursuant to section 363(f) of the Bankruptcy Code, be free and clear of all liens, claims, encumbrances, and interests, including without limitation all consensual liens and security interests and all liens, claims, and interests arising by operation of applicable law.  Any and all such liens, claims, and interests shall attach with equal effect and priority to the proceeds of sale.  The Buyer has expressly negotiated for the protection of obtaining the Assets free and clear of all liens, claims, interests, and rights of setoff and recoupment, and the Buyer would not have entered into the APA or agreed to the Purchase Price if the sale were not free and clear of all such liens, claims, and interests.

D.   **Contingencies to Closing**

17.   The APA contains a number of conditions to closing that, if not satisfied, would permit either the Trustee or the Buyer to terminate the agreement. Material conditions that must be satisfied include, among other things, (i) Bankruptcy Court approval of the Proposed Sale and entry of the Sale Order, and (ii) the Buyer being either the Successful Bidder at the Auction or, if

7

the Buyer is the Backup Bidder, the Successful Bidder having failed to close.  In addition, within five (5) business days of the Closing, the Trustee must turn over to the Buyer all documents, records, and materials in the Trustee's or his counsel's possession related to the Trustee's Investigations.  Upon the Closing, all attorney-client privilege, work product protection, and other protections from disclosure between the Trustee and his former special counsel related to the Assets shall transfer to and be vested solely in the Buyer.

### E.      **Break-Up Fee and Overbid Protection**

18.      In consideration of Buyer's expenditure of considerable time and expense in pursuing the Proposed Sale, entering into the APA by which Buyer serves as the Stalking Horse Bidder and drafting this Motion and related orders, the Trustee has agreed to request in this Motion that the Buyer receive the following protections, each subject to Bankruptcy Court approval and payable only from the proceeds of sale of the Assets: (i) an expense reimbursement (the "Expense Reimbursement") not to exceed Fifty Thousand Dollars ($50,000.00) for Buyer's reasonable actual fees and expenses incurred in connection with acting as the Stalking Horse Bidder, payable in the event that the Bankruptcy Court enters an order approving the sale of the Assets to a purchaser other than Buyer; and (ii) a break-up fee (the "Break-Up Fee") in the amount of three percent (3%) of the Stalking Horse Bid for the Assets ($10,500.00), payable in the event that the Bankruptcy Court enters an order approving the sale of the Assets to a purchaser other than Buyer.  The Expense Reimbursement and Break-Up Fee are separate obligations.  The Trustee seeks approval of the Break-Up Fee and the Expense Reimbursement at the Sale Procedures Hearing. Failure of the Bankruptcy Court to approve the Expense Reimbursement are grounds for termination of the APA.

F.       **Sale Procedures; Competing Bids**

19.      The Trustee has included proposed Sale Procedures to govern the solicitation of competing bids for the Assets.  These proposed Sale Procedures contemplate that each prospective bidder will bear its own expenses associated with negotiation, documentation, and efforts to obtain Bankruptcy Court approval of its offer and related definitive purchase agreement (other than the Buyer, which may receive the Break-Up Fee and Expense Reimbursement authorized by the Bankruptcy Court).  The proposed Sale Procedures contemplate that "Qualified Bids" to purchase the Assets must be submitted to the Trustee by the Bid Deadline established by the Bankruptcy Court.  If more than one Qualified Bid is submitted (other than the Buyer's Qualified Bid embodied in the APA), the Trustee, in accordance with the proposed Sale Procedures, will conduct an Auction among Qualified Bidders at which each Qualified Bidder will be entitled to participate in accordance with the applicable Sale Procedures.  At the conclusion of such Auction, the Trustee will designate the highest or otherwise best offer for the Assets to be submitted to the Bankruptcy Court for approval.  The proposed Sale Procedures also contemplate other terms and conditions customary to bankruptcy sales of this type.  The Trustee encourages all prospective bidders to contact the Trustee's counsel immediately in order to obtain further information about the Assets and the procedures for participating in the sale process.

**IV.    Sale Procedures**

20.      By this Motion, the Trustee seeks entry of the Sale Procedures Order establishing the Sale Procedures for conducting the Proposed Sale, including, without limitation, the submission of competing offers to acquire the Assets, the consideration of competing offers, and the Auction process to determine the highest or otherwise best offer for the Assets.  The Sale Procedures are designed to provide both specific guidelines and appropriate flexibility for the conduct of the sale process.  In order to obtain the highest or otherwise best bid for the Assets, the

9

Trustee proposes that any Auction among Qualified Bidders will be governed by the following

Sale Procedures:

i.  Bidding Process.  The Trustee shall have the sole right to (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence reviews, (iii) receive offers from Qualified Bidders, (iv) give notice to all parties with respect to the Sale Procedures and the possible Auction relating to the Assets, and (v) evaluate any bid.

ii.  Reservation of Rights. The Trustee may (i) designate, in his business judgment, which Qualified Bid (as defined below), if any, is the highest or otherwise best offer and (ii) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Trustee's sole discretion is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures, or (c) contrary to the best interests of the Estate and its creditors.

iii.  Due Diligence. Unless a specific exception is granted by the Trustee, each bidder must complete all required due diligence prior to the submission of its bid. The Trustee will continue to provide due diligence information to potential bidders who so request by contacting counsel to the Trustee, Mark G. DeGiacomo, Esq., Harris Beach Murtha Cullina PLLC, 33 Arch Street, 12th Floor, Boston, MA 02110; tel.: (617) 457-4000; email: mdegiacomo@harrisbeachmurtha.com.  The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline or to any person that the Trustee determines is not reasonably likely to be a Qualified Bidder.

iv.  Minimum Amount of Competing Bids. The Trustee proposes that the initial overbid be not less than Four Hundred Fifteen Thousand Five Hundred Dollars ($415,500.00), which is comprised of the Purchase Price ($350,000.00), the Expense Reimbursement ($50,000.00), and the Break-Up Fee ($10,500.00), plus an additional Five Thousand Dollars ($5,000.00) (the "Initial Overbid Amount").

v.  Required Bid Documents. Unless otherwise indicated below, all competing bids must include the following information and documents (the "Required Bid Documents"), which must be received by the Bid Recipient (as defined below) by the Bid Deadline:

a.  a legally-binding offer to purchase the Assets, pursuant to an executed version of the APA in substantially the same form thereof, with any proposed changes marked in a blackline (the "APA Blackline"), providing for the offeror's purchase of the Assets on an

10

"as is, where is" basis for a purchase price consideration having a value of not less than the Initial Overbid Amount and not subject to any contingencies other than entry of an order of the Bankruptcy Court authorizing the Trustee's sale of the Assets free and clear of liens, claims, and interests in form and substance customary for Section 363 asset sales of similar nature;

b. evidence of the bidder's financial ability to consummate a sale of the Assets, including the source of funds and the disclosure of the identity of any entities or persons who will participate or have an interest in any potential competing bid;

c. a statement under penalty of perjury stating whether the bidder or any of its affiliates are (x) insiders of the Debtor as defined in Section 101(31) of the Bankruptcy Code, (y) currently hold any of the Assets, including but not limited to the private keys related to the Assets, and (z) have had any prior involvement with any of the Assets (the "Qualified Bidder Statement");

d. a deposit in the amount of at least Thirty-Five Thousand Dollars ($35,000.00) by cashier's check made payable to the Trustee;

e. written evidence that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its offer, or a representation that no such authorization and approval is required;

f. the bidder's acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer, has relied solely upon its own independent review, investigation, and inspection of any documents and the Assets in making its bid, and is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid; and

g. such other information as may be reasonably requested by the Trustee.

vi. To the extent there are Qualified Bidders and an Auction is held, at least three (3) days before the Auction, the Trustee shall provide to Buyer the APA Blackline and Qualified Bidder Statement of each Qualified Bidder participating in the Auction.

vii. Bid Deadline. To be considered a timely bid, the bid containing the Required Bid Documents **must be delivered so as to be received not later than the date to be set by this Court** by the following parties (the "Bid Recipient"):

11

Harris Beach Murtha Cullina PLLC
33 Arch Street, 12th Floor
Boston, MA 02110
Attn: Mark G. DeGiacomo, Esq.
Email: mdegiacomo@harrisbeachmurtha.com

viii.   Qualified Bids. To constitute a "Qualified Bid," a competing bid must include each of the Required Bid Documents listed above, be accompanied by the required deposit, and:

a.   be timely received by the Bid Recipient by the Bid Deadline;

b.   provide information satisfactory to the Trustee that the bidder is reasonably likely to be able to consummate the proposed transaction if selected as the Successful Bidder;

c.   not be subject to or conditioned upon any financing contingencies;

d.   not be conditioned on the outcome of due diligence;

e.   be binding on each entity participating in the bid;

f.   not request or entitle the bidder to any breakup fee, termination fee, expense reimbursement, or similar type of payment; and

g.   provide for the closing of such transaction within a time frame that is no longer than the time frame provided for by the APA, except as may otherwise be agreed to by the Trustee.

ix.   A bidder that submits a Qualified Bid will, subject to the Trustee's determination, be a "Qualified Bidder."  The offer of the Buyer set forth in the APA is deemed to constitute a Qualified Bid and the Buyer is deemed to be a Qualified Bidder with respect to any Auction.

x.   Irrevocability of Qualified Bids.  Qualified Bids shall be deemed irrevocable offers to acquire the Assets and shall remain irrevocable and subject to acceptance by the Trustee until the Trustee has designated the Winning Bid and the Back-Up Bid (each described below) and the Bankruptcy Court has approved the Trustee's acceptance of the Winning Bid and designation of the Back-Up Bid, at which time any other bids shall be deemed rejected and such rejected bidders' deposits returned.

xi.   Notification of Qualified Bidders; No Qualified Bids. Promptly after the Bid Deadline, the Trustee shall determine, and notify each potential bidder, whether such potential bidder has submitted acceptable Required Bid Documents such that

12

it is deemed a Qualified Bidder.  If the Trustee does not receive any Qualified Bids other than the APA, the Trustee will not hold an Auction, the Buyer will be named the Successful Bidder upon the expiration of the Bid Deadline, and the Trustee shall seek approval of the sale of the Assets to the Buyer pursuant to the APA at the Sale Approval Hearing.

xii.    <u>Auction and Sale Approval Hearing.</u> After the Bid Deadline, the Trustee shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the transaction process, including those factors affecting the speed and certainty of consummating the proposed transaction. If at least one Qualified Bid is submitted, then, after all such bids have been so reviewed, the Trustee, with court approval, shall conduct the Auction with respect to the Proposed Sale.  Each Qualified Bidder shall at the commencement of the Auction be required to confirm that it has not engaged in any collusion, within the meaning of Section 363(n) of the Bankruptcy Code, with respect to any bids submitted or not submitted in connection with the Sale.  **The Auction shall take place during the Sale Approval Hearing.**  Only the Trustee, the Buyer, and any other Qualified Bidder that has timely submitted a Qualified Bid shall be eligible to participate at the Auction. At the Auction, each Qualified Bidder's subsequent bid(s) shall be deemed to be on the same terms and conditions as such bidder's Qualified Bid as set forth in its Asset Purchase Agreement, except for the specific changes stated in any bid (e.g., increased offer price, waiver of conditions, etc.) and otherwise as expressly agreed upon by the Trustee.

xiii.   <u>Conduct of the Auction.</u> The Trustee may, with court approval, from time to time waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Sale Procedures Order, the APA, the Bankruptcy Code, the Bankruptcy Rules, the MLBR, or any order of the Bankruptcy Court entered in connection with the Debtor's chapter 7 case, and (ii) disclosed to each Qualified Bidder.  In the event the Auction is conducted at the Sale Approval Hearing, the Trustee requests that each subsequent overbid following the Initial Overbid Amount be in additional increments of at least Sixty Thousand Five Hundred Dollars ($60,500.00) above the prior prevailing bid, unless otherwise ordered by the Bankruptcy Court.

xiv.    <u>Selection of Winning Bid and Back-Up Bid.</u>  At the conclusion of the Auction, the Trustee will designate, and then announce, the highest or otherwise best bid for the Assets (the "<u>Winning Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Successful Bidder</u>").  The Trustee will also designate the second-best bid to constitute the back-up bid in case the Successful Bidder fails to consummate the Proposed Sale (the "<u>Back-Up Bid</u>"), and the Qualified Bidder submitting such bid (the "<u>Backup Bidder</u>").  Upon the Trustee's designation of the Successful Bidder as the Backup Bidder, the Auction shall be deemed concluded and the Trustee shall not consider any more offers for the Assets. The Trustee's designation of the Winning Bid, Successful Bidder, Back-Up Bid, and Backup Bidder is subject to

13

approval of the Bankruptcy Court through entry of an order so providing following the conclusion of the Sale Approval Hearing. Upon entry of an order approving the sale of the Assets to the Successful Bidder, the Proposed Sale shall be consummated as provided by and pursuant to the terms and conditions of the Successful Bidder's Asset Purchase Agreement. The Back-Up Bid shall remain open for acceptance by the Trustee until the closing under the Successful Bidder's Asset Purchase Agreement. If the Successful Bidder shall fail to close, (i) the Backup Bidder shall be obligated to close within ten (10) business days of being notified that the Closing with the Successful Bidder has failed to close due to breach by the Successful Bidder; and (ii) the Outside Date shall be extended by thirty (30) calendar days.

xv.    Acceptance of Qualified Bid. The Trustee intends to seek approval of the highest or otherwise best Qualified Bid received. The Trustee's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Trustee's acceptance of the bid. The Trustee will have accepted a bid only when the bid has been approved by the Bankruptcy Court and the Trustee has executed the final form of the Asset Purchase Agreement embodying the sale of the Assets as approved by the Bankruptcy Court pursuant to the Sale Order.

xvi.    Return of Deposits. All deposits shall be returned to each bidder not selected by the Trustee as the Successful Bidder or the Backup Bidder no later than five (5) business days following the conclusion of the Auction.

## V.    **Form and Manner of Notice of Proposed Sale**

21.    In accordance with Bankruptcy Rules 2002, 6004, and 9007, and the MLBR, the Trustee proposes to provide notice of the Proposed Sale in the following manner:

A.    The Trustee will serve a copy of the Motion and all exhibits upon (i) the Debtor and his counsel of record, (ii) the Office of the United States Trustee for the District of Massachusetts, (iii) all known creditors of the Debtor, (iv) all parties that have requested notice and service of pleadings in this chapter 7 case, (v) all parties that have previously indicated any interests in acquiring the Assets, and (vi) any entities known to hold or claim a lien, security interest, or other interest in any of the Assets, including Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS and NordCap Advisors SA.

14

B.  Any objections to the Sale Procedures must (i) be in writing, (ii) state the basis of such objection with specificity, (iii) conform to the Bankruptcy Rules and the MLBR, (iv) be filed by the deadline set by the Court with the Office of the Clerk, United States Bankruptcy Court, John W. McCormack Federal Courthouse, 5 Post Office Square, Boston, MA 02109, and (v) be served so as to be received by the deadline set by the Court by the Notice Parties.  Failure to file an objection to the Sale Procedures on or before the deadline set by the Court shall forever bar the assertion of any objection to the Sale Procedures sought in the Motion and to entry of the Sale Procedures Order.

C.  Any objections to approval of the Proposed Sale must (i) be in writing, (ii) state the basis of such objection with specificity, (iii) conform to the Bankruptcy Rules and the MLBR, (iv) be filed by the deadline set by the Court with the Office of the Clerk, United States Bankruptcy Court, John W. McCormack Federal Courthouse, 5 Post Office Square, Boston, MA 02109, and (v) be served so as to be received by the deadline set by the Court by the Notice Parties.

D.  Failure to file an objection to the Proposed Sale on or before the deadline set by the Court shall (i) forever bar the assertion of any objection to any relief sought in the Motion, to entry of the Sale Order, and/or to the consummation of the Proposed Sale contemplated by the APA or any Asset Purchase Agreement with the Successful Bidder or the Backup Bidder, and (ii) for purposes of Section 363(f) of the Bankruptcy Code, shall constitute

15

"consent" to the entry of the Sale Order and consummation of the Proposed

Sale and all transactions related thereto.

**VI.** **The Break-Up Fee and Stalking Horse Protections are Reasonable and Appropriate**

22. The Trustee and the Buyer have invested substantial time and effort in negotiating and documenting the APA. The Buyer has also invested time and effort in connection with its investigation of the Debtor and the Estate and its due diligence review, as well as with drafting this Motion and related exhibits. It has incurred various legal and other professional costs and expenses and will incur still further substantial additional fees and costs to pursue the Proposed Sale.

23. In the event the Assets are sold to a party other than the Buyer, the Trustee has agreed, subject to Court approval, to pay the Buyer, from the proceeds of sale, the Break-Up Fee in the amount of 3% of the Stalking Horse Bid for the Assets ($10,500.00). Additionally, the APA provides that in the event the Buyer is neither the Successful Bidder nor the Backup Bidder, or is the Backup Bidder and the Trustee closes a sale to a Successful Bidder who is not the Buyer, the Trustee shall reimburse the Buyer for its reasonable actual fees and expenses not to exceed Fifty Thousand Dollars ($50,000.00) incurred in connection with acting as the stalking horse bidder. The Break-Up Fee and Expense Reimbursement are necessary to induce the Buyer to submit a good faith, fair and reasonable offer and to negotiate the APA that will be used as the benchmark for solicitation of higher or otherwise better competing bids. As contemplated by the APA, failure of the Bankruptcy Court to approve the Expense Reimbursement are grounds for termination of the APA.[3]

---

[3] No such grounds for termination exist under the APA if the Break-Up Fee is not approved by the Bankruptcy Court.

24.     Sellers of assets often employ bidding protections in order to encourage the making of bids.  A break-up fee is a fee paid by a seller to a potential acquirer of assets in the event the transaction is not consummated or certain conditions in the purchase agreement are not met. Break-up fees are "necessary to preserve and enhance the value of the estate by encouraging further competitive bidding and providing other potential bidders with a benchmark as to the value of the Debtor's assets." *In re Charles St. African Methodist Episcopal Church*, 510 B.R. 453, 459 (Bankr. D. Mass. 2014); *see The Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (break-up fees are "important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re JW Res., Inc.*, 536 B.R. 193 (Bankr. E.D. Ky. 2015) (citing *Integrated Resources* to evaluate reasonable break-up fee).

25.     Outside the bankruptcy arena, courts commonly approve break-up fees and expense reimbursement. Such fees and reimbursement are presumptively appropriate under the business judgment rule and nonbankruptcy courts rarely rule on their propriety. *See, e.g.*, *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 440 (S.D.N.Y. 1988).

