UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | : | |
| In Re: | : | |
| | : | |
| JASON M. KAHAN | : | Chapter 7 |
| Debtor | : | Case No. 24-11592-JEB |
| | : | |

## DEBTOR'S OBJECTION TO THE TRUSTEE'S PROPOSED SALE PROCEDURE

Now respectfully represent Jason M. Kahan (herein "Debtor"), the Debtor in the above-referenced Chapter 7 proceeding, who objects to the proposed sale procedure made by the Debtor's Chapter 7 Trustee, Donald Lassman (herein "Trustee") for the sale of the Debtor's 1807 bitcoin (herein "Debtor's Bitcoin") as being inadequate and insufficient marketing for the contemplated sale of an asset valued at in excess of $150,000,000.00.

Moreover, the proposed sale of the Debtor's Bitcoin and all associated legal rights to Pioneer Funding Group LLC ("Pioneer" or "Stalking Horse Bidder") for $350,000 is fundamentally flawed, legally deficient, and must be denied. The sale procedures proposed by the Trustee are the product of a structurally compromised process that exposes known thieves and contemnors to the auction as potential qualified bidders, broadcasts privileged investigative materials and private key information in a public filing, transfers attorney-client privilege to a third-party stranger to that relationship, and proposes to sell assets worth potentially in excess of $150,000,000 for a stalking horse bid of $350,000 — representing less than one-quarter of one percent of the assets' estimated market value.

## RELEVANT BACKGROUND:

1. That on August 7, 2024, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Donald Lassman was appointed as Chapter 7 Trustee.

2. That the primary assets at issue are certain Bitcoin wallets and Bitcoin addresses (the "BTC Wallets") containing or associated with approximately 1,791 Bitcoin

(the "Estate Bitcoin"), which at current market prices represent assets valued in excess of $150,000,000.

3. That the Estate Bitcoin is not in possession of either the Trustee or the Debtor. It was misappropriated through unauthorized access, keystroke logging, theft of private keys, and wire fraud perpetrated by third parties including but not limited to Messrs. Hunter Penn and Nils Trosterud, acting through entities including NordCap Advisors SA and Quantum Resource Group QRG AS (collectively, the "Adverse Parties"). This theft is the subject of ongoing federal criminal investigation.

4. That on May 8, 2026, the Trustee filed the Sale Motion seeking approval of procedures governing the proposed sale of the BTC Wallets, the Estate Bitcoin, and all related causes of action (the "Recovery Actions") to Pioneer Funding Group LLC for a stalking horse bid of $350,000.

5. That the Debtor objects to the proposed Sale Procedures on the grounds hereinafter set forth.

### OBJECTIONS TO PROPOSED SALE PROCEDURES:

### OBJECTION I: THE SALE PROCEDURES IMPROPERLY PERMIT PERMIT PARTIES WHO INTERFERED WITH THE TRUSTEE'S PURSUIT OF THE ASSETS TO PARTICIPATE AS QUALIFIED BIDDERS:

6. That the Trustee's proposed Sale Procedures contain no exclusion barring the very individuals and entities responsible for the theft and/or misappropriation of the Estate Bitcoin from participating in the auction as "Qualified Bidders." This is a fundamental and disqualifying defect in the proposed procedures and, as such, it is flawed.

7. That the Sale Motion itself acknowledges at pages 6 and 14 that Messrs. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, and NordCap Advisors SA are believed to be "involved in interfering with access to certain of the Assets." Despite this acknowledgment, the Sale Procedures impose no restriction on these individuals and entities from submitting a competing bid or serving as a Qualified Bidder at the Auction.

8. That permitting the bad actors who interfered with and/or absconded with the Assets to purchase those same assets through a court-approved auction process

-2-

would constitute a fundamental miscarriage of justice and a violation of the Trustee's fiduciary duties. Specifically:

- Hunter Penn has been subject to five (5) federal bankruptcy subpoenas which he has failed to honor, constituting contempt of this Court's process. A party in contempt of court orders cannot be permitted to participate in a court-supervised auction as a Qualified Bidder.

- Nils Trosterud, NordCap Advisors SA, and Quantum Resource Group QRG AS are under active federal investigation in connection with the misappropriation of the Estate Bitcoin. Allowing entities under federal investigation for theft of the very assets being sold to bid at auction would be unconscionable and contrary to public policy.

- The Qualified Bidder Statement required under the proposed Sale Procedures asks bidders to certify under penalty of perjury whether they "currently hold any of the Assets, including but not limited to the private keys related to the Assets." The Adverse Parties hold the private keys. A bidder who holds the very private keys being sold has an insurmountable conflict of interest and cannot participate as a Qualified Bidder on any basis.