26.     Bankruptcy courts will generally authorize bidding protections such as expense reimbursement or break-up fees as long as they "enhance" the bidding and are reasonable in relation to the bidder's efforts and the size of the transaction. *See, e.g.*, *In re Charles St. African Methodist Episcopal Church*, 510 B.R. at 459; *In re ASARCO LLC*, 441 B.R. 813, 832 (D. Tex. 2010); *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995).  One such situation is where the bidder is a "stalking horse"—an initial interested acquirer whose binding offer provides a baseline of value to the estate, promotes competition, and encourages other bidders to come

17

forward and submit competitive offers that can be measured against the benchmark established by the stalking horse bid.

27.    Through its execution of the APA, the Buyer is a stalking horse for competitive bids. Its offer establishes a baseline against which higher and better offers can be measured, and creates the springboard for potential competitive bidding. The Break-Up Fee is appropriate protection to the Buyer for submitting the "stalking horse" bid for the Assets.

28.    The negotiations between the Trustee and the Buyer regarding the terms of sale, including negotiation of the existence and amount of the Break-Up Fee and Expense Reimbursement, were focused and intensive.  The APA is the product of good faith, arm's-length negotiations between the Trustee and the Buyer.  Pursuant to the APA, the Buyer has agreed that the Trustee may shop the Buyer's offer to obtain higher or otherwise better bids for the Assets, so the Buyer's efforts and expenditures to pursue the Proposed Sale provide no assurance that the Buyer will ultimately prevail as the Successful Bidder.  Absent the Break-Up Fee and Expense Reimbursement, the Buyer would recover nothing for its significant expenditure of time and money if it ended up losing its prospective acquisition of the Assets to a competing bidder. Approval of the Expense Reimbursement by the Court is a necessary condition for the Buyer to agree to move forward with the proposed purchase.

29.    The amount of the Break-Up Fee, when compared to the total consideration payable under the APA, is extremely reasonable, especially compared to higher fees routinely approved in connection with Section 363 asset sales.  *See In re Charles St. African Methodist Episcopal Church*, 510 B.R. at 454 (approved $50,000 break-up fee in connection with $2,000,000 stalking horse bid, equivalent to 2.5% fee); *In re Tri-Wire Engineering Solutions, Inc.*, Case No. 21-11322-CJP, Order dated Sept. 15, 2021 (Dkt. No. 31) (Bankr. D. Mass.) (approved 4% break-up fee plus

18

expense reimbursement capped at $150,000); *In re Community Intervention Services, Inc.*, Case No. 21-40002-EDK, Order dated January 15, 2021 (Dkt. No. 81) (Bankr. D. Mass.) (2% break-up fee approved); *In re GKS Corporation*, Case No. 19-30998-EDK, Order dated July 21, 2020 (Dkt. No. 124) (Bankr. D. Mass.) (approved 4% break-up fee plus expense reimbursement capped at $200,000); *In re T Asset Acquisition Co., LLC*, Case No. 2:09-31853-ER, 2010 WL 4689562 (Bankr. C.D. Cal. Jan. 28, 2010) (3% break-up fee approved); *In re HHL Financial Services, Inc.*, Case No. 97-398, Order 3/31/97 (D. Del.) (approximately 5.5% to 5.9% break-up fee approved); *In re American White Cross, Inc.*, Case No. 96-1109, (Bankr. D. Del. Mar. 31, 1997) (approximately 5.8% break-up fee approved).

30. The Trustee submits that the proposed Break-Up Fee and Expense Reimbursement will not hamper or deter competitive bidding for the Assets. Rather, the Trustee's willingness to agree to the Break-Up Fee and Expense Reimbursement was necessary for the Trustee to obtain a benchmark "stalking horse" bid that serves as the floor for a sale transaction. The Break-Up Fee and Expense Reimbursement are conditional expenses that only become due and payable if a superior competing bid prevails from a Successful Bidder that is not the Buyer. This conditional expense, and assurance of payment source, addresses the notion that approval of a break-up fee should be made "in reference to general administrative expense jurisprudence." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999); *see In re Reliant Energy Channelview, LP*, 403 B.R. 308, 311-12 (D. Del. 2009).

31. If the Break-Up Fee becomes payable—by definition, because the Trustee will have received a higher or otherwise better offer—the Buyer's bid will have benefited the Debtor's estate, particularly in the context of the total consideration received. Here, the Break-Up Fee was a necessary component of the negotiations and ultimate agreement embodied in the APA, and the

19

amount of the Break-Up Fee is reasonable both in relation to the Buyer's efforts, and to the size of the Proposed Sale transaction.  For the avoidance of doubt, the Break-Up Fee is an obligation of the estate that is separate and apart from the Expense Reimbursement, and both shall only be payable from the sale proceeds received by the Trustee from the sale of the Assets and are subject to Bankruptcy Court approval.

32.     For all of these reasons, the Trustee believes that approval of the proposed Break-Up Fee and Expense Reimbursement, and of the related minimum overbid amount of competing bids that ensures a source of funding for their payment, is appropriate under the circumstances presented.

## VII.     Notice Parties

33.     The Trustee requests that all objections to any relief sought in the Motion must be filed with the Bankruptcy Court and copies served upon the following parties (the "Notice Parties"):

a)     attorneys for the Trustee, Harris Beach Murtha Cullina PLLC, 33 Arch Street, 12th Floor, Boston, MA 02110, Attn: Mark G. DeGiacomo, Esq., Email: mdegiacomo@harrisbeachmurtha.com;

b)     attorneys for the Buyer, Nixon Peabody LLP, Exchange Place, 53 State Street, Boston, MA 02109, Attn: Richard C. Pedone, Esq., Email: rpedone@nixonpeabody.com; and

c)     the Office of the United States Trustee, 5 Post Office Square, Suite 1000, Boston, MA 02109, Attn: Sara Kathryn Jackson, Esq., Email: sara.kathryn.jackson@usdoj.gov.

## VIII.     The Bankruptcy Process for Approval of the Proposed Sale

### A.     Objections

34.     If a party in interest does not believe that the proposed Sale Procedures or the Proposed Sale are reasonable or in the best interests of the Estate and its creditors, it can object by filing a written objection on the docket setting forth the basis for the objection by the deadlines set

by the Court, as applicable. Any objection must comply with the MLBR and the Bankruptcy Rules. The Trustee believes that the Proposed Sale is in the best interests of creditors, particularly since the Proposed Sale contemplates, and the Sale Procedures governing the Proposed Sale are intended to elicit the highest or otherwise best offer to purchase the Assets.

B.      **Offers to Acquire the Assets**

35.      Any party interested in submitting an offer to purchase the Assets (or any portion thereof) should contact undersigned counsel for the Trustee at the earliest possible date and comply with the deadline and governing procedures for submission of offers to be established by the Bankruptcy Court.

C.      **Sale Order**

36.      The Trustee intends that Bankruptcy Court approval of the Proposed Sale will be effected through entry of a sale order (i) approving the Asset Purchase Agreement of the Successful Bidder (or the APA in the event the Buyer is the Successful Bidder), (ii) authorizing the Trustee's sale of the Assets free and clear of all liens, claims, encumbrances, and interests, with any and all such liens, claims, and interests to attach to sale proceeds, and (iii) containing such additional provisions and protections of the Estate and Buyer as are typical for asset sales pursuant to Section 363 of the Bankruptcy Code. A proposed form of Sale Order is attached hereto as **Exhibit B**.

<div align="center"><u>**CONCLUSION**</u></div>

WHEREFORE, the Trustee respectfully requests that this Court: (a) enter the Sale Procedures Order, in substantially the form attached as **Exhibit A**, approving the proposed Sale Procedures; (b) enter the Sale Order, in substantially the form attached as **Exhibit B**, granting this Motion and approving the Proposed Sale; and (c) grant such other and further relief as this Court may deem just and proper.

<div align="center">21</div>

Respectfully submitted,


DONALD LASSMAN, CHAPTER 7 TRUSTEE OF
THE BANKRUPTCY ESTATE OF JASON M.
KAHAN,


By his attorneys,


*/s/ Zachary J. Gregoricus*

Mark G. DeGiacomo, BBO #118170
Zachary J. Gregoricus, BBO #699578
Harris Beach Murtha Cullina PLLC
33 Arch Street, 12th Floor
Boston, MA 02110
617-457-4154 Telephone
617-482-3868 Facsimile
mdegiacomo@harrisbeachmurtha.com
zgregoricus@harrisbeachmurtha.com

Dated:  May 8, 2026

22

**List of Exhibits**

Exhibit A — Proposed Sale Procedures Order

Exhibit B — Proposed Sale Order

Exhibit C — Sale Notice

Exhibit D — Asset Purchase Agreement

**EXHIBIT A**

**PROPOSED SALE PROCEDURES ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>               Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**ORDER (A) APPROVING PROCEDURES GOVERNING TRUSTEE'S PROPOSED
SALE OF CERTAIN OF THE DEBTOR'S ASSETS PURSUANT TO SECTION 363 OF
THE BANKRUPTCY CODE, FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING FORM AND
MANNER OF NOTICE OF SALE, AND (C) GRANTING RELATED RELIEF**

This matter coming before the Court upon the motion (the "Sale Motion") [Dkt. No.

____],[1] pursuant to which Donald Lassman (the "Trustee"), the duly appointed Chapter 7 trustee of

the above-captioned bankruptcy estate, seeks the entry of an order establishing procedures

governing the Trustee's proposed sale (the "Proposed Sale") of certain Assets of the Debtor's estate

(the "Estate"), as set forth on Exhibit A to the Asset Purchase Agreement dated as of May 6, 2026

(the "APA") between the Trustee and Pioneer Funding Group LLC (the "Buyer"), to Buyer or to

such other entity that submits the highest or otherwise best offer to acquire the Assets as determined

through the sale process to be governed by the proposed sale procedures described herein; no

objections to proposed sale procedures set forth in the Sale Motion having been filed; the Court

having conducted a hearing on proposed sale procedures set forth in the Sale Motion on ____,

2026; the Court having reviewed the proposed sale procedures set forth in the Sale Motion and

considered the arguments of counsel and the matters addressed at such hearing; the Court having

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings given to them
in the Sale Motion, the attached Sale Procedures, or the APA.

found and determined that proposed sale procedures set forth in the Sale Motion are in the best interests of the Debtor's estate, its creditors, and all parties in interest and that the legal and factual bases set forth in the Sale Motion establish good cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT**:[2]

A.      This Court has jurisdiction to consider the Sale Motion in accordance with 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's Chapter 7 case and the Sale Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.

B.      In the Sale Motion and at the hearing to consider approval of proposed sale procedures set forth in the Sale Motion, the Trustee demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice and all other interested parties.

C.      The Sale Notice attached as Exhibit C to the Sale Motion is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Sale Procedures (as defined herein), the Auction (as defined herein), the Proposed Sale, and the Sale Approval Hearing (as defined herein), and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

---

[2]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding by Fed. R. Bankr. P. 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

2

D.      The Sale Procedures attached hereto as <u>Exhibit 1</u> are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the Assets and the Proposed Sale.

E.      The Trustee's incurrence of the obligations arising under or in connection with the APA, including the provisions related to payment of the Break-Up Fee and the Expense Reimbursement, is: (i) of substantial and material benefit to the Debtor's estate, its creditors and all other parties in interest, because, among other things, such provisions induced Buyer to submit a bid that will serve as a minimum or floor bid for the Assets and increase the likelihood that the highest and best possible purchase price for the Assets will be realized; (ii) the product of good faith and arm's-length negotiations between the Trustee and Buyer; (iii) reasonable and appropriate in light of the size and nature of the Proposed Sale and the efforts that have been and will be expended by Buyer; and (iv) necessary to induce Buyer to enter into and continue to be bound by the APA and to continue to pursue the sale of the Assets.

F.      Entry of this Order is in the best interests of the Debtor's estate and the creditors thereof and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Sale Motion's request for approval of sale procedures governing the conduct of the Proposed Sale is GRANTED as provided for herein.  Nothing in this constitutes any approval of any sale of any of the Debtor's assets.

2.      Any objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.      The following dates and deadlines regarding the proposed sale of the Assets are approved:

3

| Event | Date |
|---|---|
| Bid and Objection Deadline | |
| Sale Approval Hearing | |

**Approval of Solicitation Procedures and Sale Procedures[3]**

4.      The submission of offers to acquire the Assets shall be governed by the procedures attached hereto as Exhibit 1 (the "Sale Procedures"), which Sale Procedures are hereby approved. The Sale Procedures shall govern the Proposed Sale, including, without limitation, with respect to the submission of competing bids, the actions of "Qualified Bidders" (as defined in the Sale Procedures), and the conduct of the Auction (as defined herein).

5.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Trustee and the Estate shall be authorized to provide due diligence information to potential bidders or Qualified Bidders.  The Trustee and the Estate are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any potential bidders or Qualified Bidders in connection with the Sale Procedures and the Proposed Sale, provided that the information was provided in accordance with this Order.

6.      The Trustee shall solicit competing bids for the Assets to be submitted utilizing an "Asset Purchase Agreement" (as defined in the Sale Procedures) substantially in the form of the APA attached to the Sale Motion as Exhibit D, and competing bidders are directed to utilize the form of Asset Purchase Agreement made available to them by the Trustee and his advisors to submit competing bids.

---

[3]      The failure to specifically include or reference any particular provision of the Sale Procedures in the Sale Motion or in this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Sale Procedures are approved in their entirety, as if fully set forth in this Order.

7.      The deadline for submission of competing bids to acquire the Assets eligible for the Trustee's consideration to be "Qualified Bids" (as defined in the Sale Procedures) in accordance with the Sale Procedures is 4:00 p.m. (prevailing Eastern Time) on _____, 2026 (the "Bid Deadline").  Any party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer after the Bid Deadline; or (b) participate as a bidder in the Auction.

8.      Buyer is hereby deemed a Qualified Bidder, and the APA attached as Exhibit D to the Sale Motion is deemed a Qualified Bid in connection with the bidding process, the Auction, and the Proposed Sale.

9.      All Qualified Bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the applicable Asset Purchase Agreement.

10.     The Trustee shall have the right as he may reasonably determine to be in the best interests of the Estate to carry out the Sale Procedures, including, without limitation, to: (a) determine which bidders are Qualified Bidders; and (b) determine which bids are Qualified Bids.

11.     If one or more Qualified Bids in addition to Buyer's Qualified Bid pursuant to the APA are received by the Bid Deadline, an auction shall be conducted on _____, 2026 during the Sale Approval Hearing (the "Auction").  Following the conclusion of the Auction, the Trustee shall designate the Winning Bid and shall seek approval of the Proposed Sale.  If no Qualified Bid other than Buyer's Qualified Bid pursuant to the APA is received before the Bid Deadline, no Auction shall be conducted and Buyer shall be deemed the Successful Bidder.

12.     If the Auction is conducted, each Qualified Bidder attending the Auction shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n)

5

of the Bankruptcy Code, with respect to the bidding or the Proposed Sale.  Only the Trustee, Buyer, and any other Qualified Bidder that has timely submitted a Qualified Bid, shall be permitted to participate in the Auction.  At the conclusion of the Auction, the Trustee shall determine, subject to court aporoval, which Qualified Bid is the "Winning Bid" and which Qualified Bid is the "Back-Up Bid" (each as defined in the Sale Procedures), each as it relates to the Auction.

**Break-Up Fee, Expense Reimbursement, and Stalking Horse Protections**

13.     The Break-Up Fee in the amount of 3% of the Stalking Horse Bid ($10,500.00) for the Assets is approved.  The Break-Up Fee shall be payable by the Trustee to the Buyer from the proceeds of the sale of the Assets to a purchaser other than the Buyer, pursuant to the terms of the APA.  The Break-Up Fee (i) shall, if payable, constitute an allowed administrative expense claim against the Debtor's estate, and (ii) shall be paid from the proceeds of the sale, in accordance with the terms of this Order and the APA, without further order of this Court.

14.     The Expense Reimbursement for Buyer's reasonable actual fees and expenses not to exceed Fifty Thousand Dollars ($50,000.00) incurred in connection with acting as the Stalking Horse Bidder is approved, payable from the sale proceeds in the event that the Bankruptcy Court enters an order approving the sale of the Assets to a purchaser other than Buyer, pursuant to the terms of the APA.  Buyer shall provide Trustee with the amount of its Expense Reimbursement at least one (1) day prior to the hearing to approve the sale to a Successful Bidder for the Assets other than Buyer.

**Notice of Proposed Sale; Sale Approval Hearing**

15.     Notice of the Proposed Sale provided in the following manner is reasonably calculated to provide good, effective, and sufficient notice to any affected party of the Proposed Sale and of the opportunity to exercise any rights affected by the Sale Motion as it relates to the

Sale Procedures, Auction, Proposed Sale, and Sale Approval Hearing (as defined herein), for purposes of Rules 2002, 6004 and 9007 of the Federal Rules of Bankruptcy Procedure, and such notices are hereby approved.

16.    No later than _____, 2026, the Trustee will promptly serve a copy of each of (A) this Order, (B) the form of Sale Notice substantially in the form attached to the Sale Motion as Exhibit C, and (C) the Sale Motion (without exhibits) upon (i) the Debtor and his counsel of record, (ii) counsel for the United States Trustee, (iii) any entities known to hold or claim a lien, security interest, or other interest in any of the Assets, including Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, and NordCap Advisors SA, (iv) all entities that have indicated to the Trustee any interest in acquiring any of the Assets, and (v) all parties that have requested notice and service of pleadings in the Debtor's Chapter 7 case. Service to the entities listed in clauses (i) through (v) may be made by email, including through the Court's CM/ECF system to such parties' counsel registered as users of such system in this Chapter 7 case.

17.    Additionally, the Trustee will no later than _____, 2026, serve a copy of (A) this Order and (B) the Sale Notice, by United States mail upon (i) the Internal Revenue Service, (ii) each of the Debtor's federal and state taxing authorities, and (iii) all other known creditors of the Debtor.  The Sale Notice will inform such parties that a copy of the Sale Procedures and the Sale Motion (without exhibits, unless requested), may be obtained by making a written request to counsel to the Trustee.

18.    Any objections to approval of the proposed sale of the Assets must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the local rules of the Court, (d) be filed by 4:00 p.m. (prevailing Eastern Time) on _____, 2026 (the "Sale Approval Objection

Deadline") with the Office of the Clerk, United States Bankruptcy Court, John W. McCormack

Federal Courthouse, 5 Post Office Square, Boston, MA 02109, and (e) be served so as to be

received by the Sale Approval Objection Deadline by the following parties (the "Notice Parties"):

     a.     attorneys for the Trustee, Harris Beach Murtha Cullina PLLC, 33 Arch Street, 12th Floor, Boston, MA 02110, Attn: Mark G. DeGiacomo, Esq., Email: mdegiacomo@harrisbeachmurtha.com;

     b.     attorneys for the Buyer, Nixon Peabody LLP, Exchange Place, 53 State Street, Boston, MA 02109, Attn: Richard C. Pedone, Esq., Email: rpedone@nixonpeabody.com; and

     c.     the Office of the United States Trustee, 5 Post Office Square, Suite 1000, Boston, MA 02109, Attn: Sara Kathryn Jackson, Esq., Email: sara.kathryn.jackson@usdoj.gov.