- Permitting such a bid would allow the Adverse Parties to purchase legal immunity for their own theft at a fraction of the assets' true value, using a court order as a shield.

The Sale Procedures must be amended to include an explicit prohibition barring Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA, and any of their affiliates, agents, assigns, or instrumentalities from submitting a bid or participating in the auction in any capacity.

**OBJECTION II: THE SALE PROCEDURES
<u>DO NOT ROBUSTLY MARKET THE ESTATE BITCOIN:</u>**

9.      That the Trustee's proposed sale procedures do not provide a robust marketing program adequate to maximize price recovery for a highly liquid asset (1,807 BTC).

10.      That the marketing procedures should include broad dissemination of the sale to institutional and strategic buyers, access to multiple trading venues (exchanges, OTC desks), and a public auction component with a meaningful marketing period.

11.      That a rushed process risks undervaluation, an insufficient return, and harm to the Debtor's creditors and to the Debtor because this is a case where the "solvent debtor

rule" applies and currently the proposed marketing for the Trustee's sale is in no one's best interest.

12.     That the absence of a structured overbid process or a formal open auction with clear minimums undermines the "best price attainable" standard because the Trustee has a duty to solicit higher and better offers, not to seek approval of a sale at a price that reflects insufficient market exposure.

13.     That the sale process should include a minimum overbid requirement to proceed to successive bidding rounds.

14.     That notice should reach a broad pool of potential bidders (institutional, professional, and high-net-worth buyers) with a prohibition on last-minute bids that prejudice other bidders.

15.     That despite these protections, the proposed sale risks a noncompetitive result and undervaluation.

16.     That the proposed price of $350,000 for 1,761 BTC translates to roughly $194 per BTC, inconsistent with contemporaneous market pricing evidenced by credible pricing sources on the valuation date and current date. The Court should require a sale procedure that ensures price discovery reflects current market conditions, not expediency.

17.     That the notice of sale must be robust notifying all potential bidders, creditors, and interest parties in a timely manner including full disclosure of all material terms of the sale.

18.     That inadequate notice deprives creditors of meaningful participation and undermines competitive bidding.

19.     That the motion should provide detailed disclosures about custody of the 1,807 BTC (wallet addresses, keys, control arrangements, custody measures). If disclosures are incomplete, the Court should require supplementation and, if needed, an independent forensic review of custody to protect the estate's value.

20.     That the process should ensure that there are no conflicts of interest or control by related parties in the sale process; disclosures of brokers, advisors, and any

-4-

potential related party arrangements must be complete, with independent bid evaluation and approval procedures as needed.

### OBJECTION III: THE STALKING HORSE BID
### OF $350,000  IS GROSSLY INADEQUATE AND FAILS
### TO SATISFY THE TRUSTEE'S FIDUCIARY DUTY TO MAXIMIZE ESTATE VALUE:

21.     That the Trustee's primary obligation under 11 U.S.C. § 704(a)(1) and applicable case law is to maximize the value of the estate for the benefit of creditors. The proposed stalking horse bid of $350,000 fails this standard by an extraordinary margin.

22.     That Exhibit A to the Asset Purchase Agreement identifies the following BTC wallet balances:

| Wallet | BTC Balance | Est. Market Value (@$96,000/BTC) |
|---|---|---|
| Address 2 | 414.99999583 BTC | ~$39,840,000 |
| Address 3 | 494.22956166 BTC | ~$47,446,000 |
| Address 4 | 185.10000000 BTC | ~$17,770,000 |
| Address 5 | 100.00010330 BTC | ~$9,600,000 |
| Address 6 | 100.00010330 BTC | ~$9,600,000 |
| Address 8 | 496.89998888 BTC | ~$47,702,000 |
| TOTAL | ~1,791 BTC | ~$171,936,000+ |

23.     That at current Bitcoin market prices, the stalking horse bid of $350,000 represents approximately 0.20% of the estimated market value of the identified wallet balances. Even applying a significant discount for recovery uncertainty, no reasonable fiduciary could conclude that $350,000 represents fair value for these assets or that the proposed sale procedures are designed to elicit the highest and best bid.

24.     That the total allowed claims in this estate — even using the Trustee's inflated figures — are approximately $4,000,000. The stalking horse bid is less than 10% of even the claims pool, let alone the asset value. A trustee who sells $150,000,000+ in assets for $350,000 when the claims pool is $4,000,000 has not maximized estate value — he has abandoned it and, as such, the Trustee should probably abandon the asset to the Debtor.