19.     Failure to file an objection to the Proposed Sale (a "Sale Objection") on or before

the Sale Approval Objection Deadline (a) shall forever bar the assertion, whether at any Sale

Approval Hearing (as defined herein) or thereafter, of any objection to the Motion, to entry of the

Sale Order, and/or to the consummation of the Proposed Sale contemplated by the APA or any

Asset Purchase Agreement with the Successful Bidder or the Backup Bidder, and (b) for purposes

of section 363(f) of the Bankruptcy Code, shall constitute "consent" to the entry of the Sale Order

and consummation of the Proposed Sale and all transactions related thereto.

20.     On _____, 2026 at ___:___ _.m. (prevailing Eastern Time), a hearing

(the "Sale Approval Hearing") will be held before the Honorable Janet E. Bostwick, United States

Bankruptcy Judge, John W. McCormack Federal Courthouse, 5 Post Office Square, 12th Floor,

Boston, MA 02109 to consider approval of the sale of the Assets to the Successful Bidder. The

Sale Approval Hearing may be adjourned from time to time without further notice to creditors or

parties in interest other than by announcement of the adjournment in open court at the Sale

Approval Hearing.

8

**Miscellaneous**

21.     The Trustee is authorized and empowered to take or perform such actions and expend such funds as may be necessary to implement the sale process authorized by this Order.

22.     The Trustee is authorized to conduct the Proposed Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

23.     In the event that there is a conflict between this Order or the Sale Procedures, on the one hand, and the Sale Motion, on the other hand, this Order and the Sale Procedures shall control and govern, and this Order shall control in the event of any conflict with the Sale Procedures.

24.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Fed. R. Bankr. P. 6004(h) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the local rules of this Court is expressly waived. The Trustee is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in his sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

25.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2026

_____
HONORABLE JANET E. BOSTWICK
UNITED STATES BANKRUPTCY JUDGE

9

## EXHIBIT 1 TO SALE PROCEDURES ORDER

## SALE PROCEDURES

Set forth below are the sale procedures (the "Sale Procedures") to be employed in connection with the proposed sale of certain assets (the "Assets") of the bankruptcy estate (the "Estate") of Jason M. Kahan (the "Debtor"), in connection with the Debtor's Chapter 7 case pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), Case No. 24-11592-JEB.

Donald Lassman, the Chapter 7 trustee (the "Trustee"), entered into that certain Asset Purchase Agreement, dated May 6, 2026 with Pioneer Funding Group LLC ("Buyer") pursuant to which Buyer will acquire the Assets on the terms and conditions specified therein (together with the schedules and related documents thereto, the "APA," a copy of which is attached as Exhibit D to the Sale Motion (defined below)). The sale transaction pursuant to the APA is subject to competitive bidding as set forth herein.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the following documents, as applicable:

i.  the APA;

ii. the *Chapter 7 Trustee's Motion For: (I) Entry of An Order (A) Approving Procedures Governing Trustee's Proposed Sale Of Certain Of The Debtor's Assets Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Other Interests, (B) Approving Form And Manner Of Notice Of Sale, And (C) Granting Related Relief; And (II) Authority To Sell Certain Of The Debtor's Assets Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Other Interests* (the "Sale Motion"); and/or

iii. the *Order (A) Approving Procedures Governing Trustee's Proposed Sale Of Certain Of The Debtor's Assets Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Other Interests; (B) Approving Form And Manner Of Notice Of Sale; And (C) Granting Related Relief* (the "Sale Procedures Order").

## ASSETS TO BE SOLD

The Trustee seeks to consummate a sale of the Assets, consisting of all of the Debtor's and the Estate's right, title, and interest in: (i) the BTC Wallets and all cryptocurrency therein; (ii) the Estate Bitcoin, including any cryptocurrency transferred out of the BTC Wallets since their inception; (iii) all legal and equitable rights, interests, title, and standing to pursue the Recovery Actions, including causes of action arising under Chapter 5 of the Bankruptcy Code; (iv) all legal and equitable rights, interests, and title to non-executory contracts, whether known or unknown, which concern or relate to the BTC Wallets; and (v) the Trustee's and the Estate's rights and

standing to seek and obtain recognition, domestication, and/or enforcement of the Sale Order in any jurisdiction, as more particularly described in the APA.

The sale of the Assets is on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, the Debtor's creditors or the Estate, except to the extent set forth in the APA or in the asset purchase agreement of the Successful Bidder or Backup Bidder, as the case may be (as defined herein), as approved by the Bankruptcy Court. Except as otherwise provided in such approved asset purchase agreement, all of the Estate's right, title and interest in and to each Asset to be acquired shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "Encumbrances"), and such Encumbrances will attach solely to the net proceeds of the sale.

## THE BID PROCEDURES

1.      Bidding Process. The Trustee, subject to court approval, shall have the sole right to (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence reviews, (iii) receive offers from Qualified Bidders, (iv) give notice to all parties with respect to the Sale Procedures and the Auction relating to the Assets, and (v) evaluate any bid.

2.      Reservation of Rights. The Trustee, subject to court approval, may (i) designate, in his business judgment, which Qualified Bid (as defined below), if any, is the highest or otherwise best offer and (ii) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Trustee's sole discretion is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures, or (c) contrary to the best interests of the Estate and its creditors.

3.      Due Diligence. Unless a specific exception is granted by the Trustee, each bidder must complete all required due diligence prior to the submission of its bid. The Trustee will continue to provide due diligence information to potential bidders who so request by contacting the attorneys for the Trustee, Harris Beach Murtha Cullina PLLC, 33 Arch Street, 12th Floor, Boston, MA 02110, Attn: Mark G. DeGiacomo, Esq., Email: mdegiacomo@harrisbeachmurtha.com. The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline or to any person that the Trustee determines is not reasonably likely to be a Qualified Bidder. The Trustee will condition due diligence disclosures upon a bidder's execution of a confidentiality agreement in a form satisfactory to the Trustee.

4.      Minimum Amount of Competing Bids. The initial overbid must have a value of not less than Four Hundred Fifteen Thousand Five Hundred Dollars ($415,500.00), which is comprised of the Purchase Price ($350,000.00), the Expense Reimbursement (up to $50,000.00), and the Break-Up Fee ($10,500.00), plus an additional Five Thousand Dollars ($5,000.00) (the "Initial Overbid Amount").

5.      Required Bid Documents. Unless otherwise indicated below, all competing bids must include the following information/documents (the "Required Bid Documents"), which must be received by the Bid Recipient (as defined below) by the Bid Deadline:

2

a.   a legally-binding offer to purchase the Assets, pursuant to an executed version of the APA in substantially the same form thereof, with any proposed changes marked in a blackline (the "APA Blackline"), providing for the offeror's purchase of the Assets on an "as is, where is" basis for a purchase price consideration having a value of not less than the Initial Overbid Amount and not subject to any contingencies other than entry of an order of the Bankruptcy Court authorizing the Trustee's sale of the Assets free and clear of liens, claims and interests in form and substance customary for Section 363 asset sales of similar nature;

b.   evidence of the bidder's financial ability to consummate a sale of the Assets, including the source of funds and the disclosure of the identity of any entities or persons who will participate or have an interest in any potential competing bid;

c.   a statement under penalty of perjury stating whether the bidder or any of its affiliates are (x) insiders of the Debtor as defined in Section 101(31) of the Bankruptcy Code, (y) currently hold any of the Assets, including but not limited to the private keys related to the Assets, and (z) have had any prior involvement with any of the Assets (the "Qualified Bidder Statement");

d.   a deposit in the amount of at least Thirty-Five Thousand Dollars ($35,000.00) by cashier's check made payable to the Trustee;

e.   written evidence that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its offer, or a representation that no such authorization and approval is required;

f.   the bidder's acknowledgement and representation that the bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (d) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid; and

g.   such other information as may be reasonably requested by the Trustee.

6.   Bid Deadline. To be considered a timely bid, the bid containing the Required Bid Documents **must be delivered so as to be received not later than ____** (the "Bid Deadline") by the following parties (the "Bid Recipient"):

3

Harris Beach Murtha Cullina PLLC
33 Arch Street, 12th Floor
Boston, MA 02110
Attn: Mark G. DeGiacomo, Esq.
Email: mdegiacomo@harrisbeachmurtha.com

7.      Qualified Bids. To constitute a "Qualified Bid" a competing bid must include each of the Required Bid Documents listed above, be accompanied by the required deposit, and:

a.      be timely received by the Bid Deadline;

b.      provide information satisfactory to the Trustee that the bidder is reasonably likely to be able to consummate the proposed transaction if selected as the Successful Bidder;

c.      not be subject to or conditioned upon any financing contingencies;

d.      not be conditioned on the outcome of due diligence;

e.      be binding on each entity participating in the bid;

f.      not request or entitle the bidder to any breakup fee, termination fee, expense reimbursement, or similar type of payment; and

g.      provide for the closing of such transaction within a time frame that is no longer than the time frame provided for by the APA, except as may otherwise be agreed to by the Trustee.

8.      A bidder that submits a Qualified Bid will, subject to the Trustee's determination, be a "Qualified Bidder". The offer of Buyer set forth in the APA is deemed to constitute a Qualified Bid and Buyer is deemed to be a Qualified Bidder with respect to any Auction (as defined below). To the extent there are Qualified Bidders and an Auction is held, at least three (3) days before the Auction, the Trustee shall provide to Buyer the APA Blackline and Qualified Bidder Statement of each Qualified Bidder participating in the Auction.

9.      Irrevocability of Qualified Bids. Qualified Bids shall be deemed irrevocable offers to acquire the Assets and shall remain irrevocable and subject to acceptance by the Trustee until the Trustee has designated the Winning Bid and the Back-Up Bid (each described below) and the Bankruptcy Court has approved the Trustee's acceptance of the Winning Bid and designation of the Back-Up Bid, at which time any other bids shall be deemed rejected and such rejected bidders' deposits returned.

10.      Notification of Qualified Bidders; No Qualified Bids. Promptly after the Bid Deadline, the Trustee shall determine, and notify each potential bidder, whether such potential bidder has submitted acceptable Required Bid Documents such that it is deemed a Qualified Bidder. If the Trustee does not receive any Qualified Bids other than the APA, the Trustee will not hold an Auction, Buyer will be named the Successful Bidder (as defined below) upon the

4

expiration of the Bid Deadline, and the Trustee shall seek approval of the sale of the Assets to Buyer pursuant to the APA at the Sale Approval Hearing.

11.     Auction and Sale Approval Hearing. After the Bid Deadline, the Trustee shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the transaction process, including those factors affecting the speed and certainty of consummating the proposed transaction, and may negotiate with Qualified Bidders regarding improvements or alterations of their bids. If at least two Qualified Bids (including Buyer's Qualified Bid pursuant to the APA) are submitted, then, after all such bids have been so reviewed, the Trustee shall conduct the Auction with respect to the Proposed Sale. Each Qualified Bidder shall at the commencement of the Auction be required to confirm that it has not engaged in any collusion, within the meaning of Section 363(n) of the Bankruptcy Code, with respect to any bids submitted or not submitted in connection with the Sale. **The Auction shall take place during the Sale Approval Hearing**.  Only the Trustee, the Buyer, and any other Qualified Bidder that has timely submitted a Qualified Bid shall be eligible to participate in the Auction. At the Auction, each Qualified Bidder's auction bid(s) shall be deemed to be on the same terms and conditions as such bidder's Qualified Bid as set forth in its Asset Purchase Agreement, except for the specific changes stated in any bid (e.g., increased offer price, waiver of conditions, etc.) and otherwise as expressly agreed upon by the Trustee.

12.     Conduct of the Auction. The Trustee may from time to time waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are: (i) not inconsistent with the Sale Procedures Order, the APA, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local rules of the Bankruptcy Court, or any order of the Bankruptcy Court entered in connection with the Debtor's Chapter 7 case, and (ii) disclosed to each Qualified Bidder.  In the event the Auction is conducted, each subsequent overbid following the Initial Overbid Amount shall be in additional increments of at least Sixty Thousand Five Hundred Dollars ($60,500.00) above the prior prevailing bid.

13.     Selection of Winning Bid and Back-Up Bid. At the conclusion of the Auction, the Trustee will designate, and then announce, the highest or otherwise best bid for the Assets (the "Winning Bid") and the Qualified Bidder submitting such bid (the "Successful Bidder"). The Trustee will also designate the second-best bid to constitute the back-up bid in case the Successful Bidder fails to consummate the Proposed Sale (the "Back-Up Bid"), and the Qualified Bidder submitting such bid (the "Backup Bidder"). Upon the Trustee's designation of the Successful Bidder at the Backup Bidder, the Auction shall be deemed concluded and the Trustee shall not consider any more offers for the Assets. The Trustee's designation of the Winning Bid, Successful Bidder, Back-Up Bid, and Backup Bidder is subject to approval of the Bankruptcy Court through entry of an order so providing following the conclusion of the Sale Approval Hearing.  Upon entry of an order approving the sale of the Assets to the Successful Bidder, the Proposed Sale shall be consummated as provided by and pursuant to the terms and conditions of the Successful Bidder's Asset Purchase Agreement.  The Back-Up Bid shall remain open for acceptance by the Trustee until the closing under the Successful Bidder's Asset Purchase Agreement.  If the Successful Bidder shall fail to close, (i) the Backup Bidder shall be obligated to close within ten (10) business

5

days of being notified that the Closing with the Successful Bidder has failed to close due to breach by the Successful Bidder; and (ii) the Outside Date shall be extended by thirty (30) calendar days.

14.     <u>Acceptance of Qualified Bid.</u> The Trustee intends to seek approval of the highest or otherwise best Qualified Bid received. The Trustee's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Trustee's acceptance of the bid. The Trustee will have accepted a bid only when the bid has been approved by the Bankruptcy Court and the Trustee has executed the final form of the Asset Purchase Agreement embodying the sale of the Assets as approved by the Bankruptcy Court pursuant to the Sale Order.

15.     <u>Return of Deposits.</u> All deposits shall be returned to each bidder not selected by the Trustee as the Successful Bidder or the Backup Bidder no later than five (5) business days following the conclusion of the Auction.

## SALE APPROVAL HEARING

The hearing to consider approval of the sale of the Assets to the Successful Bidder will be held on **_____, 2026 at ____** (the "<u>Sale Approval Hearing</u>") before the Honorable Janet E. Bostwick, United States Bankruptcy Judge, John W. McCormack Federal Courthouse, 5 Post Office Square, 12th Floor, Boston, MA 02109.  The Sale Approval Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court at the Sale Approval Hearing.

Failure to file an objection to the Proposed Sale on or before _____, 2026 (the "<u>Sale Approval Objection Deadline</u>") (a) shall forever bar the assertion, whether at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, to entry of the Sale Order, and/or to the consummation of the Proposed Sale contemplated by the APA or any Asset Purchase Agreement with the Successful Bidder or the Backup Bidder, and (b) for purposes of Section 363(f) of the Bankruptcy Code, shall constitute "consent" to the entry of the Sale Order and consummation of the Proposed Sale and all transactions related thereto.

## EXHIBIT B

## PROPOSED SALE ORDER

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>             Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE**
**DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES**
**AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

Before the Court is the motion [ECF #__ ] (the "Sale Motion") filed by Donald Lassman, the Chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 case of Jason M. Kahan (the "Debtor"), seeking entry of an order (this "Sale Order"), pursuant to Sections 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-5 and 6004-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the District of Massachusetts (the "MLBR") authorizing and approving the sale (the "Sale") of certain assets of the Debtor's estate (the "Purchased Assets"), as set forth on Exhibit A of the Asset Purchase Agreement, dated May 6, 2026 (the "APA")[1], by and between the Trustee and Pioneer Funding Group LLC (including any subsequent designee or other successor designated prior to the closing of the Sale, the "Buyer", the "Stalking Horse Bidder" or the "Successful Bidder") free and clear of all liens, claims, encumbrances and interests and granting related relief.

---

[1]    The APA is attached hereto as Exhibit 1.  Capitalized terms used but not defined in this Sale Order shall have the meanings ascribed to such terms in the Sale Motion.

The Trustee having determined that the highest and otherwise best offer for the sale of the Purchased Assets was made by the Buyer in the form of the APA; and the Court having held a hearing on May __, 2026 (the "Sale Hearing") to approve the APA and the transactions and agreements contemplated therein (the "Sale Transaction"); and the Court having reviewed and considered (i) the Sale Motion, (ii) any objections and replies related thereto and resolution of objections announced on the record, and (iii) the arguments of counsel and the evidence and testimony proffered (if any) or adduced at the Sale Hearing; and, upon the record of the Sale Hearing, and all other pleadings and proceedings in the case, the Court being satisfied that the relief requested in the Sale Motion is necessary and in the best interests of the Debtor's estate, creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

**Background**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the APA, pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2

Venue of the case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.       The statutory authorization for the relief granted herein is found in Sections 105(a), 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014, and MLBR 2002-1 and 6004-1.

D.       This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

<div align="center">**Marketing and Sale Process**</div>

A.       On August 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and commenced this chapter 7 case in the United States Bankruptcy Court for the District of Massachusetts (this "Court").

B.       The Trustee selected the Stalking Horse Bidder as the Successful Bidder and the Stalking Horse Bidder's bid (which is memorialized in the APA subject to the terms of this Sale Order) was the highest or otherwise best Bid for the Purchased Assets.

C.       In January of 2026, the Trustee commenced the marketing of the Purchased Assets for sale.  The Trustee's efforts included providing notice of the Trustee's intent to sell the Purchased Assets and a request for bids for the same by first-class and electronic mail to all creditors in the Debtor's bankruptcy case and all persons and other parties who the Trustee believed may be interested in purchasing the Purchased Assets, including persons who had directly or indirectly expressed an interest in the Purchased Assets during the course of the Debtor's bankruptcy case.  The Trustee provided notice of his intent to sell the Purchased Assets to more than one hundred (100) persons.  The Trustee and his counsel received significant interest in response to the Trustee's notice and engaged in numerous communications and conferences with

<div align="center">3</div>

the interested parties, including responding to a wide variety of questions and other inquiries concerning the Purchased Assets and providing documentation in support of the same. The Trustee ultimately received five (5) offers to purchase the Purchased Assets.

D.      The Trustee's marketing and sales process with respect to the Purchased Assets afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Trustee and his counsel conducted a marketing and sale process with respect to the Purchased Assets, and the Successful Bidder participated, each in a fair, good faith, and non-collusive manner.