25.     That the Court should require the Trustee to submit a formal valuation analysis and demonstrate that the $350,000 stalking horse bid reflects a reasonable exercise of business judgment before approving any Sale Procedures.

**OBJECTION IV: THE BID SOLICITATION IMPROPERLY
DISCLOSES CONFIDENTIAL INVESTIGATIVE
<u>MATERIALS AND FEDERAL SUBPOENA TRANSCRIPTS:</u>**

26.     That the Sale Motion and APA, filed as a public document on the docket, disclose the following categories of sensitive and confidential information without any protective order, motion to seal, or notice to the Debtor:

- The specific Bitcoin wallet addresses and associated BTC balances set forth in Exhibit A to the APA, which are now publicly accessible to any party worldwide including those who may seek to further obstruct recovery of the Assets.

- The identity of the Debtor's former special counsel Kenneth Cuccinelli and the circumstances of his termination as of January 7, 2026, including a representation that he acknowledged no entitlement to a contingency fee — information that is privileged and was never authorized for public disclosure.

- The existence of exhibits used during the deposition of Hunter Penn conducted on October 2, 2025, pursuant to federal bankruptcy subpoena process, and a requirement that these materials be transferred to Pioneer upon closing. The public identification of these deposition exhibits provides the subjects of the federal investigation with a roadmap of the evidence compiled against them.

- The names, nationalities, and corporate affiliations of all parties believed to hold or interfere with the Assets, including foreign entities, providing those parties with advance notice of any legal strategy the estate intends to pursue.

27.     That the public disclosure of this information without a protective order is prejudicial to the Debtor's interests, potentially compromises the ongoing federal criminal investigation, and may provide the Adverse Parties with information they can use to further obstruct recovery. The Sale Procedures Order cannot be approved while this material remains publicly accessible without restriction.

28.     That the Debtor requests that the Court in conjunction with modifying the Trustee's Proposed Sale Procedure me modified to require the sealing or redacting of:

- all Bitcoin wallet addresses and balances in Exhibit A;
- all references to Mr. Cuccinelli and the circumstances of his engagement and termination;
- all references to the Penn deposition and associated exhibits; and

- any other information whose public disclosure prejudices the estate's recovery efforts.

### OBJECTION V: THE SALE PROCEDURES WERE
### DESIGNED AND FILED BY PIONEER'S COUNSEL —
### <u>CREATING AN IRRECONCILABLE CONFLICT OF INTEREST:</u>

29.　That Section 2.1 of the APA contains a remarkable provision: "Buyer agrees to prepare the Sale Motion and shall provide Seller with the draft of the Sale Motion as soon as practicable after execution of this Agreement." In other words, the Sale Motion filed before this Court — the very motion the Trustee is presenting as his own independent business judgment — was drafted by Nixon Peabody LLP, counsel to the Stalking Horse Bidder.

30.　That it is respectfully suggested that this is a fundamental conflict of interest that undermines the integrity of the entire sale process:

- The Trustee's fiduciary obligation is to the estate and its creditors — not to the Stalking Horse Bidder. A Sale Motion drafted by the buyer's counsel, for the buyer's benefit, cannot be presumed to represent an independent exercise of the Trustee's business judgment.

- The Sale Procedures, bidding protections, break-up fee, expense reimbursement, minimum overbid requirements, and all other terms that structure the auction were effectively authored by the party that stands to benefit from suppressing competitive bidding.

- The motion's legal arguments in support of the break-up fee and expense reimbursement — arguments a trustee would ordinarily develop independently — were written by the very law firm whose client receives those fees.

- This arrangement raises serious questions about whether the Trustee conducted a genuinely independent review of the APA terms or simply adopted Pioneer's preferred structure wholesale.

31.　That at minimum, the Court should require the Trustee to submit an independent declaration setting forth his own business judgment analysis, conducted without reliance on materials prepared by Pioneer's counsel, before the Sale Procedures are approved.

### OBJECTION VI: THE PROPOSED SALE ORDER
### PURPORTS TO GRANT UNENFORCEABLE INJUNCTIVE RELIEF
### <u>RELIEF AGAINST FOREIGN PARTIES WITHOUT DUE PROCESS:</u>

32.　That the proposed Sale Order (Exhibit B to the Sale Motion) purports to order that named third parties — including Nils Trosterud, Sissel Trosterud, Quantum Resource

Group QRG AS, and NordCap Advisors SA, all of whom are Norwegian entities or individuals — "shall immediately deliver possession, control and access to the Assets" to Pioneer upon closing."