E.      The Successful Bid of the Successful Bidder constitutes the highest or otherwise best offer for the Purchased Assets, and the Trustee's determination that the APA maximizes value for the benefit of the Debtor's estate and constitutes the highest or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

F.      The Successful Bid provides fair and reasonable terms for the purchase of the Purchased Assets, and reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Purchased Assets. No such offer has been made. Therefore, approval of the Sale Motion and the Successful Bid, and the prompt consummation of the Sale Transaction contemplated thereby, will maximize the value of the Debtor's estate under the circumstances and are in the best interests of the Debtor's estate, creditors and other parties in interest.

G.      After the Trustee's selection of the Stalking Horse Bidder as the Successful Bidder, the Trustee and the Successful Bidder negotiated and finalized in good faith and at arm's length the APA and all related documents necessary to consummate the Sale Transaction.

H.      The Successful Bidder has complied with all applicable orders of the Court in negotiating and entering into the APA.

## Sale Hearing

I.      The Court conducted the Sale Hearing on May __, 2026, at which time the Court considered the Sale Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Sale Motion and approval of the APA and the transactions contemplated by the APA.

J.      All objections to the Sale Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

## Sound Business Purpose

K.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction contemplated by the APA in accordance with the requirements of Section 363(b) of the Bankruptcy Code. The value of the Debtor's estate will be maximized through a sale of the Purchased Assets.  Approval of the APA is necessary to preserve the value of the Debtor's assets. The Trustee has determined, in his reasonable business judgment that the Purchased Assets will have the greatest value if promptly sold to the Successful Bidder.

L.      As a result, the proposed Sale Transaction pursuant to Sections 105(a) and 363 of the Bankruptcy Code, upon the terms and conditions set forth in the APA subject to this Sale Order, is the best alternative available to the Trustee for recovering value for the benefit of the Debtor's estate. The Sale Transaction contemplated by the APA maximizes the value of the Purchased Assets.

5

**Fair Purchase Price**

M.     The total consideration to be provided by the Successful Bidder pursuant to the Successful Bid as set forth in the APA is the highest or otherwise best offer received by the Debtor and constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Purchased Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia. The terms of the Sale Transaction contemplated in the APA are fair and reasonable.

**Compliance With Notice Requirements**

N.     As evidenced by the notices and affidavits of service filed in the case, and based upon representations of the Trustee's counsel at the Sale Hearing, the notice provided by the Trustee (collectively the "Notice") was adequate and sufficient under the circumstances, and the Trustee provided sufficient notice of the Sale Motion, the Sale Hearing, and the Trustee's intent to consummate a sale of the Purchased Assets as contemplated by the APA and this Sale Order.  The Notice was provided to all parties who the Trustee believes may be in possession or control of the Purchased Assets, including Mr. Hunter Penn,  Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA and the Debtor.

O.     The Notice was provided in accordance with Sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014, and MLBR 2002-5 and 6004-1. The Trustee has complied with all obligations to provide notice of the Sale Motion, the Sale Hearing, the APA, this Sale Order, and the Sale Transaction. Such Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the

6

Sale Hearing, the APA, this Sale Order, or the Sale Transaction is or shall be required. All parties in interest had a full and fair opportunity to object to the relief granted in this Sale Order.

**Good Faith of the Buyer**

P.      The Buyer is purchasing the Purchased Assets and has negotiated and entered into the APA at arm's length and in good faith and without collusion. Accordingly, the Buyer is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the full protections of such provision. The good faith of the Buyer is evidenced by, among other things, the following facts:

i.      The sale process conducted by the Trustee was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.

ii.      The Buyer's Successful Bid is the product of good faith negotiations with the Trustee.

iii.      No other Potential Bidder submitted a Qualified Bid for the Purchased Assets.

iv.      All payments to be made by the Buyer and other agreements or arrangements in connection with the APA have been disclosed.

v.      The Buyer has not violated the provisions of Section 363(n) of the Bankruptcy Code by any action or inaction.

vi.      The Buyer is a third-party purchaser and is unrelated to the Debtor or the Trustee. Neither the Buyer nor any of its affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of the Debtor, as that term is defined in Section 101(31)(A) of the Bankruptcy Code.

vii.      The Trustee and the Buyer have engaged in substantial arm's length negotiations in good faith. The APA is the product of arm's length bargaining among the parties.

7

Q.     The sale of the Purchased Assets pursuant to the APA and this Sale Order, all covenants therein and conditions thereto, and all relief requested in the Sale Motion are an integrated transaction, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated. Accordingly, the entire transaction is subject to, and is protected by, the provisions of Section 363(m) of the Bankruptcy Code.

**Sale Free and Clear**

R.     On and after the Closing of the Sale Transaction, no entity shall have any Lien, Claim and/or Interest (as defined herein) in or against the Purchased Assets.

S.     All Liens, Claims and/or Interests that existed against the Purchased Assets prior to the Closing, whether pre-petition or post-petition, shall, upon Closing, attach solely to the sale proceeds that the Trustee and the Debtor's estate receive under the Sale Transaction. Those Liens, Claims and/or Interests will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against the Purchased Assets prior to Closing (including, for the avoidance of doubt, as set forth in any other applicable Orders of this Court), and will be subject to any claims and defenses the Trustee or Debtor's estate may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Sale Order.

T.     Pursuant to Section 363(f) of the Bankruptcy Code, a trustee is authorized to sell property of the estate free and clear of any liens, claims, interests, and encumbrances if any of the following requirements is satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (ii) the entity holding the alleged lien, claim, interest, or encumbrance; (iii) such interest is a lien, and the price at which such property is to be sold is greater

than the aggregate value of all liens on such property (Section 363(f)(3) of the Bankruptcy Code); (iv) such lien, claim, interest, or encumbrance is subject to a bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance.

U.      For the following reasons, the provisions of Section 363(f) of the Bankruptcy Code have been satisfied:

i.      All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction contemplated by the APA are deemed to have consented. Alleged holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the subsections of Section 363(f) of the Bankruptcy Code.

ii.      The Trustee is not aware of any remaining interests in the Purchased Assets, and, if any such interests exist, they are in bona fide dispute as to the extent, validity, perfection, and viability of those interests.

iii.      Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances or such interest is a lien and the price at which such encumbered property is to be sold under the APA is greater than the aggregate value of all liens on such encumbered property.

V.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets will be transferred to the Buyer free and clear of all Liens, Claims, Interests and rights of setoff and recoupment, with all other applicable Liens, Claims and/or Interests to attach to the proceeds of the sale of the Purchased Assets in the order of their priority with the validity, force, and effect that they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Trustee and the Debtor's estate and all interested parties

9

with respect to such Liens, Claims and/or Interests and with the net proceeds from the sale of the Purchased Assets to be available for the benefit of the Debtor's estate.

W.      Accordingly, the Trustee has satisfied the standard set forth in Section 363(f) of the Bankruptcy Code for selling the Purchased Assets free and clear of all Liens, Claims and/or Interests.

### Sale Free and Clear Required by the Buyer

X.      In connection with the APA, the Buyer expressly negotiated for the protection of obtaining the Purchased Assets free and clear of all Liens, Claims, Interests and rights of setoff and recoupment (including, without limitation, any potential successor liability claims).   The Buyer would have paid substantially less consideration for the Purchased Assets, or not purchased the Purchased Assets at all, if the Buyer were not purchasing the Purchased Assets free and clear of any Liens, Claims, Interests and rights of setoff and recoupment.

### No Successor Liability

Y.      To the greatest extent permitted by law, neither the Buyer nor its affiliates, officers, directors, members, partners, and principals or any of their respective representatives, successors, or assigns shall be deemed, as a result of the consummation of the Sale Transaction contemplated by the APA or otherwise, to be liable for any claim based on successor liability, transferee liability, derivative liability, vicarious liability, or any similar theories under applicable state or federal law, or otherwise. The Buyer shall have no liability or obligation of the Trustee, the Debtor or the Debtor's estate and the Buyer is not otherwise, expressly or impliedly, assuming any of the debts or obligations of the Trustee, the Debtor or the Debtor's estate.  No party may assert any rights of setoff or recoupment against the Buyer to the extent such rights were assertable against the Debtor or the Debtor's estate prior to the Closing of the Sale Transaction.

10

Z.      The Buyer and the Trustee are not entering into the APA fraudulently or in order to escape liability for the Debtor's obligations.

**No Fraudulent Intent**

AA.     The APA was not entered into, and the Sale Transaction contemplated by the APA will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtor's present or future creditors for purposes of the Bankruptcy Code, any other applicable laws of the United States, and any applicable laws of any state, territory, or possession thereof, or the District of Columbia. Neither the Debtor nor the Buyer is entering into the APA or consummating the Sale Transaction contemplated by the APA with any fraudulent or otherwise improper purpose.

**Purchased Assets**

BB.     The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of the Bankruptcy Code. As the duly appointed chapter 7 trustee of the Debtor's estate, the Trustee has all title, interest, and/or rights in the Purchased Assets required to transfer and to convey the Purchased Assets to the Buyer, as required by the APA.

CC.     The Trustee acknowledges that some of the Purchased Assets are currently being improperly withheld by third parties.  The Buyer may initiate claims, causes of action, contested matters, adversary proceedings or other litigation in connection with recovery and access to the Purchased Assets (the "Recovery Actions").  The Buyer shall have the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor.  Any and all proceeds and recoveries from any Recovery Actions shall be the sole property of the Buyer. The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. The Trustee shall provide reasonable good-faith cooperation to Buyer in connection with

11

its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions. The Trustee further agrees not to interfere with Buyer's Recovery Actions.

DD.     Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). The Purchased Assets are not of inconsequential value or benefit to the estate. To the extent any third party is in possession, control or in any way interfering with Buyer's access to any of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS and NordCap Advisors SA, such third parties shall immediately deliver possession, control and access to the Purchased Assets (and any proceeds thereof) to the Buyer. This Court shall retain jurisdiction over any action, suit or proceeding brought by the Buyer to compel turnover of the Purchased Assets, including but not limited to any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code or applicable law.

**Prompt Consummation**

EE.     To maximize the value of the Purchased Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the APA. Time is of the essence in consummating the Sale Transaction contemplated by the APA. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA,

12

including, without limitation, the Sale Transaction. Accordingly, there is cause to grant relief from the stay established by Bankruptcy Rule 6004.

## Section 363 Sale

FF.    The proposed sale of the Purchased Assets to the Buyer pursuant to the APA constitutes a sale of property of the Debtor's estate outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

GG.    Under the circumstances of the case, the sale of the Purchased Assets to the Buyer pursuant to Sections 105(a) and 363(b) and (f) of the Bankruptcy Code is both justified and appropriate.

HH.    The sale of the Purchased Assets to the Buyer free and clear of any and all Liens, Claims, Interests and rights of setoff and recoupment upon the terms and conditions set forth in the APA is in the best interests of the Debtor's estate.

II.    Given the circumstances of the case, the reasonable opportunity afforded other parties to make competing bids or offers for the Purchased Assets, and the adequacy and fair value of the consideration being paid by the Buyer under the APA, the proposed sale of the Purchased Assets to the Buyer constitutes a reasonable and sound exercise of the Trustee's business judgment and is hereby approved in all respects.

## Retention of Jurisdiction

JJ.    It is necessary and appropriate for the Court to retain jurisdiction to, among other things, (i) interpret and enforce the terms and provisions of this Sale Order and the APA, (ii) to adjudicate, if necessary, (ii) to adjudicate, if necessary, any and all actions, suits or proceedings brought by the Trustee or the Buyer to compel turnover of the Purchased Assets from third parties, including but not limited to any action under 11 U.S.C. § 542, any other provision of Chapter 5 of the Bankruptcy Code or applicable law, and (iii) to adjudicate, if necessary, any alleged right, title,

or property interest, including ownership claims, relating to the Purchased Assets and the proceeds

thereof, as well as the extent, validity, perfection, and priority of any alleged lien or claim relating

to the Debtor's estate and/or the Purchased Assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      The relief requested in the Sale Motion is granted and approved as set forth in this

Sale Order.

### The Sale Transaction is Approved

2.      The Sale Transaction contemplated by the APA is hereby approved as set forth in

this Sale Order.

3.      The Trustee is hereby authorized and directed to sell the Purchased Assets to the

Buyer upon and subject to the terms and conditions set forth in the APA, the provisions of which

are incorporated herein by reference as if set forth in full herein.

4.      The Trustee is hereby authorized and directed to perform, consummate, and

implement the APA, together with all additional instruments and documents that may be

reasonably necessary or desirable to implement the APA, and to take any and all further actions as

may be necessary or appropriate to the performance of their respective obligations as contemplated

by the APA or this Sale Order.

5.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing,

the Purchased Assets shall be transferred, sold, and delivered to the Buyer free and clear of all

Liens, Claims, Interests and rights of setoff and recoupment.  All other Liens, Claims and/or

Interests that existed against the Purchased Assets prior to the Closing shall attach to the sale

proceeds the Trustee receives under the Sale Transaction. Those Liens, Claims and/or Interests

will attach to the proceeds of the Sale Transaction in the same order of relative priority and with

the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against

14

the Purchased Assets prior to Closing (including, for the avoidance of doubt, in accordance with any other applicable Orders of this Court), and will be subject to any claims and defenses the Trustee may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Sale Order by having their Liens, Claims and/or Interests, if any, in each instance against the Debtor's estate or any of the Purchased Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Purchased Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Trustee and the Debtor's estate may possess with respect thereto.

6.      To the greatest extent permitted by law, as a result of the Sale Transaction contemplated by the APA, the Buyer will have no liability for any Liens, Claims and/or Interests against the Debtor's estate as a result of any application of successor liability or other theories.

7.      Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the APA, the Purchased Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and interests, which are collectively referred to herein as the "Liens, Claims and/or Interests," which include, by way of illustration and without limitation, each of the following:

    i.      liens (as that term is defined in the Bankruptcy Code), including, without limitation, mechanics', materialmens', contractors' subcontractors', and other consensual and non-consensual liens and statutory liens, mortgages, hypothecations, charges, consents, judicial liens (as defined in the Bankruptcy Code), instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Encumbrances, covenants, easements, servitudes, and liens and security interests granted under Sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court;

    ii.      interests, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

15

iii.   rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Trustee's or the Buyer's interest in the Purchased Assets, or any similar rights, in each case with respect to the Sale Transaction;

iv.   judgments and/or decrees of any court or foreign or domestic Governmental Authority or governmental entity (to the extent permitted by law);

v.   charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets;

vi.   debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, acts, or failures to act of the Debtor;

vii.   claims (as that term is defined in the Bankruptcy Code), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

viii.   to the maximum extent permitted by law, any other interest whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise.

8.   No person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Buyer or its successors in interest any Lien, Claim, Interest or right of setoff or recoupment that such person or entity had, have, or may have against the Debtor or the Debtor's estate, or any Lien, Claim, Interest or right of setoff or recoupment relating to or arising from the Purchased Assets.

16

9.      The terms and provisions of the APA and all related documents necessary to consummate the Sale Transaction, together with the terms and provisions of this Sale Order, shall be binding in all respects upon the Trustee, the Debtor, the Debtor's estate, the estate's creditors, and all parties in interest, including any and all successors and assigns.

10.     All entities holding Liens, Claims, Interests or rights of setoff or recoupment against the Purchased Assets shall be, and they hereby are, barred from asserting such Liens, Claims, Interests or rights of setoff or recoupment against the Buyer, its successors and assigns, and/or the Purchased Assets.  All entities holding such Liens, Claims, Interests or rights of setoff or recoupment shall be deemed to have released the Purchased Assets to the Buyer and to have limited the assertion of their Liens, Claims, Interests or rights of setoff or recoupment against the Purchased Assets to the sale proceeds the Trustee and Debtor's estate receive for the sale of the Purchased Assets and any other available property of the Debtor's estate that does not constitute the Purchased Assets.

11.     This Sale Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12.     All Liens, Claims and/or Interests of record against the Purchased Assets shall, upon Closing, be terminated as against the Purchased Assets, and all the entities described in the

17

immediately preceding paragraph of this Sale Order are authorized and directed to (a) terminate all recorded Liens, Claims and/or Interests against the Purchased Assets from their records, official, and otherwise, in each case solely with respect to the Purchased Assets, and (b) accept for filing or recording this Sale Order and all instruments made or delivered by the Trustee or the Buyer, and any other documents relating to the conveyance of the Purchased Assets to the Buyer.

13.     If any person or entity that has filed statements, documents or agreements evidencing liens or claims on or in the Purchased Assets shall not have delivered to the Debtor or Trustee prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims and/or Interests that the person or entity has or may assert with respect to the Purchased Assets, the Trustee and Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets or, at the Buyer's request, such person or entity shall promptly execute and file such statements, instruments, releases, and other documents evidencing the release and/or satisfaction of such Liens, Claims and/or Interests.

14.     The Buyer may initiate Recovery Actions to recover and gain access to the Purchased Assets (the "Recovery Actions").  The Buyer has the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor.  Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of the Buyer.  The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. The Trustee shall provide reasonable good-faith cooperation to Buyer in connection with its pursuit

18

of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions.  The Trustee further agrees not to interfere with Buyer's Recovery Actions.

15.     The Purchased Assets are not of inconsequential value or benefit to the estate. To the extent any third party is in possession, control or in any way interfering with Buyer's access to any of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, and NordCap Advisors SA, such third parties shall immediately deliver possession, control and access to the Purchased Assets (and any proceeds thereof) to the Buyer.

16.     The Trustee and Buyer, as applicable, are hereby authorized to (a) take such action as may be necessary to implement the provisions of the APA and any other document executed in connection therewith, and (b) execute and file any necessary document with any governmental or regulatory unit.  This Sale Order shall constitute all approvals and consents, if any, required by the laws of any state necessary to file, record, and accept such documents.

17.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization and approvals with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

18.     The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA has been undertaken, by the Trustee, the Buyer, and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in Section 363(m) of

19

the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, whether or not the Buyer knew or knows of the pendency of the appeal, unless such authorization and such Sale Transaction are stayed pending appeal. The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code.

19. Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or damages or costs to be imposed, under Section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Purchased Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under Section 363(n) of the Bankruptcy Code.

20. Nothing contained in any order of any type or kind entered in this case shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order. To the extent there is a conflict between the terms of this Sale Order and the APA, the terms of the APA shall control.

21. The Trustee is authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and provisions of the APA and all other agreements related thereto and the Trustee is authorized to take any other action that may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, and conveying any or all of the Purchased Assets.