32.     That this injunctive relief embedded in a sale order is legally deficient on multiple grounds:

- No Adversary Proceeding: Injunctive relief against named third parties in a bankruptcy case requires an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(7). The Trustee cannot obtain an injunction against named foreign parties by embedding such relief in a 363 sale order.

- No Due Process: The named foreign parties have not been properly served with process sufficiently to support the entry of injunctive relief against them. A sale order granting such relief without proper notice and an opportunity to be heard would violate the Due Process Clause.

- International Enforceability: A U.S. bankruptcy court sale order directing Norwegian citizens and entities to "immediately deliver" assets has no self-executing international enforcement mechanism. The inclusion of this language in the order creates false expectations about its effect while providing no actual legal pathway to enforcement.

- Contempt Risk Without Foundation: Issuing injunctive relief that cannot be enforced sets up a contempt proceeding that this Court lacks jurisdiction to resolve against foreign nationals who have not submitted to U.S. jurisdiction.

33.     That, as such, the injunctive provisions of the proposed Sale Order must be stricken or limited to parties properly before this Court before any Sale Procedures are approved.

WHEREFORE, the Debtor Jason M. Kahan requests that this Honorable Court:

1.  Deny the Trustee's Motion for approval of Sale Procedures in its entirety;

2.  In the alternative, continue the Sale Procedures Hearing for a period of no less than 90 days to allow for the modification of the proposed Sale Procedures taking into account that which has been stated supra.;

3.  Order the immediate sealing or redaction of all Bitcoin wallet addresses, private investigative materials, and deposition exhibit references from the public docket;

4.  Order production of all correspondence between Nixon Peabody LLP and Hunter Penn or any other party believed to hold private keys associated with the BTC Wallets;

5. For such other relief that this Honorable Court deems appropriate and just.

Respectfully submitted
JASON M. KAHAN
By his attorney,

/s/ Barry R. Levine
Barry R. Levine (BBO No. 296500)
100 Cummings Center – Suite 327G
Beverly, MA 01915
Dated: <u>May 22 2026</u>      978.922.8440 – phone
barry@levineslaw.com

<u>CERTIFICATE OF SERVICE</u>

I, Barry R. Levine, state that on May 22, 2026, I electronically filed the foregoing with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System.  I served the foregoing document on the following CM/ECF participants and to those non-CM/ECF participants by first-class mail postage prepaid.

Richard King, Office of the US Trustee
Alan L. Braunstein, Esq., for First Boston
Robert F. Tenney, Esq., for Enterprise Bank and Trust Company now Rockland Trust
Jay P. Johnson, Esq., for Commonwealth Real Estate Holdings, LLC
Jesse I. Redlener, Esq., Counsel to an interested party
Alan M. Cohen, Esq., for Fidelis Residential Bridge Loan Venture V LP
Vladimir von Timroth, Esq., for A&M Management Group LLC
Richard N. Gottlieb, Esq., for Mark M. Newberg and Alexis and the Trustees of the 5
    Wigglesworth Condominium Trust
Richard C. Pedone, Esq., for Pioneer Funding Group LLC)
Richard Blumenthal, for Equity Trust Company Custodian
Kathleen R. Cruickshank, Esq. for Murphy & King, P.C.
Sara Kathryn Jackson, Esq., for U.S. Trustee
Jeremy Moskowitz, Esq., for Counsel to Commonwealth Real Estate Holdings, LLC


/s/ Barry R. Levine
Barry R. Levine

-10-

Label Matrix for local noticing
0101-1
Case 24-11592
District of Massachusetts
Boston
Fri May 22 12:19:50 EDT 2026

A&M Management Group LLC
8 Courtyard Pl.
Lexington, MA 02420-1925

Enterprise Bank and Trust Company
c/o Cunningham Machanic
220 North Main Street, 3rd Floor
Natick, MA 01760-1100

Fidelis Residential Bridge Loan Venture V LP
c/o Law Offices of Alan M. Cohen & Assoc
209 West Central St.
Ste. 126
Natick, MA 01760-3798

Mark M. Newberg and Alexis G. Malkin, Indivi
Attn: Mark Newberg
5 Wiggleworth Street
Apt. #2
Somerville, MA   02145-3013

Nicholson Devine LLC
21 Bishop Allen Dr
Cambridge, MA 02139-3524

Verdolino & Lowey P.C.
124 Washington St.
Foxborough, MA 02035-1368

Boston
U. S. Bankruptcy Court
J.W. McCormack Post Office & Court House
5 Post Office Square, Suite 1150
Boston, MA 02109-3945