20

**Additional Implementation Provisions**

22.     The Court retains jurisdiction, even after the closing of the case, with respect to all matters arising from or related to the enforcement of this Sale Order, including the authority to do the following:

(a)     interpret, implement, and enforce the terms and provisions of this Sale Order, the APA, and any other agreement executed in connection therewith;

(b)     protect the Buyer, or any of the Purchased Assets, against any Liens, Claims and/or Interests;

(c)     resolve any disputes arising under or related to the APA, the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Purchased Assets;

(d)     adjudicate all issues concerning all Liens, Claims and/or Interests in and to the Purchased Assets, including the extent, validity, enforceability, priority, and nature of all such Liens, Claims and/or Interests; and

(e)     adjudicate any and all issues and/or disputes relating to the Trustee's  or the Buyer's right, title, or interest in the Purchased Assets and the proceeds thereof, including any action, suit or proceeding brought by the Trustee or the Buyer to compel turnover of the Purchased Assets, including but not limited to any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code related to the Purchased Assets or applicable law.

23.     The provisions of this Sale Order are nonseverable and mutually dependent.

24.     Except as may be expressly provided herein, nothing in this Sale Order shall alter or amend the APA and the obligations of the Trustee and the Buyer thereunder.

25.     The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the APA and each and every provision, term, and condition thereof be authorized and approved in its entirety.

26.     This Order shall be effective and enforceable immediately.  The provision of Bankruptcy Rule 6004(h) is hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the APA immediately upon entry of this Order.


Dated:                                                                                                    

                              Janet E. Bostwick
                              United States Bankruptcy Judge

## EXHIBIT C

## SALE NOTICE

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>                       Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**NOTICE OF (A) PROPOSED SALE OF CERTAIN ASSETS OF THE DEBTOR'S
ESTATE PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) SALE
PROCEDURES, (C) DEADLINES FOR SUBMITTING OVERBIDS OR OBJECTIONS,
AND (D) HEARING DATE**

**TO CREDITORS AND PARTIES IN INTEREST:**

      **PLEASE TAKE NOTICE THAT**, pursuant to section 363 of the Bankruptcy Code, Fed. R. Bankr. P. 2002 and 6004, and MLBR 2002-5 and 6004-1, and pursuant to the *Trustee's Motion For: (I) Entry Of An Order (A) Approving Procedures Governing Trustee's Proposed Sale Of Certain Of The Debtor's Assets Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Other Interests, (B) Approving Form And Manner Of Notice Of Sale, And (C) Granting Related Relief; And (II) Authority To Sell Certain Of The Debtor's Assets Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Other Interests* [Dkt. No. _____] (the "Sale Motion"), Donald Lassman, the Chapter 7 trustee (the "Trustee") of the above-captioned bankruptcy estate of Jason M. Kahan (the "Debtor"), intends to sell certain assets of the Debtor's estate (the "Assets") to Pioneer Funding Group LLC (the "Buyer"), or to such other entity that submits the highest or otherwise best offer to acquire the Assets as determined through the sale process established by the Bankruptcy Court (the "Proposed Sale"). Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the Sale Motion, the Sale Procedures Order, or the APA (as defined herein), as applicable.

**I.     PROPERTY TO BE SOLD, STALKING HORSE BID AND INITIAL OVERBID AMOUNT**

      The Assets to be sold consist of all of the Debtor's and the Estate's right, title, and interest in: (i) certain Bitcoin wallets and Bitcoin addresses, including private keys (the "BTC Wallets"); (ii) any cryptocurrency currently located in or which has been transferred out of the BTC Wallets since their inception (the "Estate Bitcoin"); (iii) all related legal and equitable rights, interests, title, and standing to pursue claims, suits, and causes of action relating to recovery of the BTC Wallets and Estate Bitcoin (the "Recovery Actions"), including causes of action arising under Chapter 5 of the Bankruptcy Code; (iv) all legal and equitable rights, interests, and title to non-executory contracts, whether known or unknown, which concern or relate to the BTC Wallets; and

(v) the Trustee's and the Estate's rights and standing to seek and obtain recognition, domestication, and/or enforcement of the Sale Order in any jurisdiction, all as more particularly described in the Asset Purchase Agreement dated May 6, 2026 (the "APA") between the Trustee and the Buyer.  A copy of the APA is attached as Exhibit D to the Sale Motion.

The Proposed Sale is to be made free and clear of all liens, claims, encumbrances, and interests, with any such liens, claims, and interests to attach to the proceeds of sale with equal effect and priority. The Buyer has agreed to purchase the Assets for a purchase price of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "Purchase Price"), subject to adjustment at Auction. The sale of the Assets shall be on an "as is" and "where is" basis.

The initial overbid must have a value of **not less than Four Hundred Fifteen Thousand Five Hundred Dollars ($415,500.00)** (the "Initial Overbid Amount").

The current proposed order approving the sale of the Assets to Buyer  provides that to the extent any third party is in possession, control or in any way interfering with Buyer's access to any of the Assets, including Mr. Hunter Penn, Quantum Resource Group QRG AS, Nils Trosterud, Sissel Trosterud and NordCap Advisors SA, whom the Trustee believes may be involved in interfering with access to certain of the Assets, such third parties shall immediately deliver possession, control and access to the Assets (and the proceeds thereof) to the Buyer.

## II.   OVERVIEW OF DATES AND DEADLINES

The following dates and deadlines have been approved by the Bankruptcy Court in the Sale Procedures Order:

| Event | Date |
|---|---|
| Deadline to Submit Competing Bids and Objections | |
| Sale Approval Hearing | |

## III.   OVERBIDS AND SALE APPROVAL OBJECTIONS

The Proposed Sale is to be governed by the procedures (the "Sale Procedures") approved by (and attached as Exhibit 1 to) the *Order (A) Approving Procedures Governing Trustee's Proposed Sale of Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Form and Manner of Notice of Sale, and (C) Granting Related Relief* entered by the Bankruptcy Court on _____, 2026 [Dkt. No. ____] (the "Sale Procedures Order").

If you are interested in submitting a bid to purchase the Assets or any substantial portion thereof, please contact the Trustee's counsel, Mark G. DeGiacomo, Esq., Harris Beach Murtha Cullina PLLC, Telephone: (617) 457-4000, Email: mdegiacomo@harrisbeachmurtha.com, in order (i) to obtain additional information about the Assets and to arrange for execution and delivery to the Trustee of a confidentiality agreement pursuant to which such additional information will be provided, and (ii) to obtain a copy of the Sale Procedures containing the terms and conditions

2

governing the submissions of bids to purchase the Assets.  Please do not contact the Debtor directly. Offers to purchase the Assets must comply with the Sale Procedures to be considered for acceptance by the Trustee and approval by the Bankruptcy Court.

In accordance with the Sale Procedures, competing purchase offers for the Assets must be submitted by **no later than _____, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

**ANY OBJECTIONS TO PROPOSED SALE OF THE ASSETS** must (i) be in writing, (ii) state with particularity the grounds for the objection and why the sale of the Assets should not be authorized, (iii) conform to the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, (iv) be filed with the Office of the Clerk, United States Bankruptcy Court, John W. McCormack Federal Courthouse, 5 Post Office Square, Boston, MA 02109, **no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2026** (the "Sale Approval Objection Deadline"),[1] and (v) be served so as to be received by the Sale Approval Objection Deadline by the following parties (the "Notice Parties"):

a)   attorneys for the Trustee, Harris Beach Murtha Cullina PLLC, 33 Arch Street, 12th Floor, Boston, MA 02110, Attn: Mark G. DeGiacomo, Esq., Email: mdegiacomo@harrisbeachmurtha.com;

b)   attorneys for the Buyer, Nixon Peabody LLP, Exchange Place, 53 State Street, Boston, MA 02109, Attn: Richard C. Pedone, Esq., Email: rpedone@nixonpeabody.com; AND

c)   the Office of the United States Trustee, 5 Post Office Square, Suite 1000, Boston, MA 02109, Attn: Sara Kathryn Jackson, Esq., Email: sara.kathryn.jackson@usdoj.gov.

**IV.    AUCTION AND SALE APPROVAL HEARING:**

**PLEASE TAKE NOTICE THAT** a hearing (the "Sale Approval Hearing") will be held before the Honorable Janet E. Bostwick, United States Bankruptcy Judge, John W. McCormack Federal Courthouse, 5 Post Office Square, 12th Floor, Boston, MA 02109 **on _____, 2026 at \_\_\_:\_\_\_ \_.m. (prevailing Eastern Time)** to consider approval of the sale of the Assets to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE THAT** if competing one ore more Qualified Bids are received by the Bid Deadline, the Auction shall be conducted at the Sale Approval Hearing. The Auction shall be governed by the Sale Procedures Order.  It is anticipated that this Court will permit the Trustee to accept sealed bids, conduct a live auction, or a combination of the two at the Sale Approval Hearing.

---

[1]    For the avoidance of doubt, the deadline to submit objections to the procedures governing the proposed sale of the Assets was \_\_\_\_, and such procedures were approved by the Bankruptcy Court in the Sale Procedures Order.

3

**PLEASE TAKE FURTHER NOTICE THAT** failure to file an objection to the Proposed Sale on or before the Sale Approval Objection Deadline (a) shall forever bar the assertion, whether at the Sale Approval Hearing or thereafter, of any objection to the Sale Motion, to entry of the Sale Order, and/or to the consummation of the Proposed Sale contemplated by the APA or any Asset Purchase Agreement with the Successful Bidder or the Backup Bidder, and (b) for purposes of Section 363(f) of the Bankruptcy Code, shall constitute "consent" to the entry of the Sale Order and consummation of the Proposed Sale and all transactions related thereto.

**PLEASE TAKE FURTHER NOTICE THAT** any interested party requesting additional information with respect to the Proposed Sale or with respect to submitting a bid to purchase the Assets may contact counsel to the Trustee, Mark G. DeGiacomo, Harris Beach Murtha Cullina PLLC, 33 Arch Street, 12th Floor, Boston, MA 02110, Phone (617) 457-4000, Email: mdegiacomo@harrisbeachmurtha.com, provided that notwithstanding any information which may be provided, all entities submitting an offer shall be relying upon their own independent due diligence and analysis.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Sale Motion, the Sale Procedures Order, and the APA may be obtained from the Office of the Clerk, United States Bankruptcy Court, John W. McCormack Federal Courthouse, 5 Post Office Square, Boston, MA 02109, or by making a written request to undersigned counsel to the Trustee.

DONALD LASSMAN, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF JASON M. KAHAN,

By his attorneys,

*/s/ Zachary J. Gregoricus*

Mark G. DeGiacomo, BBO #118170
Zachary J. Gregoricus, BBO #699578
Harris Beach Murtha Cullina PLLC
33 Arch Street, 12th Floor
Boston, MA 02110
617-457-4154 Telephone
617-482-3868 Facsimile
mdegiacomo@harrisbeachmurtha.com
zgregoricus@harrisbeachmurtha.com

Dated: May ___, 2026

4

**EXHIBIT D**

APA

Docusign Envelope ID: 1B6ADDA0-D3A0-486A-B345-1B460756713D

*Execution Version*

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "***Agreement***") is made as of May 6, 2026 by and between Donald Lassman, as Chapter 7 Trustee ("***Seller***") appointed in the Chapter 7 case of *In re Jason M. Kahan*, Case Number 1:24-bk-11592 (the "***Bankruptcy Case***") pending in the United States Bankruptcy Court for the District of Massachusetts (the "***Bankruptcy Court***") on the one hand, and Pioneer Funding Group LLC, a Delaware limited liability company and its successors and assigns ("***Buyer***," and together with Seller, the "***Parties***," and each, a "***Party***"), on the other hand.

**WHEREAS**, on August 7, 2024, a voluntary petition was filed under Chapter 7 of Title 11 of the United States Code (the "***Bankruptcy Code***") by Jason M. Kahan, an individual residing in Massachusetts (the "***Debtor***").

**WHEREAS**, the Debtor's Bankruptcy Case is currently pending in the Bankruptcy Court.

**WHEREAS**, Seller was appointed as Chapter 7 trustee for the Debtor's estate (the "***Estate***") on August 8, 2024.

**WHEREAS**, Seller has engaged in discovery, investigations, and other contested matters (the "***Seller's Investigations***") in an attempt to recover possession and control of the Estate Bitcoin (as hereinafter defined), which are not currently in the possession or control of Seller or the Debtor.

**WHEREAS**, Buyer desires to purchase and Seller desires to sell to Buyer, or a successful overbidder, as the case may be, the Assets (as hereinafter defined) of the Debtor free and clear of all liens, claims, encumbrances, licenses and interests in accordance with Section 363 of the Bankruptcy Code, and otherwise on the terms and conditions set forth herein.

**IN CONSIDERATION OF** the promises and mutual covenants contained in this Agreement, and for good and valuable consideration, the Parties agree as follows:

## ARTICLE I

Section 1.1     Purchase and Sale of Assets. Subject to Bankruptcy Court approval, on the Closing Date (as hereinafter defined), Seller will transfer, sell, assign and convey to Buyer, and Buyer will purchase and acquire from Seller, free and clear of all liens, claims, licenses, encumbrances, interests and rights of setoff and recoupment, in accordance with Section 363 of the Bankruptcy Code, all of the Debtor's and the Estate's right, title and interest in the Assets of the Debtor as set forth on **Exhibit A** attached hereto (collectively referred to herein as the "***Assets***").

Section 1.2     Purchase Price. The purchase price (the "***Purchase Price***") of the Assets shall be Three Hundred and Fifty Thousand Dollars ($350,000.00), subject to adjustment if Buyer submits an overbid at the Auction (as hereinafter defined), payable by Buyer as provided in Section 5.1.

Section 1.3     Recovery Actions.  After Closing and in connection with Buyer's purchase of the Assets, Buyer may initiate claims, causes of action, contested matters, adversary proceedings

1

or other litigation in connection with recovery of the Assets, including, without limitation, the Estate Bitcoin (the "***Recovery Actions***").  Buyer shall have the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Estate and the Debtor.  Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of Buyer.  Seller shall provide reasonable good-faith cooperation to Buyer in connection with its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to Seller and the Debtor's bankruptcy estate and, at no time, shall Seller be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions.  Seller further agrees not to interfere with Buyer's Recovery Actions.

Section 1.4    Cash Deposit at Execution of Agreement. Buyer shall pay to Seller the cash sum of thirty-five thousand dollars ($35,000.00) by wire transfer (the "***Deposit***"), as a deposit against the Purchase Price. The Deposit shall be held directly by Seller.

(a)    The Deposit shall be refunded promptly to Buyer if:

(i)    the Bankruptcy Court does not approve Seller's entry into this Agreement by May 31, 2026 in a form acceptable to Buyer in its sole discretion unless the Parties agree to extend this period;

(ii)    Buyer is neither the Successful Bidder (as hereinafter defined) nor the Backup Bidder (as hereinafter defined);

(iii)    Seller closes the sale to a Successful Bidder other than Buyer; or

(iv)    the Closing (as hereinafter defined) fails to occur within the time specified in this Agreement for any reason other than Buyer's breach of this Agreement or any of its obligations hereunder.

If the Closing fails to occur as a result of Buyer's breach of this Agreement, Seller shall be entitled to receive and retain the Deposit as liquidated damages as provided below.

**ARTICLE II**

Section 2.1    Bankruptcy Court Approval; Sale Order.  The sale to Buyer by Seller and the other transactions contemplated by this Agreement are expressly subject to approval of the Bankruptcy Court. Seller shall file with the Bankruptcy Court a motion (the "***Sale Motion***") for entry of an order, substantially in the form attached hereto as Exhibit D (the "***Sale Order***") providing that, among other things: (i) the sale of the Assets to Buyer in accordance with this Agreement shall be pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, free and clear of all liens, claims, licenses, encumbrances, interests and rights of setoff and recoupment; and (ii) the Bankruptcy Court shall retain jurisdiction with respect to any matters relating to the Sale Order or the transactions contemplated by this Agreement, including the Recovery Actions.  Buyer agrees to prepare the Sale Motion and shall provide Seller with the draft of the Sale Motion as soon as practicable after execution of this Agreement seeking entry of the Sale Order.  Seller shall immediately file the Sale Motion upon the Parties' mutual approval of the Sale Motion.

2

Section 2.2    Stalking Horse Bid; Auction; Overbid Procedure.   The terms of this Agreement shall serve as the opening bid (the "**Stalking Horse Bid**") for sale of the Assets in an auction, the terms of which shall be reasonably acceptable to Seller and approved by the Bankruptcy Court (the "**Auction**").   The sale of the Assets shall be subject to overbids to be submitted to Seller by the date to be determined by the Bankruptcy Court upon the filing of Sale Motion.

(a)    Seller agrees to request in the Sale Motion an initial overbid purchase price of four hundred fifteen thousand five hundred dollars ($415,500.00), which is comprised of the Purchase Price, the Expense Reimbursement, and the Break-Up Fee plus an additional five thousand dollars ($5,000.00) (the "**Initial Overbid Request**").   Buyer agrees and acknowledges that the Initial Overbid Request is subject to the Bankruptcy Court's approval (such approved amount, the "**Initial Overbid**")  Buyer agrees that this Agreement shall remain valid, binding, and enforceable in the event of the entry of an Order by the Bankruptcy Court that decreases the amount of Initial Overbid Request, which event shall not be grounds for termination of this Agreement under Section 6.1.  To qualify as a bidder at the Auction, any bidder, other than Buyer hereunder, must deliver to Seller the following information at least three (3) business days prior to any auction:

(i)    evidence of financial ability to consummate a sale of the Assets, including the source of funds and the disclosure of the identity of any entities or persons who will participate or have in interest in any potential winning bid;

(ii)    an executed version of this Agreement in substantially the same form hereof, provided, if any bidder proposes to make any changes to the form of this Agreement, such bidder shall provide a blackline marked to show any such proposed changes (the "**APA Blackline**");

(iii)    a statement under penalty of perjury stating whether the bidder or any of its affiliates (x) are insiders of the Debtor, as defined in section 101(31) of the Bankruptcy Code, (y) currently hold any of the Assets, including but not limited to the private keys related to the Assets, and (z) have had any prior involvement with any of the Assets (the "**Qualified Bidder Statement**"); and

(iv)    a deposit in the amount of at least thirty-five thousand dollars ($35,000.00) by cashier's check made payable to Seller (any such bidder who has satisfied such conditions, together with Buyer, a "**Qualified Bidder**").

(b)    To the extent there are Qualified Bidders and an Auction is held, at least three (3) days before the Auction, the Seller shall provide to Buyer the APA Blackline and Qualified Bidder Statement of each Qualified Bidder participating in the Auction.