A& M Management Group, LLC
8 Courtyard Place
Lexington, MA 02420-1925

CSLF Servicing, LLC and Fidelis Resident
c/o Natasha Winter, Esquire
Dain, Torpy, Le Ray, Wiest & Gamer, P.C.
Boston, MA 02110

Carlo Cellai, Esquire
150 Grossman Drive - Suite 201
Braintree, MA 02184-4902

Chase Card Services
Attn: Bankruptcy
PO Box 15298
Wilmington, DE 19850-5298

Commonwealth Real Estate Holdings, LLC
Barsh & Cohen, P.C.; Attn: Atty Jay P. J
500 Turnpike Street, Suite 201
Canton, MA 02021-2747

Cunningham, Machanic, Cetlin, Johnson
Harney & Tenney, LLP
Lakewood Office Park 220 North Main Stre
Natick, MA 01760-1100

Enterprise Bank & Trus
222 Merrimack Street
Lowell, MA 01852-5913

Equity Trust Company Custodian
FBO Alexander Mostov IRA
c/o Richard Blumenthal
343 Washington St., Suite 200
Newton, MA 02458-1595

Fidelis Residential Bridge Loan Venture V LP
c/o Alan M. Cohen, Esquire
209 West Central Street, Suite 126
Natick, MA 01760-3798

First Bank Associates
859 Willard Street One Adams Place #
Quincy, MA 02169

First Boston Associates, LLC
c/o Riemer & Braunstein LLP
Attn: Alan Braunstein, Esq.
100 Cambridge Street, 22nd Floor
Boston, MA 02114-2527

Gm Financial
801 Cherry St
Ste 3600
Fort Worth, TX 76102-6855

Harold B. Murphy, Chapter 7 Trustee of WJH E
Murphy & King, P.C.
28 State, Street, Suite 3101
Boston, MA 02109-5705

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

Jacob Haworth and Elena Haworth
27 Central Road, #1
Somerville, MA 02143-1205

Jacob Haworth and Elena Haworth
Lawrence A. Wind, Esq.
80 Hayden Avenue, Suite 110
Lexington, MA 02421-7962

Jpmcb Card
Attn:  Bankruptcy
PO Box 15298
Wilmington, DE 19850-5298

MA Department of Revenue
Bankruptcy Unit PO Box 7090
Boston, MA 02204-7090

Mark M. Newberg and Alexis G. Malkin, Indivi
5 Wigglesworth St. #2
Somerville, MA 02145-3013

Mark M. Newberg and Alexis G. Malkin, Indivi
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd floor
Boston, MA 02108-2008

Northeast Building Supply, LLC
91 Franklin Street
Hanson, MA 02341-1806

QL Boston, LLC
35 Dane Street - Unit 4
Somerville, MA 02143-3281

Santander Consumer USA Inc.
P.O. Box 961245
Fort Worth, TX 76161-0244

Timothy J. Perry, Esquire
Perry Krumsiek, LLP
One Boston Place - Suite 2600
Boston, MA 02108-4420

Barry R. Levine
100 Cummings Center
Suite 327G
Beverly, MA 01915-6123

Donald Lassman
Law Offices of Donald Lassman
P. O. Box 920385
Needham, MA 02492-0005

Elena Haworth
27 Central Road
#1
Somerville, MA 02143-1205

Harold Murphy
Murphy & King, P.C.
28 State Street
Suite 3101
Boston, MA 02109-5705

Hunter Penn
1151 A Elm Street Unit 3L
West Springfield, MA 01089-1513

Jacob Haworth
27 Central Road
#1
Somerville, MA 02143-1205

Jason M Kahan
23 Sagamore Lane
Boxford, MA 01921-2631

Jesse I. Redlener
Ascendant Law Group LLC
2 Dundee Park Drive
Suite 102
Andover, MA 01810-3735

Kenneth T Cuccinelli
10007 N. Harris Farm Road
Spotsylvania, VA 22553-1975

Richard King - B
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109-3934

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Commonwealth Real Estate Holdings, LLC

(u)First Boston Association LLC

(u)Pioneer Funding Group LLC

(d)A&M MANAGEMENT GROUP LLC
8 Courtyard Pl.
Lexington, MA 02420-1925

(du)Commonwealth Real Estate Holdings, LLC

End of Label Matrix
Mailable recipients    42
Bypassed recipients     5
Total                  47