(c)    In the event that the Bankruptcy Court orders that an Auction be conducted, Seller shall support a request that each subsequent overbid following the Initial Overbid be in additional increments of at least sixty thousand five hundred dollars ($60,500.00) above the prior prevailing bid, unless otherwise ordered by the Bankruptcy Court.  At the conclusion of the Auction, Seller shall request that the Bankruptcy Court approve the sale of the Assets to the highest Qualified Bidder taking into account such terms of sale as Seller may consider in his reasonable

3

business judgment and determined by the Bankruptcy Court (the "***Successful Bidder***") and, in the event the Successful Bidder fails to close, the sale of the Assets to the second highest Qualified Bidder taking into account such terms of sale as Seller may consider in his reasonable business judgment and determined by the Bankruptcy Court (the "***Backup Bidder***").  Any overbid shall be subject to all other terms and conditions of this Agreement, as applicable and as required by the Bankruptcy Court.  The Backup Bidder shall be legally obligated to close the transaction, as if such Backup Bidder had been the Successful Bidder, and shall be subject to the same forfeiture of its deposit and liquidated damages provisions as would apply to the Successful Bidder. No bidder other than the two highest bidders shall be bound to close the transaction. If both the Successful Bidder and the Backup Bidder fail to close, Seller, in his sole discretion, may conduct a new auction sale to the extent there is any buyer willing to be a bidder at such auction.

Section 2.3    Reimbursement of Buyer's Expenses. Seller agrees to request in the Sale Motion that, in the event that: (i) Buyer is neither the Successful Bidder nor the Backup Bidder, or (ii) Buyer is the Backup Bidder, and in each such case, Seller closes a sale of the Assets to the Successful Bidder or the Backup Bidder who is not Buyer, Seller shall, as promptly as practicable after the Closing, reimburse Buyer, from the sale proceeds, for its reasonable actual fees and expenses not to exceed fifty thousand dollars ($50,000.00) incurred in connection with acting as the "Stalking Horse Bidder," including, without limitation, due diligence expenses, preparation and negotiation of this Agreement and the proposed sale order, review of the Sale Motion, and appearance at the Auction and the hearing on the Sale Motion (the "***Expense Reimbursement***"). For the avoidance of doubt, the Expense Reimbursement: (i) shall only be payable from the sale proceeds received by Seller from the sale of the Assets; and (ii) is subject to Bankruptcy Court approval and shall only be payable if the Bankruptcy Court approves the Expense Reimbursement. Seller shall not object to the Bankruptcy Court's approval of the Expense Reimbursement in the Sale Motion and shall support approval of the Expense Reimbursement to the extent any party objects to the Sale Motion's request to approve the Expense Reimbursement.  Buyer and Seller agree that failure of the Bankruptcy Court to approve the Expense Reimbursement shall be grounds for termination of this Agreement under Section 6.1.  Seller does not waive or release any right to review or object to the amount of the Expense Reimbursement in the event that the Bankruptcy Court enters an Order approving the sale of the Assets to a purchaser other than Buyer.  The provisions of this Section 2.3 shall be for the benefit of Buyer only and no other person or entity. Buyer agrees and acknowledges that the Expense Reimbursement is subject to the Bankruptcy Court's approval. Buyer shall provide Seller with the amount of its Expense Reimbursement at least one (1) day prior to the hearing to approve the sale to a winning bidder for the Assets other than Buyer.

Section 2.4    Break-up Fee. Seller agrees to request in the Sale Motion that, in the event that the Bankruptcy Court enters an Order approving the sale of the Assets to a purchaser other than Buyer, Buyer shall be entitled to a break-up fee ("***Break-Up Fee***") from the proceeds of the sale of Assets in the amount of 3% of the Purchase Price.  Buyer agrees and acknowledges that the Break-Up Fee is subject to the Bankruptcy Court's approval.  Buyer agrees that this Agreement shall remain valid, binding, and enforceable in the event of the entry of an Order by the Bankruptcy Court that denies or decreases the amount of the Break-Up Fee, which shall not be grounds for termination of this Agreement under Section 6.1.  For the avoidance of doubt, the Break-Up Fee: (i) is an obligation of Seller that is separate and apart from the Expense Reimbursement; (ii) shall only be payable from the sale proceeds received by Seller from the sale of the Assets; and (iii) is

4

subject to Bankruptcy Court approval and shall only be payable if the Bankruptcy Court approves the Break-Up Fee.  The provisions of this Section 2.4 shall be for the benefit of Buyer only and no other person or entity.

Section 2.5    Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court and demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.

Section 2.6    Seller will give Buyer reasonable advance notice and proposed drafts of all pleadings, motions, orders, notices, other papers, hearings, and other proceedings related to this Agreement and the transactions contemplated hereby, and will provide Buyer and its counsel with a reasonable opportunity to review such papers prior to filing with the Bankruptcy Court unless such advance notice is impossible or impracticable under the circumstances, in which case Seller will deliver copies of such papers substantially simultaneously with the filing with the Bankruptcy Court.

**ARTICLE III**

Section 3.1    Conditions Precedent to Closing for Benefit of Seller.  As conditions precedent for the benefit of Seller, Seller's obligations hereunder, including the obligation to transfer the Assets to Buyer, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Seller in writing on or before the Closing:

(a)    Buyer shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Buyer on or prior to the Closing.

(b)    This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered the Sale Order in the Bankruptcy Case so approving, concurrently with findings of fact and conclusions of law (in form and substance reasonably acceptable to Seller) (the "*Findings*"), and such Sale Order shall be a final order with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Sale closing).

(c)    No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

Section 3.2    Conditions Precedent to Buyer's Closing. As conditions precedent for the benefit of Buyer, Buyer's obligations hereunder, including the obligation to pay the Purchase Price, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Buyer in writing on or before the Closing:

(a)    Within five (5) business days of the Closing, Seller shall turn over to Buyer all documents, records and materials in his or his counsel's possession (including those of Mr. Cuccinelli) related to the Seller's Investigations, including but not limited to the exhibits used during the deposition of Hunter Penn conducted on October 2, 2025, and upon the Closing, all

5

attorney-client privilege, work product protection, and other protections from disclosure between Seller and Mr. Cucinelli related to the Assets, shall transfer to and be vested solely in Buyer.

(b)    Seller shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Seller on or prior to the Closing.

(c)    This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered the Sale Order in the Bankruptcy Case so approving. concurrently with the Findings (in form and substance reasonably acceptable to Seller) and such Sale Order shall be final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Sale closing).

(d)    Buyer shall be either: (i) the Successful Bidder at the Auction; or (ii) Buyer shall be the Backup Bidder at the Auction and the Successful Bidder shall have failed to close.

(e)    No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

## ARTICLE IV

Section 4.1    Seller's Representations and Warranties. Seller makes the following representations and warranties, which shall survive execution of this Agreement and which shall survive the Closing:

(a)    Seller is the Chapter 7 Trustee in the Bankruptcy Case. Subject to entry of the Sale Order, Seller has the authority to enter into this Agreement and to consummate the transactions contemplated thereby.

(b)    Mr. Cucinelli's employment as Seller's special counsel was terminated on January 7, 2026.  By email dated January 6, 2026, Mr. Cucinelli acknowledged to Seller that he is not entitled to or due any contingency fee related to the recovery of the Assets by Seller under the terms of his engagement by Seller.

(c)    Seller has no direct personal knowledge of any transfers of the Assets as of the date of this Agreement.  Seller has received correspondence from third-parties alleging that certain of the Assets have been transferred during the pendency of the Bankruptcy Case, which correspondence shall be provided to the Buyer within two (2) days of execution of this Agreement.

Section 4.2    Buyer's Representations and Warranties. Buyer makes the following representations, warranties and covenants (including, without limitation, those made elsewhere in this Agreement), which shall survive execution of this Agreement and which shall survive the Closing:

(a)    Buyer has the power and authority to enter into this Agreement and consummate the transactions contemplated thereby.

6

## ARTICLE V

Section 5.1    Cash at Closing. To the extent that Buyer is the Successful Bidder, Buyer shall deliver to Seller the balance of the Purchase Price (minus the Deposit) at the Closing via wire transfer. Said sum shall be paid to Seller prior to or on the Closing Date.

Section 5.2    Sales Tax Payable by Buyer. Buyer shall pay the sales tax due, if any, with respect to the transactions contemplated hereby.

Section 5.3    Seller shall convey title to the Assets to Buyer by bill of sale (the "***Bill of Sale***") and quitclaim assignment (the "***Quitclaim Assignment***") in substantially the forms attached hereto as **Exhibit B** and **Exhibit C**, and as approved by the Bankruptcy Court, free and clear of all liens, claims, licenses, encumbrances and interests pursuant to Section 363 of the Bankruptcy Code.

Section 5.4    No Representations.

(a)    EXCEPT AS EXPRESSLY PROVIDED HEREIN OR IN THE SALE ORDER, BUYER AGREES AND ACKNOWLEDGES THAT THE TRANSFER OF THE ASSETS IS MADE PURSUANT TO ORDER OF THE BANKRUPTCY COURT AND IS MADE "AS IS" AND "WHERE IS", AND ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE TITLE OR CONDITION OF THE ASSETS OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR ANY BUSINESS PROSPECTS, OR VALUATION OF THE ASSETS, OR THE COMPLIANCE OF THE ASSETS IN THEIR CURRENT OR FUTURE STATE WITH APPLICABLE LAWS OR ANY VIOLATIONS THEREOF. BUYER FURTHER ACKNOWLEDGES THAT SELLER SHALL DELIVER TO BUYER THE ASSETS IN SELLER'S OR ITS COUNSEL'S POSSESSION; BUT THAT SELLER DOES NOT HAVE POSSESSION OF ALL OF THE ASSETS, AND THAT TO THE EXTENT SELLER IS NOT IN POSSESSION OF AN ASSET SOLD HEREUNDER, BUYER WILL HAVE SOLE RESPONSIBILITY TO OBTAIN POSSESSION OF THE ASSETS, AT ITS SOLE EXPENSE.

Section 5.5    Buyer assumes responsibility for obtaining all required licenses, copyrights, patents, trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use, sell, distribute or dispose of any of the Assets.

Section 5.6    Deliveries at Closing. The Parties shall make the following deliveries at Closing:

(a)    Buyer shall deliver to Seller a cashier's check or deliver funds via wire transfer to the account of Seller in the amount of the Purchase Price, less the Deposit.

(b)    Seller shall deliver to Buyer a Bill of Sale and Quitclaim Assignment, substantially in the forms attached as **Exhibit B** and **Exhibit C**.

(c)     Upon the Closing, all attorney-client privilege, work product protection, and other protections from disclosure between Seller and Mr. Cucinelli related to the Assets, shall transfer to and be vested solely in Buyer.

Section 5.7     Closing. Closing of the sale (the "*Closing*") shall occur at the offices of Nixon Peabody LLP, Exchange Place, 53 State Street, Boston, MA 02109, or such other location as mutually agreed upon by the Parties, on a date to be mutually agreed upon by the Parties (the "*Closing Date*"), but in no event later than five (5) business days after the Sale Order is final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Sale closing); provided, however, that in the event that the Closing has failed to occur by July 15, 2026 (the "*Outside Date*"), this Agreement may be terminated as provided in and subject to the terms of Section 6.1. The Parties may mutually agree in writing to effect the Closing on an earlier or a later date at their sole discretion. The existence of the Outside Date for the Closing in this Section 5.7 shall not relieve either Party of their respective obligations under this Agreement to use commercially reasonable efforts to perform and satisfy all conditions to their respective obligations to consummate the transactions contemplated by this Agreement.

Section 5.8     Backup Bidder Closing. If the Successful Bidder shall fail to close, (i) the Backup Bidder shall be obligated to close within ten (10) business days of being notified that the Closing with the Successful Bidder has failed to close due to breach by the Successful Bidder; and (ii) the Outside Date shall be extended by thirty (30) calendar days.

## ARTICLE VI

Section 6.1     Termination.  This Agreement may be terminated by the mutual written consent of the Parties.  Either Seller or Buyer may also terminate this Agreement by written notice to the other if the Closing shall not have occurred by the Outside Date contemplated in Section 5.7 due to no breach by the terminating Party.  Buyer may also terminate this Agreement by written notice to Seller, if any of the conditions in Section 3.2 are not satisfied by the Outside Date, or Seller shall breach any of its obligations under this Agreement. Seller may also terminate this Agreement by written notice to Buyer if any of the conditions in Section 3.1 are not satisfied by the Outside Date, or Buyer shall breach any of its obligations under this Agreement. No termination under this Section 6.1 shall release either Party from, or act as a waiver of, any claim against the other Party, at law or in equity as a result of such termination or as a result of any breach or default under this Agreement. This Agreement may be terminated as provided herein without further order of the Bankruptcy Court.

Section 6.2     **BUYER AND SELLER AGREE THAT: (A) IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE ASSETS PURSUANT TO THIS AGREEMENT BY REASON OF BUYER'S BREACH OF THIS AGREEMENT, THEN SELLER'S SOLE AND EXCLUSIVE REMEDY SHALL BE TO TERMINATE THIS AGREEMENT AND RECEIVE AND RETAIN THE DEPOSIT TO THE EXTENT THAT IT HAS BECOME NONREFUNDABLE TO BUYER PURSUANT TO THIS AGREEMENT AS LIQUIDATED DAMAGES AND NOT AS A PENALTY, AND UNDER SUCH CIRCUMSTANCES, SELLER WAIVES ALL RIGHTS TO OBTAIN BUYER'S SPECIFIC PERFORMANCE; AND (B) BECAUSE OF THE NATURE OF THE TRANSACTION CONTEMPLATED BY**

**THIS AGREEMENT, IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX SELLER'S ACTUAL DAMAGES IF SUCH A BREACH OCCURS AND THEREFORE THE AMOUNT OF LIQUIDATED DAMAGES SPECIFIED ABOVE SHALL BE PRESUMED TO BE THE AMOUNT OF DAMAGES SELLER WOULD SUSTAIN BY REASON OF SUCH A BREACH AND REPRESENTS A REASONABLE ESTIMATE OF THOSE DAMAGES, TAKING INTO ACCOUNT, AMONG OTHER FACTORS, THE CIRCUMSTANCES EXISTING AS OF THE TIME OF ENTRY INTO THIS AGREEMENT.**

Section 6.3    Commissions. Buyer and Seller each represent and warrant to the other that no person or entity has been engaged by it as a broker, agent or finder, licensed or otherwise, in connection with the transaction contemplated by this Agreement.

## ARTICLE VII

Section 7.1    Entire Agreement. This Agreement and the written agreements referred to herein and executed in connection herewith constitute the entire understanding among the parties with respect to the subject matter hereof and supersede all negotiations, prior discussions or other agreements, oral or written.

Section 7.2    Governing Law; Venue. This Agreement has been negotiated and entered into in the State of Massachusetts, and shall be governed by, and construed in accordance with, the laws of the State of Massachusetts in effect at the time of its execution, without reference or regard to the principles of conflict of laws. Any action arising out of this Agreement must be brought and maintained in the Bankruptcy Court, and the Parties hereto consent to the jurisdiction of the Bankruptcy Court; provided, after the Bankruptcy Case is closed, any action may be brought in a court located in Suffolk County, Massachusetts with jurisdiction.

Section 7.3    Nothing contained in this Agreement shall be construed to place the parties in the relationship of partners, principal and agent, employer/employee or joint venturer. The parties agree that they shall neither have the power or right to bind or obligate the other, nor shall either hold itself out as having such authority.

Section 7.4    This Agreement may be executed in counterparts. In the event that any signature to this Agreement or any amendment hereto is delivered by facsimile transmission, by e-mail delivery of a ".pdf" or by other electronic format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile, ".pdf" or other electronic format data file signature page were an original thereof (and the same shall be deemed as originals).

Section 7.5    If any action, including any arbitration proceeding, is instituted to enforce the terms or provisions of this Agreement, including an action instituted after the bankruptcy of a party, the prevailing party in such action shall be entitled to collect as part of its recovery all reasonable costs, charges and fees, including but not limited to its expert witness fees and attorneys' fees and costs, incurred in connection with such action.

9

Section 7.6     Amendment. This Agreement may only be amended or modified by the written agreement of the Parties.

Section 7.7     Severability. If any of the provisions of this Agreement are held invalid under any law, such invalidity shall not affect the remainder of the Agreement.

Section 7.8     No Assignment. Neither this Agreement nor any rights or obligations hereunder shall be assigned by any Party without the prior written consent of the other Parties hereto. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

Section 7.9     Headings; Construction. The headings of the various Sections of this Agreement are for convenience only and are not intended to explain or modify any of the provisions of this Agreement. No rule of strict construction will be applied in the interpretation or construction of this Agreement. When used in this Agreement, "including" means "including without limitation." In the event of any conflict or ambiguity between this Agreement and any Exhibit, this Agreement will control. Whenever the context requires: (a) the singular number shall include the plural, and vice versa; (b) the masculine gender shall include the feminine and neuter genders; (c) the feminine gender shall include the masculine and neuter genders; and (d) the neuter gender shall include the masculine and feminine genders.

Section 7.10    Notices. All notices to be given by any Party to this Agreement to the other Party shall be in writing, and shall be given by certified United States mail, return receipt requested, postage prepaid, to the other, sent by telefax or facsimile transmission, or personally delivered, at the addresses set forth below (or at such other address for a Party has specified by like notice) and shall be deemed given when received if sent by facsimile transmission or personally delivered, or if mailed as provided herein, on the second day after it is so placed in the mail.

The addresses referred to above are:

| | |
|---|---|
| Buyer: | Pioneer Funding Group, LLC<br>Attn: Adam Stein-Sapir<br>232 W. 116th Street<br>PO Box 1735<br>New York, NY 10026<br>Tel: 646-866-7996 |
| With a courtesy copy to: | Richard C. Pedone<br>Nixon Peabody LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br>Tel: 617-345-1000 |
| Seller: | Donald Lassman<br>Chapter 7 Trustee<br>P. O. Box 920385 |

10

Docusign Envelope ID: 1B6ADDA0-D3A0-486A-B34F-1B460756713D

Needham, MA 02492
Tel: 781-455-8400

With a courtesy copy to:    Mark G. DeGiacomo
Harris Beach Murtha Cullina PLLC
33 Arch Street, 12th Floor
Boston, MA 02110
Tel: 617-457-4000

Any Party at any time may give notice to the other Party of a different address other than that set forth above in accordance with the provisions of this Section 7.10. Failure of any Party to provide courtesy-only copies of notices, demands and other communications shall not impair, modify, limit or otherwise affect any Party's rights or remedies nor any Party's obligations under this Agreement.

Section 7.11    Interpretation. Each Party has had an opportunity to review and revise this Agreement and consult with counsel, and any rule of contract interpretation to the effect that ambiguities or uncertainties are to be interpreted against the drafting party or the party who caused it to exist shall not be employed in the interpretation of this Agreement or any document executed in connection herewith.

Section 7.12    Survival of Obligations. All obligations of the Parties set forth in this Agreement shall survive the Closing and Closing Date.

Section 7.13    Waiver. No Party shall be deemed to have waived any claim arising out of this Agreement, or any power, right, privilege or remedy under this Agreement, unless the waiver of such claim, power, right, privilege or remedy is expressly set forth in a written instrument duly executed and delivered on behalf of such Party; and any such waiver shall not be applicable or have any effect except in the specific instance in which it is given.

Section 7.14    Further Assurances. Buyer and Seller shall each promptly sign and deliver all additional documents and perform all acts reasonably necessary to perform its obligations and carry out the intent expressed in this Agreement.

Section 7.15    No Waiver. A waiver by either Party of a default by the other Party is effective only if it is in writing and shall not be construed as a waiver of any other default.

Section 7.16    No Beneficiaries. No person or entity besides Buyer, Seller and their permitted successors and assigns has any rights or remedies under this Agreement.

Section 7.17    Incorporation. Any exhibits attached hereto and referred to herein are incorporated into this Agreement.

Section 7.18    Effect of Course of Dealing. No course of dealing between the Parties in exercising any of their respective rights under this Agreement shall operate as a waiver of any such rights, except where expressly waived in writing. Further, nothing herein shall require either Party to terminate this Agreement upon breach or default of this Agreement by the other Party.

Section 7.19    Time. Time is of the essence of this Agreement and each and every provision hereof.

*[Remainder of Page Intentionally Left Blank]*

Docusign Envelope ID: 1BCADDA0-B3A0-486A-B34F-1B4...

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be fully executed as of the day and year first above written.

**DONALD LASSMAN, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF JASON M. KAHAN, AND NOT INDIVIDUALLY, AS SELLER**

By: _____

Name: DONALD LASSMAN

Title: Chapter 7 Trustee

**PIONEER FUNDING GROUP LLC, AS BUYER**

By: _____

Name: Adam Steinsapir

Title: Managing Member

13

## EXHIBIT A TO AGREEMENT

### ASSETS

A.    The rights, title and interests of Seller, the Estate and the Debtor in the Bitcoin wallets and Bitcoin addresses, <u>including</u> private keys, in which they hold any interest, including, but not limited to, the below wallets (collectively, the "***BTC Wallets***"):



1.    BTC Address 1 (0.00132677 BTC): █████████████████████ l0hz
2.    BTC Address 2 (414.99999583 BTC): █████████████████ 59df
3.    BTC Address 3 (494.22956166 BTC): █████████████████ ej6c
4.    BTC Address 4 (185.10000000 BTC): █████████████████ yrlk
5.    BTC Address 5 (100.00010330 BTC): █████████████████ gx4x
6.    BTC Address 6 (100.00010330 BTC): █████████████████ qssr
7.    BTC Address 7 (0.00010000 BTC): █████████████████ st7y
8.    BTC Address 8 (496.89998888 BTC): █████████████████ p0ug
9.    BTC Address 9 (0 BTC): █████████████████ rz5c
10.   BTC Address 10 (0 BTC): █████████████████ u6pN
11.   BTC Address 11 (0 BTC): █████████████████ psci

B.    The rights, title and interests of Seller, the Estate and the Debtor in any cryptocurrency in which they hold any interest, including, but not limited to (i) currently located in the BTC Wallets, and/or (ii) which have been transferred out of the BTC Wallets since their inception ((i) and (ii) together, the "***Estate Bitcoin***").

C.    All of Seller's, the Estate's and the Debtor's legal and equitable rights, interests, title, and standing to pursue any and all claims, suits, and causes of action, including but not limited to all causes of arising under Chapter 5 of the Bankruptcy Code including under 11 U.S.C. §§ 542 and 548, relating to recovering the BTC Wallets and the Estate Bitcoin and access thereto from any party, including, but not limited to Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA and any other third party who may have access and/or control over the BTC Wallets and Estate Bitcoin.

D.    All of the Seller's, the Estate's and the Debtor's legal and equitable rights, interests and title to non-executory contracts, whether known or unknown, which concern or relate to the BTC Wallets.

E.    Seller's and the Estate's rights and standing to seek and obtain recognition, domestication and/or enforcement of the Sale Order in any jurisdiction.

1

4927-5590-9266

## EXHIBIT B

## FORM OF BILL OF SALE

Donald Lassman, as Chapter 7 trustee (the "*Seller*") for the estate (the "*Estate*") of Jason M. Kahan (the "*Debtor*") in Case Number 1:24-bk-11592 (the "*Bankruptcy Case*") pending in the United States Bankruptcy Court for the District of Massachusetts (the "*Bankruptcy Court*"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to that certain Asset Purchase Agreement dated as of May 6, 2026 (the "*Agreement*"), by and between the Seller and Pioneer Funding Group LLC (the "*Buyer*"), does hereby sell, convey, assign, transfer and deliver to Buyer on the date hereof, all of the Estate's and the Debtor's right, title and interest in and to the Assets set forth on **Exhibit A** hereto.

THE ASSETS ARE TRANSFERRED "AS IS" AND "WHERE IS" AND FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES.

EXCEPT AS PROVIDED IN THE AGREEMENT, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE TITLE OR CONDITION OF THE ASSETS OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR ANY BUSINESS PROSPECTS, VALUATION OF THE ASSETS, OR THE COMPLIANCE OF THE ASSETS IN THEIR CURRENT OR FUTURE STATE WITH APPLICABLE LAWS OR ANY VIOLATIONS THEREOF.

BUYER FURTHER ACKNOWLEDGES THAT SELLER SHALL DELIVER TO THE BUYER THE ASSETS IN SELLER'S OR ITS COUNSEL'S POSSESSION; BUT THAT SELLER DOES NOT HAVE POSSESSION OF ALL OF THE ASSETS, AND THAT TO THE EXTENT THE SELLER IS NOT IN POSSESSION OF AN ASSET SOLD HEREUNDER, BUYER WILL HAVE SOLE RESPONSIBILITY TO OBTAIN POSSESSION OF THE ASSETS, AT ITS SOLE EXPENSE.

This Bill of Sale is entered into pursuant to the Agreement and is subject to the terms thereof. Buyer acknowledges and understands that Seller is the Chapter 7 trustee of the Estate and that Seller enters this Bill of Sale solely in his capacity as Chapter 7 trustee of the Estate and not in his personal capacity. and no liability or obligations shall accrue to him personally as a result of this Bill of Sale.

**[*Remainder of Page Intentionally Left Blank*]**

2

4927-5590-9266

IN WITNESS WHEREOF, the Parties hereto have caused this Bill of Sale to be fully executed as of _____, 2026.

**DONALD LASSMAN, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF JASON M. KAHAN, AND NOT INDIVIDUALLY, AS SELLER**

By: _____

Name: _____

Title: _____

**PIONEER FUNDING GROUP LLC, AS BUYER**

By: _____

Name: _____

Title: _____

3

4927-5590-9266

## EXHIBIT A TO BILL OF SALE

### ASSETS

A.    The rights, title and interests of Seller, the Estate and the Debtor in the Bitcoin wallets and Bitcoin addresses, <u>including</u> private keys, in which they hold any interest, including, but not limited to, the below wallets (collectively, the "***BTC Wallets***"):



1.    BTC Address 1 (0.00132677 BTC): ███████████████ l0hz
2.    BTC Address 2 (414.99999583 BTC): ██████████████ 59df
3.    BTC Address 3 (494.22956166 BTC): ██████████████ ej6c
4.    BTC Address 4 (185.10000000 BTC): ██████████████ yrlk
5.    BTC Address 5 (100.00010330 BTC): ██████████████ x4x
6.    BTC Address 6 (100.00010330 BTC): ██████████████ qssr
7.    BTC Address 7 (0.00010000 BTC): ██████████████ st7y
8.    BTC Address 8 (496.89998888 BTC): ██████████████ p0ug
9.    BTC Address 9 (0 BTC): ██████████████ rz5c
10.    BTC Address 10 (0 BTC): ██████████████ u6pN
11.    BTC Address 11 (0 BTC): ██████████████ psci

B.    The rights, title and interests of the Seller, the Estate and the Debtor in any cryptocurrency in which they hold any interest, including, but not limited to (i) currently located in the BTC Wallets, and/or (ii) which have been transferred out of the BTC Wallets since their inception ((i) and (ii) together, the "***Estate Bitcoin***").

C.    All of the Seller's, the Estate's and the Debtor's legal and equitable rights, interests, title, and standing to pursue any and all claims, suits, and causes of action, including but not limited to all causes of arising under Chapter 5 of the Bankruptcy Code including under 11 U.S.C. §§ 542 and 548, relating to recovering the BTC Wallets and the Estate Bitcoin and access thereto from any party, including, but not limited to Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA and any other third party who may have access and/or control over the BTC Wallets and Estate Bitcoin.

D.    All of the Seller's, the Estate's and the Debtor's legal and equitable rights, interests and title to non-executory contracts, whether known or unknown, which concern or relate to the BTC Wallets.

E.    The Seller's and the Estate's rights and standing to seek and obtain recognition, domestication and/or enforcement of the Sale Order in any jurisdiction.

4

4927-5590-9266.17
054268-000008

## EXHIBIT C

## FORM OF QUITCLAIM ASSIGNMENT

This QUITCLAIM ASSIGNMENT (the "*Assignment*") is being entered into by and between Donald Lassman, as Chapter 7 trustee (the "*Assignor*") for the estate (the "*Estate*") of Jason M. Kahan (the "*Debtor*"), in Case Number 1:24-bk-11592 (the "*Bankruptcy Case*") pending in the United States Bankruptcy Court for the District of Massachusetts (the "*Bankruptcy Court*"), in favor of Pioneer Funding Group LLC (the "*Assignee*").

**WHEREAS**, Assignor has agreed to assign to Assignee all of the Estate's and the Debtor's right, title and interest in and to the Assets described on **Exhibit A** to this Assignment, pursuant to that certain Asset Purchase Agreement dated as of May 6, 2026, by and between the Assignor and Assignee (the "*Agreement*").

**NOW THEREFORE**, pursuant to the Agreement and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.   Capitalized terms used herein and not otherwise defined shall have the meanings given such terms in the Agreement.

2.   Assignor hereby assigns and transfers to Assignee all of the Estate's and Debtor's right, title and interest in and to the Assets.

**TO HAVE AND TO HOLD** the Assets unto Assignee, its successors and assigns, forever, subject, however, to all the terms and conditions of this Assignment.

3.   EXCEPT AS PROVIDED IN THE AGREEMENT, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER TO ASSIGNEE AS TO THE RIGHTS, TITLE AND/OR INTEREST HELD BY THEM, RESPECTIVELY, IN THE ASSETS OR OTHER PROPERTY TRANSFERRED HEREBY. ADDITIONALLY, EXCEPT AS PROVIDED IN THE AGREEMENT, ALL WARRANTIES. EXPRESS OR IMPLIED ARE HEREBY DISCLAIMED, INCLUDING WITHOUT LIMITATION ANY AND ALL WARRANTIES OF MERCHANTABILITY, SUITABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE.

**[*Remainder of Page Intentionally Left Blank*]**

4927-5590-9266

IN WITNESS WHEREOF, the Parties hereto have caused this Assignment to be fully executed as of _____, 2026.

**DONALD LASSMAN, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF JASON M. KAHAN, AND NOT INDIVIDUALLY, AS ASSIGNOR**

By: _____

Name: _____

Title: _____

**PIONEER FUNDING GROUP LLC, AS ASSIGNEE**

By: _____

Name: _____

Title: _____

4927-5590-9266

## EXHIBIT A TO ASSIGNMENT

A. The rights, title and interests of Seller, the Estate and the Debtor in the Bitcoin wallets and Bitcoin addresses, <u>including</u> private keys, in which they hold any interest, including, but not limited to, the below wallets (collectively, the "***BTC Wallets***"):



1. BTC Address 1 (0.00132677 BTC): ███████████████████████ l0hz
2. BTC Address 2 (414.99999583 BTC): ████████████████████ 59df
3. BTC Address 3 (494.22956166 BTC): ████████████████████ ej6c
4. BTC Address 4 (185.10000000 BTC): ████████████████████ yrlk
5. BTC Address 5 (100.00010330 BTC): ████████████████████ gx4x
6. BTC Address 6 (100.00010330 BTC): ████████████████████ qssr
7. BTC Address 7 (0.00010000 BTC): ████████████████████ st7y
8. BTC Address 8 (496.89998888 BTC): ████████████████████ 0ug
9. BTC Address 9 (0 BTC): ████████████████████ rz5c
10. BTC Address 10 (0 BTC): ████████████████████ u6pN
11. BTC Address 11 (0 BTC): ████████████████████ psci

B. The rights, title and interests of the Seller, the Estate and the Debtor in any cryptocurrency in which they hold any interest, including, but not limited to (i) currently located in the BTC Wallets, and/or (ii) which have been transferred out of the BTC Wallets since their inception ((i) and (ii) together, the "***Estate Bitcoin***").

C. All of the Seller's, the Estate's and the Debtor's legal and equitable rights, interests, title, and standing to pursue any and all claims, suits, and causes of action, including but not limited to all causes of arising under Chapter 5 of the Bankruptcy Code including under 11 U.S.C. §§ 542 and 548, relating to recovering the BTC Wallets and the Estate Bitcoin and access thereto from any party, including, but not limited to Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA and any other third party who may have access and/or control over the BTC Wallets and Estate Bitcoin.

D. All of the Seller's, the Estate's and the Debtor's legal and equitable rights, interests and title to non-executory contracts, whether known or unknown, which concern or relate to the BTC Wallets.

E. The Seller's and the Estate's rights and standing to seek and obtain recognition, domestication and/or enforcement of the Sale Order in any jurisdiction.

4927-5590-9266

# EXHIBIT D

# SALE ORDER

4927-5590-9266

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br><div align="right">Debtor.</div> | Chapter 7<br><br>Case No. 24-11592-JEB |

**ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

Before the Court is the motion [ECF #__ ] (the "Sale Motion") filed by Donald Lassman, the Chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 case of Jason M. Kahan (the "Debtor"), seeking entry of an order (this "Sale Order"), pursuant to Sections 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-5 and 6004-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the District of Massachusetts (the "MLBR") authorizing and approving the sale (the "Sale") of certain assets of the Debtor's estate (the "Purchased Assets"), as set forth on Exhibit A of the Asset Purchase Agreement, dated ____, 2026 (the "APA")[1], by and between the Trustee and Pioneer Funding Group LLC (including any subsequent designee or other successor designated prior to the closing of the Sale, the "Buyer", the "Stalking Horse Bidder" or the "Successful Bidder") free and clear of all liens, claims, encumbrances and interests and granting related relief.

---

[1]     The APA is attached hereto as Exhibit 1.  Capitalized terms used but not defined in this Sale Order shall have the meanings ascribed to such terms in the Sale Motion.

4930-5890-8054.8

The Trustee having determined that the highest and otherwise best offer for the sale of the Purchased Assets was made by the Buyer in the form of the APA; and the Court having held a hearing on May __, 2026 (the "Sale Hearing") to approve the APA and the transactions and agreements contemplated therein (the "Sale Transaction"); and the Court having reviewed and considered (i) the Sale Motion, (ii) any objections and replies related thereto and resolution of objections announced on the record, and (iii) the arguments of counsel and the evidence and testimony proffered (if any) or adduced at the Sale Hearing; and, upon the record of the Sale Hearing, and all other pleadings and proceedings in the case, the Court being satisfied that the relief requested in the Sale Motion is necessary and in the best interests of the Debtor's estate, creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

### Background

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the APA, pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2

Venue of the case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory authorization for the relief granted herein is found in Sections 105(a), 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014, and MLBR 2002-1 and 6004-1.

D.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

**Marketing and Sale Process**

A.     On August 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and commenced this chapter 7 case in the United States Bankruptcy Court for the District of Massachusetts (this "Court").

B.     The Trustee selected the Stalking Horse Bidder as the Successful Bidder and the Stalking Horse Bidder's bid (which is memorialized in the APA subject to the terms of this Sale Order) was the highest or otherwise best Bid for the Purchased Assets.

C.     In January of 2026, the Trustee commenced the marketing of the Purchased Assets for sale.  The Trustee's efforts included providing notice of the Trustee's intent to sell the Purchased Assets and a request for bids for the same by first-class and electronic mail to all creditors in the Debtor's bankruptcy case and all persons and other parties who the Trustee believed may be interested in purchasing the Purchased Assets, including persons who had directly or indirectly expressed an interest in the Purchased Assets during the course of the Debtor's bankruptcy case.  The Trustee provided notice of his intent to sell the Purchased Assets to more than one hundred (100) persons.  The Trustee and his counsel received significant interest in response to the Trustee's notice and engaged in numerous communications and conferences with

3

the interested parties, including responding to a wide variety of questions and other inquiries concerning the Purchased Assets and providing documentation in support of the same. The Trustee ultimately received five (5) offers to purchase the Purchased Assets.

D.    The Trustee's marketing and sales process with respect to the Purchased Assets afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Trustee and his counsel conducted a marketing and sale process with respect to the Purchased Assets, and the Successful Bidder participated, each in a fair, good faith, and non-collusive manner.

E.    The Successful Bid of the Successful Bidder constitutes the highest or otherwise best offer for the Purchased Assets, and the Trustee's determination that the APA maximizes value for the benefit of the Debtor's estate and constitutes the highest or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

F.    The Successful Bid provides fair and reasonable terms for the purchase of the Purchased Assets, and reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Purchased Assets. No such offer has been made. Therefore, approval of the Sale Motion and the Successful Bid, and the prompt consummation of the Sale Transaction contemplated thereby, will maximize the value of the Debtor's estate under the circumstances and are in the best interests of the Debtor's estate, creditors and other parties in interest.

G.    After the Trustee's selection of the Stalking Horse Bidder as the Successful Bidder, the Trustee and the Successful Bidder negotiated and finalized in good faith and at arm's length the APA and all related documents necessary to consummate the Sale Transaction.

4

4930-5890-8054.8

H.      The Successful Bidder has complied with all applicable orders of the Court in negotiating and entering into the APA.

## Sale Hearing

I.      The Court conducted the Sale Hearing on May __, 2026, at which time the Court considered the Sale Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Sale Motion and approval of the APA and the transactions contemplated by the APA.

J.      All objections to the Sale Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

## Sound Business Purpose

K.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction contemplated by the APA in accordance with the requirements of Section 363(b) of the Bankruptcy Code. The value of the Debtor's estate will be maximized through a sale of the Purchased Assets.  Approval of the APA is necessary to preserve the value of the Debtor's assets. The Trustee has determined, in his reasonable business judgment that the Purchased Assets will have the greatest value if promptly sold to the Successful Bidder.

L.      As a result, the proposed Sale Transaction pursuant to Sections 105(a) and 363 of the Bankruptcy Code, upon the terms and conditions set forth in the APA subject to this Sale Order, is the best alternative available to the Trustee for recovering value for the benefit of the Debtor's estate. The Sale Transaction contemplated by the APA maximizes the value of the Purchased Assets.

5

4930-5890-8054.8

**Fair Purchase Price**

M.      The total consideration to be provided by the Successful Bidder pursuant to the Successful Bid as set forth in the APA is the highest or otherwise best offer received by the Debtor and constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Purchased Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia. The terms of the Sale Transaction contemplated in the APA are fair and reasonable.

**Compliance With Notice Requirements**

N.      As evidenced by the notices and affidavits of service filed in the case, and based upon representations of the Trustee's counsel at the Sale Hearing, the notice provided by the Trustee (collectively the "Notice") was adequate and sufficient under the circumstances, and the Trustee provided sufficient notice of the Sale Motion, the Sale Hearing, and the Trustee's intent to consummate a sale of the Purchased Assets as contemplated by the APA and this Sale Order.  The Notice was provided to all parties who the Trustee believes may be in possession or control of the Purchased Assets, including Mr. Hunter Penn,  Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA and the Debtor.

O.      The Notice was provided in accordance with Sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014, and MLBR 2002-5 and 6004-1. The Trustee has complied with all obligations to provide notice of the Sale Motion, the Sale Hearing, the APA, this Sale Order, and the Sale Transaction. Such Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the

6

4930-5890-8054.8

Sale Hearing, the APA, this Sale Order, or the Sale Transaction is or shall be required. All parties in interest had a full and fair opportunity to object to the relief granted in this Sale Order.

### Good Faith of the Buyer

P.     The Buyer is purchasing the Purchased Assets and has negotiated and entered into the APA at arm's length and in good faith and without collusion. Accordingly, the Buyer is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the full protections of such provision. The good faith of the Buyer is evidenced by, among other things, the following facts:

i.     The sale process conducted by the Trustee was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.

ii.     The Buyer's Successful Bid is the product of good faith negotiations with the Trustee.

iii.     No other Potential Bidder submitted a Qualified Bid for the Purchased Assets.

iv.     All payments to be made by the Buyer and other agreements or arrangements in connection with the APA have been disclosed.

v.     The Buyer has not violated the provisions of Section 363(n) of the Bankruptcy Code by any action or inaction.

vi.     The Buyer is a third-party purchaser and is unrelated to the Debtor or the Trustee. Neither the Buyer nor any of its affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of the Debtor, as that term is defined in Section 101(31)(A) of the Bankruptcy Code.

vii.     The Trustee and the Buyer have engaged in substantial arm's length negotiations in good faith. The APA is the product of arm's length bargaining among the parties.

7

4930-5890-8054.8

Q.      The sale of the Purchased Assets pursuant to the APA and this Sale Order, all covenants therein and conditions thereto, and all relief requested in the Sale Motion are an integrated transaction, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated. Accordingly, the entire transaction is subject to, and is protected by, the provisions of Section 363(m) of the Bankruptcy Code.

**<u>Sale Free and Clear</u>**

R.      On and after the Closing of the Sale Transaction, no entity shall have any Lien, Claim and/or Interest (as defined herein) in or against the Purchased Assets.

S.      All Liens, Claims and/or Interests that existed against the Purchased Assets prior to the Closing, whether pre-petition or post-petition, shall, upon Closing, attach solely to the sale proceeds that the Trustee and the Debtor's estate receive under the Sale Transaction. Those Liens, Claims and/or Interests will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against the Purchased Assets prior to Closing (including, for the avoidance of doubt, as set forth in any other applicable Orders of this Court), and will be subject to any claims and defenses the Trustee or Debtor's estate may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Sale Order.

T.      Pursuant to Section 363(f) of the Bankruptcy Code, a trustee is authorized to sell property of the estate free and clear of any liens, claims, interests, and encumbrances if any of the following requirements is satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (ii) the entity holding the alleged lien, claim, interest, or encumbrance; (iii) such interest is a lien, and the price at which such property is to be sold is greater

8

than the aggregate value of all liens on such property (Section 363(f)(3) of the Bankruptcy Code); (iv) such lien, claim, interest, or encumbrance is subject to a bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance.

U.      For the following reasons, the provisions of Section 363(f) of the Bankruptcy Code have been satisfied:

i.      All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction contemplated by the APA are deemed to have consented. Alleged holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the subsections of Section 363(f) of the Bankruptcy Code.

ii.      The Trustee is not aware of any remaining interests in the Purchased Assets, and, if any such interests exist, they are in bona fide dispute as to the extent, validity, perfection, and viability of those interests.

iii.      Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances or such interest is a lien and the price at which such encumbered property is to be sold under the APA is greater than the aggregate value of all liens on such encumbered property.

V.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets will be transferred to the Buyer free and clear of all Liens, Claims, Interests and rights of setoff and recoupment, with all other applicable Liens, Claims and/or Interests to attach to the proceeds of the sale of the Purchased Assets in the order of their priority with the validity, force, and effect that they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Trustee and the Debtor's estate and all interested parties

9

with respect to such Liens, Claims and/or Interests and with the net proceeds from the sale of the Purchased Assets to be available for the benefit of the Debtor's estate.

W.      Accordingly, the Trustee has satisfied the standard set forth in Section 363(f) of the Bankruptcy Code for selling the Purchased Assets free and clear of all Liens, Claims and/or Interests.

<div align="center">

**Sale Free and Clear Required by the Buyer**

</div>

X.      In connection with the APA, the Buyer expressly negotiated for the protection of obtaining the Purchased Assets free and clear of all Liens, Claims, Interests and rights of setoff and recoupment (including, without limitation, any potential successor liability claims).  The Buyer would have paid substantially less consideration for the Purchased Assets, or not purchased the Purchased Assets at all, if the Buyer were not purchasing the Purchased Assets free and clear of any Liens, Claims, Interests and rights of setoff and recoupment.

<div align="center">

**No Successor Liability**

</div>

Y.      To the greatest extent permitted by law, neither the Buyer nor its affiliates, officers, directors, members, partners, and principals or any of their respective representatives, successors, or assigns shall be deemed, as a result of the consummation of the Sale Transaction contemplated by the APA or otherwise, to be liable for any claim based on successor liability, transferee liability, derivative liability, vicarious liability, or any similar theories under applicable state or federal law, or otherwise. The Buyer shall have no liability or obligation of the Trustee, the Debtor or the Debtor's estate and the Buyer is not otherwise, expressly or impliedly, assuming any of the debts or obligations of the Trustee, the Debtor or the Debtor's estate.  No party may assert any rights of setoff or recoupment against the Buyer to the extent such rights were assertable against the Debtor or the Debtor's estate prior to the Closing of the Sale Transaction.

<div align="center">

10

</div>

4930-5890-8054.8

Z.      The Buyer and the Trustee are not entering into the APA fraudulently or in order to escape liability for the Debtor's obligations.

## No Fraudulent Intent

AA.     The APA was not entered into, and the Sale Transaction contemplated by the APA will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtor's present or future creditors for purposes of the Bankruptcy Code, any other applicable laws of the United States, and any applicable laws of any state, territory, or possession thereof, or the District of Columbia. Neither the Debtor nor the Buyer is entering into the APA or consummating the Sale Transaction contemplated by the APA with any fraudulent or otherwise improper purpose.

## Purchased Assets

BB.     The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of the Bankruptcy Code. As the duly appointed chapter 7 trustee of the Debtor's estate, the Trustee has all title, interest, and/or rights in the Purchased Assets required to transfer and to convey the Purchased Assets to the Buyer, as required by the APA.

CC.     The Trustee acknowledges that some of the Purchased Assets are currently being improperly withheld by third parties.  The Buyer may initiate claims, causes of action, contested matters, adversary proceedings or other litigation in connection with recovery and access to the Purchased Assets (the "Recovery Actions").  The Buyer shall have the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor.  Any and all proceeds and recoveries from any Recovery Actions shall be the sole property of the Buyer. The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. The Trustee shall provide reasonable good-faith cooperation to Buyer in connection with

11

4930-5890-8054.8

its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions. The Trustee further agrees not to interfere with Buyer's Recovery Actions.

DD.    Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). The Purchased Assets are not of inconsequential value or benefit to the estate. To the extent any third party is in possession, control or in any way interfering with Buyer's access to any of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS and NordCap Advisors SA, such third parties shall immediately deliver possession, control and access to the Purchased Assets (and any proceeds thereof) to the Buyer. This Court shall retain jurisdiction over any action, suit or proceeding brought by the Buyer to compel turnover of the Purchased Assets, including but not limited to any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code or applicable law.

**Prompt Consummation**

EE.    To maximize the value of the Purchased Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the APA. Time is of the essence in consummating the Sale Transaction contemplated by the APA. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA,

12

including, without limitation, the Sale Transaction. Accordingly, there is cause to grant relief from the stay established by Bankruptcy Rule 6004.

### Section 363 Sale

FF.     The proposed sale of the Purchased Assets to the Buyer pursuant to the APA constitutes a sale of property of the Debtor's estate outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

GG.     Under the circumstances of the case, the sale of the Purchased Assets to the Buyer pursuant to Sections 105(a) and 363(b) and (f) of the Bankruptcy Code is both justified and appropriate.

HH.     The sale of the Purchased Assets to the Buyer free and clear of any and all Liens, Claims, Interests and rights of setoff and recoupment upon the terms and conditions set forth in the APA is in the best interests of the Debtor's estate.

II.     Given the circumstances of the case, the reasonable opportunity afforded other parties to make competing bids or offers for the Purchased Assets, and the adequacy and fair value of the consideration being paid by the Buyer under the APA, the proposed sale of the Purchased Assets to the Buyer constitutes a reasonable and sound exercise of the Trustee's business judgment and is hereby approved in all respects.

### Retention of Jurisdiction

JJ.     It is necessary and appropriate for the Court to retain jurisdiction to, among other things, (i) interpret and enforce the terms and provisions of this Sale Order and the APA, (ii) to adjudicate, if necessary, (ii) to adjudicate, if necessary, any and all actions, suits or proceedings brought by the Trustee or the Buyer to compel turnover of the Purchased Assets from third parties, including but not limited to any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code or applicable law, and (iii) to adjudicate, if necessary, any alleged right, title,

<div align="center">13</div>

4930-5890-8054.8

or property interest, including ownership claims, relating to the Purchased Assets and the proceeds

thereof, as well as the extent, validity, perfection, and priority of any alleged lien or claim relating

to the Debtor's estate and/or the Purchased Assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      The relief requested in the Sale Motion is granted and approved as set forth in this

Sale Order.

### The Sale Transaction is Approved

2.      The Sale Transaction contemplated by the APA is hereby approved as set forth in

this Sale Order.

3.      The Trustee is hereby authorized and directed to sell the Purchased Assets to the

Buyer upon and subject to the terms and conditions set forth in the APA, the provisions of which

are incorporated herein by reference as if set forth in full herein.

4.      The Trustee is hereby authorized and directed to perform, consummate, and

implement the APA, together with all additional instruments and documents that may be

reasonably necessary or desirable to implement the APA, and to take any and all further actions as

may be necessary or appropriate to the performance of their respective obligations as contemplated

by the APA or this Sale Order.

5.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing,

the Purchased Assets shall be transferred, sold, and delivered to the Buyer free and clear of all

Liens, Claims, Interests and rights of setoff and recoupment.  All other Liens, Claims and/or

Interests that existed against the Purchased Assets prior to the Closing shall attach to the sale

proceeds the Trustee receives under the Sale Transaction. Those Liens, Claims and/or Interests

will attach to the proceeds of the Sale Transaction in the same order of relative priority and with

the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against

14

4930-5890-8054.8

the Purchased Assets prior to Closing (including, for the avoidance of doubt, in accordance with any other applicable Orders of this Court), and will be subject to any claims and defenses the Trustee may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Sale Order by having their Liens, Claims and/or Interests, if any, in each instance against the Debtor's estate or any of the Purchased Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Purchased Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Trustee and the Debtor's estate may possess with respect thereto.

6.      To the greatest extent permitted by law, as a result of the Sale Transaction contemplated by the APA, the Buyer will have no liability for any Liens, Claims and/or Interests against the Debtor's estate as a result of any application of successor liability or other theories.

7.      Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the APA, the Purchased Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and interests, which are collectively referred to herein as the "Liens, Claims and/or Interests," which include, by way of illustration and without limitation, each of the following:

    i.    liens (as that term is defined in the Bankruptcy Code), including, without limitation, mechanics', materialmens', contractors' subcontractors', and other consensual and non-consensual liens and statutory liens, mortgages, hypothecations, charges, consents, judicial liens (as defined in the Bankruptcy Code), instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Encumbrances, covenants, easements, servitudes, and liens and security interests granted under Sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court;

    ii.    interests, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

15

iii.     rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Trustee's or the Buyer's interest in the Purchased Assets, or any similar rights, in each case with respect to the Sale Transaction;

iv.     judgments and/or decrees of any court or foreign or domestic Governmental Authority or governmental entity (to the extent permitted by law);

v.     charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets;

vi.     debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, acts, or failures to act of the Debtor;

vii.     claims (as that term is defined in the Bankruptcy Code), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

viii.     to the maximum extent permitted by law, any other interest whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise.

8.     No person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Buyer or its successors in interest any Lien, Claim, Interest or right of setoff or recoupment that such person or entity had, have, or may have against the Debtor or the Debtor's estate, or any Lien, Claim, Interest or right of setoff or recoupment relating to or arising from the Purchased Assets.

16

4930-5890-8054.8

9. The terms and provisions of the APA and all related documents necessary to consummate the Sale Transaction, together with the terms and provisions of this Sale Order, shall be binding in all respects upon the Trustee, the Debtor, the Debtor's estate, the estate's creditors, and all parties in interest, including any and all successors and assigns.

10. All entities holding Liens, Claims, Interests or rights of setoff or recoupment against the Purchased Assets shall be, and they hereby are, barred from asserting such Liens, Claims, Interests or rights of setoff or recoupment against the Buyer, its successors and assigns, and/or the Purchased Assets. All entities holding such Liens, Claims, Interests or rights of setoff or recoupment shall be deemed to have released the Purchased Assets to the Buyer and to have limited the assertion of their Liens, Claims, Interests or rights of setoff or recoupment against the Purchased Assets to the sale proceeds the Trustee and Debtor's estate receive for the sale of the Purchased Assets and any other available property of the Debtor's estate that does not constitute the Purchased Assets.

11. This Sale Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12. All Liens, Claims and/or Interests of record against the Purchased Assets shall, upon Closing, be terminated as against the Purchased Assets, and all the entities described in the

17

immediately preceding paragraph of this Sale Order are authorized and directed to (a) terminate all recorded Liens, Claims and/or Interests against the Purchased Assets from their records, official, and otherwise, in each case solely with respect to the Purchased Assets, and (b) accept for filing or recording this Sale Order and all instruments made or delivered by the Trustee or the Buyer, and any other documents relating to the conveyance of the Purchased Assets to the Buyer.

13.    If any person or entity that has filed statements, documents or agreements evidencing liens or claims on or in the Purchased Assets shall not have delivered to the Debtor or Trustee prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims and/or Interests that the person or entity has or may assert with respect to the Purchased Assets, the Trustee and Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets or, at the Buyer's request, such person or entity shall promptly execute and file such statements, instruments, releases, and other documents evidencing the release and/or satisfaction of such Liens, Claims and/or Interests.

14.    The Buyer may initiate Recovery Actions to recover and gain access to the Purchased Assets (the "Recovery Actions"). The Buyer has the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor. Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of the Buyer. The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. The Trustee shall provide reasonable good-faith cooperation to Buyer in connection with its pursuit

18

of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions. The Trustee further agrees not to interfere with Buyer's Recovery Actions.

15.     The Purchased Assets are not of inconsequential value or benefit to the estate. To the extent any third party is in possession, control or in any way interfering with Buyer's access to any of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, and NordCap Advisors SA, such third parties shall immediately deliver possession, control and access to the Purchased Assets (and any proceeds thereof) to the Buyer.

16.     The Trustee and Buyer, as applicable, are hereby authorized to (a) take such action as may be necessary to implement the provisions of the APA and any other document executed in connection therewith, and (b) execute and file any necessary document with any governmental or regulatory unit. This Sale Order shall constitute all approvals and consents, if any, required by the laws of any state necessary to file, record, and accept such documents.

17.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization and approvals with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

18.     The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA has been undertaken, by the Trustee, the Buyer, and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in Section 363(m) of

19

4930-5890-8054.8

the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, whether or not the Buyer knew or knows of the pendency of the appeal, unless such authorization and such Sale Transaction are stayed pending appeal. The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code.

19.     Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or damages or costs to be imposed, under Section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Purchased Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under Section 363(n) of the Bankruptcy Code.

20.     Nothing contained in any order of any type or kind entered in this case shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.  To the extent there is a conflict between the terms of this Sale Order and the APA, the terms of the APA shall control.

21.     The Trustee is authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and provisions of the APA and all other agreements related thereto and the Trustee is authorized to take any other action that may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, and conveying any or all of the Purchased Assets.

20

4930-5890-8054.8

**Additional Implementation Provisions**

22.     The Court retains jurisdiction, even after the closing of the case, with respect to all matters arising from or related to the enforcement of this Sale Order, including the authority to do the following:

(a)     interpret, implement, and enforce the terms and provisions of this Sale Order, the APA, and any other agreement executed in connection therewith;

(b)     protect the Buyer, or any of the Purchased Assets, against any Liens, Claims and/or Interests;

(c)     resolve any disputes arising under or related to the APA, the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Purchased Assets;

(d)     adjudicate all issues concerning all Liens, Claims and/or Interests in and to the Purchased Assets, including the extent, validity, enforceability, priority, and nature of all such Liens, Claims and/or Interests; and

(e)     adjudicate any and all issues and/or disputes relating to the Trustee's  or the Buyer's right, title, or interest in the Purchased Assets and the proceeds thereof, including any action, suit or proceeding brought by the Trustee or the Buyer to compel turnover of the Purchased Assets, including but not limited to any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code related to the Purchased Assets or applicable law.

23.     The provisions of this Sale Order are nonseverable and mutually dependent.

24.     Except as may be expressly provided herein, nothing in this Sale Order shall alter or amend the APA and the obligations of the Trustee and the Buyer thereunder.

25.     The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the APA and each and every provision, term, and condition thereof be authorized and approved in its entirety.

21

26.	This Order shall be effective and enforceable immediately.	The provision of Bankruptcy Rule 6004(h) is hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the APA immediately upon entry of this Order.


Dated:	_____

Janet E. Bostwick
United States Bankruptcy Judge


22

4930-5890-8054.8