**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| **In re:** ) | |
| ) | **Chapter 7** |
| **JASON M. KAHAN,** ) | |
| ) | **Case No. 24-11592 (JEB)** |
| **Debtor.** ) | |

**NOTICE OF BID**

TO THE CLERK OF THE COURT AND ALL PARTIES:

PLEASE TAKE NOTICE THAT, pursuant to the Notice of Proposed Sale and associate sale procedures, Samara CR Holdings, LLC hereby submits its bid and associated documents. The Documents enclosed are as follows:

**EXHIBIT A** – Qualified Bidder Statement and Acknowledgement

**EXHIBIT B** – Written Consent of Manager of Samara CR Holdings, LLC

**EXHIBIT C** – Executed Asset Purchase Agreement (REDLINE)

Respectfully submitted,

*/s/ Jesse I. Redlener*
Jesse I. Redlener (BBO #646851)
Ascendant Law Group, LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810
Phone: (978) 409-2038
jr@ascendantlawgroup.com

Dated: June 26, 2026

## <u>CERTIFICATE OF SERVICE</u>

I, Jesse I. Redlener, hereby certify that on June 26, 2026, I served a copy of the *Notice of Appearance*, in the above-captioned proceeding on all parties via the Court's Electronic Case Filing system or by first class mail upon those parties requesting service by regular mail.

Respectfully submitted,

*/s/ Jesse I. Redlener*

SERVICE LIST:

ECF
Darren Azman on behalf of Interested Party Ironwood Recovery Holdings LLC
dazman@mcdermottlaw.com, mco@mwe.com

Alan L. Braunstein on behalf of Creditor First Boston Association LLC
abraunstein@riemerlaw.com, ahall@riemerlaw.com;ndailey@riemerlaw.com

Alan M. Cohen on behalf of Creditor Fidelis Residential Bridge Loan Venture V LP
acohen@collections-law.com

Kathleen R. Cruickshank on behalf of Interested Party Harold Murphy
kcruickshank@murphyking.com,
bankruptcy@murphyking.com;kflynn@murphyking.com;ecf-
f3829d9f3bd3@ecf.pacerpro.com

Mark G. DeGiacomo on behalf of Trustee Donald Lassman
mdegiacomo@harrisbeachmurtha.com, lmulvehill@harrisbeachmurtha.com

Richard N. Gottlieb on behalf of Creditor Mark M. Newberg and Alexis G. Malkin,
Individually and as Trustees of the 5 Wigglesworth Condominium Trust
rnglaw@verizon.net, r39800@notify.bestcase.com

Zachary J. Gregoricus on behalf of Trustee Donald Lassman
zgregoricus@harrisbeachmurtha.com

Sara Kathryn Jackson on behalf of Assistant U.S. Trustee Richard King - B
sara.kathryn.jackson@usdoj.gov

Sara Kathryn Jackson on behalf of Plaintiff William K. Harrington
sara.kathryn.jackson@usdoj.gov

Jay P. Johnson on behalf of Creditor Commonwealth Real Estate Holdings, LLC
Jay.Johnson@Barsh-Cohen.com, Johnson.JayB147131@notify.bestcase.com

Richard King - B
USTPRegion01.BO.ECF@USDOJ.GOV

Donald Lassman
don@lassmanlaw.com, dlassman@ecf.axosfs.com

Barry R. Levine on behalf of Debtor Jason M Kahan
barry@levineslaw.com, kathy@levineslaw.com;r39812@notify.bestcase.com

Barry R. Levine on behalf of Defendant Jason M Kahan

barry@levineslaw.com, kathy@levineslaw.com;r39812@notify.bestcase.com

Jeremy Moskowitz on behalf of Creditor Commonwealth Real Estate Holdings, LLC
jmoskowitz@barsh-cohen.com

Morgan Nighan on behalf of Interested Party PBTC Recovery Partners, LLC
mnighan@nixonpeabody.com

Morgan Nighan on behalf of Interested Party Pioneer Funding Group LLC
mnighan@nixonpeabody.com

Richard C. Pedone on behalf of Interested Party Pioneer Funding Group LLC
rpedone@nixonpeabody.com,
bos.managing.clerk@nixonpeabody.com,rmcmullin@nixonpeabody.com

Robert F. Tenney on behalf of Creditor Enterprise Bank and Trust Company
rtenney@cmlaw.net

# EXHIBIT A

### QUALIFIED BIDDER STATEMENT AND ACKOWLEDGEMENT

The undersigned, on behalf of Samara CR Holdings, LLC (the "Bidder"), hereby submits this disclosure statement pursuant to the applicable bidding procedures in connection with the assets of Jason M. Kahan (the "Debtor") in United States Bankruptcy Court, District of Massachusetts, Case No. 24-11592 (JEB).

The Bidder hereby represents and warrants, under penalty of perjury, that the following statements are true and correct:

1.  Identity of interested parties (Bid Procedures 4(c)):

    a.  Jason M. Kahan
    b.  Ryan Moore

2.  Insider Status (Bid Procedures 4(d)(x)):

    The Bidder represents that it is an "insider" of the Debtor, as that term is defined in section 101(31) of title 11 of the United States Code (the "Bankruptcy Code").

3.  Possession or Control of Assets (Bid Procedures 4(d)(y)):

    The Bidder represents that it does not currently hold, possess, or control any of the Debtor's assets (the "Assets"), including, without limitation, any wallets, accounts, systems, or repositories containing the Assets, except to the extent that the Debtor is a member and manager of the Bidder and as such asserts that the Assets are property of the Debtor's bankruptcy estate.

    The Bidder further represents that it does not hold or have access to any private keys, credentials, or other means necessary to access, transfer, or control the Assets.

4.  Prior Involvement with the Assets (Bid Procedures 4(z)):

    The Bidder represents that it has had prior involvement with the Assets, by and through the Debtor, including, without limitation, custody, management, trading, advisory services, technical support, or any other direct or indirect interaction with the Assets. The Bidder does not currently have any current connection or control of the Assets.

    The Bidder acknowledges that this disclosure is being provided in connection with a bankruptcy proceeding and may be relied upon by the Debtor, the Court, and other parties in interest.

5.  Acknowledgement and Representation (Bid Procedures 4(g)):

    The undersigned hereby acknowledges and agrees that Bidder:

    (i)     has had a full and fair opportunity to conduct any and all due diligence it deems necessary or appropriate with respect to the Assets prior to submitting its offer;

(ii)   has relied solely upon its own independent review, investigation, and/or inspection of any documents and the Assets in making its bid;

(iii)   has not relied upon any written or oral statements, representations, promises, warranties, or guaranties of any kind whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly set forth in the Asset Purchase Agreement; and

(iv)   is not entitled to any expense reimbursement, break-up fee, or similar payment in connection with its bid.

I, Jason M. Kahan, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: June 26, 2026

**SAMARA CR HOLDINGS, LLC**

By: _ID uBNfFRjuadoZbXXNncpBnYy6_____

Name:  Jason M. Kahan

Title:  Manager

## eSignature Details

---

**Signer ID:**      **uBNfFRjuadoZbXXNncpBnYy6**
Signed by:       Jason Kahan
Sent to email:    jk@jasonkahan.com
IP Address:      108.49.128.103
Signed at:       Jun 26 2026, 1:37 pm EDT

# EXHIBIT B

**WRITTEN CONSENT OF MANAGER OF**
**SAMARA CR HOLDINGS, LLC**

The undersigned manager, Jason M. Kahan (the "Manager") of Samara CR Holdings, LLC (the "Company"), a Delaware limited liability company, organized under the limited liability company laws of the State of Delaware, does hereby authorize, adopt and approve the following actions and resolutions by this written consent to action without a meeting (this "Consent"):

**WHEREAS**: The Manager has determined that the Company is interested in becoming qualified as a bidder for the assets being sold by the Chapter 7 bankruptcy trustee (the "Trustee") for Jason M. Kahan (the "Debtor") in United States Bankruptcy Court, District of Massachusetts, (the "Court") Case No. 24-11592 (JEB) on those certain Assets as defined in the Trustee's Sale Motion and pursuant to the Bid Procedures Order issued by the Court on June 3, 2026 is required to submit various documents including a statement of authority to submit its offer; now therefore be it:

**RESOLVED:** That, Mr. Kahan, or any party authorized by Mr. Kahan (each an "Authorized Person"), is hereby authorized to submit an offer for the Assets, that no due diligence is required and that no further authorization is required to participate in the bidding process as set forth in the Court's Sale order Dated June 3, 2026, including successive bids during the Court approved auction on July 1, 2026 or such other continued date.

**RESOLVED:** That any and all actions heretofore or hereafter lawfully taken in the name of or on behalf of the Company in good faith by Mr. Kahan or any Authorized Person in furtherance of the purposes of the foregoing resolution or in connection with the processes contemplated therein are hereby ratified, confirmed, and adopted as the acts and deeds of the Company.

In witness whereof, this Resolution has been executed on the date stated below.

SAMARA CR HOLDINGS, LLC

ID dgnzkc7nEgnoNdCgvKUpqMrB

By: Jason M. Kahan
Its: Manager

Dated: June 26, 2026

# eSignature Details

**Signer ID:**           **dgnzkc7nEgnoNdCgvKUpqMrB**
Signed by:               Jason Kahan
Sent to email:           jk@jasonkahan.com
IP Address:              108.49.128.103
Signed at:               Jun 26 2026, 1:37 pm EDT

# EXHIBIT C

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "*Agreement*") is made as of June 26, 2026 by and between Donald Lassman, as Chapter 7 Trustee ("*Seller*") appointed in the Chapter 7 case of *In re Jason M. Kahan*, Case Number 1:24-bk-11592 (the "*Bankruptcy Case*") pending in the United States Bankruptcy Court for the District of Massachusetts (the "*Bankruptcy Court*") on the one hand, and Samara CR Holdings LLC, a Delaware limited liability company and its successors and assigns or designee ("*Buyer*," and together with Seller, the "*Parties*," and each, a "*Party*"), on the other hand.

WHEREAS, on August 7, 2024, a voluntary petition was filed under Chapter 7 of Title 11 of the United States Code (the "*Bankruptcy Code*") by Jason M. Kahan, an individual residing in Massachusetts (the "*Debtor*").

WHEREAS, the Debtor's Bankruptcy Case is currently pending in the Bankruptcy Court.

WHEREAS, Seller was appointed as Chapter 7 trustee for the Debtor's estate (the "*Estate*") on August 8, 2024.

WHEREAS, Seller has engaged in discovery, investigations, and other contested matters (the "*Seller's Investigations*") in an attempt to recover possession and control of the Estate Bitcoin (as hereinafter defined), which are not currently in the possession or control of Seller or the Debtor.

WHEREAS, Buyer desires to purchase and Seller desires to sell to Buyer, or a successful overbidder, as the case may be, the Assets (as hereinafter defined) of the Debtor free and clear of all liens, claims, encumbrances, licenses and interests in accordance with Section 363 of the Bankruptcy Code, and otherwise on the terms and conditions set forth herein.

IN CONSIDERATION OF the promises and mutual covenants contained in this Agreement, and for good and valuable consideration, the Parties agree as follows:

## ARTICLE I

Section 1.1     Purchase and Sale of Assets. Subject to Bankruptcy Court approval, on the Closing Date (as hereinafter defined), Seller will transfer, sell, assign and convey to Buyer, and Buyer will purchase and acquire from Seller, free and clear of all liens, claims, licenses, encumbrances, interests and rights of setoff and recoupment, in accordance with Section 363 of the Bankruptcy Code, all of the Debtor's and the Estate's right, title and interest in the Assets of the Debtor as set forth on **Exhibit A** attached hereto (collectively referred to herein as the "*Assets*").

Section 1.2     Purchase Price. The purchase price (the "*Purchase Price*") of the Assets shall be Four Hundred and Fifteen Thousand Five Hundred Dollars ($415,500.00), subject to adjustment if Buyer submits an overbid at the Auction (as hereinafter defined), payable by Buyer as provided in Section 5.1.

Section 1.3     Recovery Actions.  After Closing and in connection with Buyer's purchase of the Assets, Buyer may initiate claims, causes of action, contested matters, adversary proceedings

or other litigation in connection with recovery of the Assets, including, without limitation, the Estate Bitcoin (the "***Recovery Actions***").  Buyer shall have the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Estate and the Debtor.  Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of Buyer.  Seller shall provide reasonable good-faith cooperation to Buyer in connection with its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to Seller and the Debtor's bankruptcy estate and, at no time, shall Seller be required to join as a party to any litigation brought by Buyer relating to the Recovery Actions.  Seller further agrees not to interfere with Buyer's Recovery Actions.

Section 1.4    Cash Deposit at Execution of Agreement. Buyer shall pay to Seller the cash sum of thirty-five thousand dollars ($35,000.00) by wire transfer or other immediately available funds (the "***Deposit***"), as a deposit against the Purchase Price. The Deposit shall be held directly by Seller.

(a)    The Deposit shall be refunded promptly to Buyer if:

(i)    Buyer is neither the Successful Bidder (as hereinafter defined) nor the Backup Bidder (as hereinafter defined);

(ii)    Seller closes the sale to a Successful Bidder other than Buyer; or

(iii)    the Closing (as hereinafter defined) fails to occur within the time specified in this Agreement for any reason other than Buyer's breach of this Agreement or any of its obligations hereunder.

If the Closing fails to occur as a result of Buyer's breach of this Agreement, Seller shall be entitled to receive and retain the Deposit as liquidated damages as provided below.

## ARTICLE II

Section 2.1    Bankruptcy Court Approval; Sale Order.  The sale to Buyer by Seller and the other transactions contemplated by this Agreement are expressly subject to approval of the Bankruptcy Court. Seller has filed with the Bankruptcy Court a motion (the "***Sale Motion***") for entry of an order, substantially in the form attached hereto as Exhibit A (the "***Sale Order***") providing that, among other things: (i) the sale of the Assets to Buyer in accordance with this Agreement shall be pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, free and clear of all liens, claims, licenses, encumbrances, interests and rights of setoff and recoupment; and (ii) the Bankruptcy Court shall retain jurisdiction with respect to any matters relating to the Sale Order or the transactions contemplated by this Agreement, including the Recovery Actions.

Section 2.2    Omitted

(a)    Omitted.

Section 2.3    Omitted.

Section 2.4    Omitted.

Section 2.5      Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court and demonstrating that Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.

Section 2.6      Seller will give Buyer reasonable advance notice and proposed drafts of all pleadings, motions, orders, notices, other papers, hearings, and other proceedings related to this Agreement and the transactions contemplated hereby, and will provide Buyer and its counsel with a reasonable opportunity to review such papers prior to filing with the Bankruptcy Court unless such advance notice is impossible or impracticable under the circumstances, in which case Seller will deliver copies of such papers substantially simultaneously with the filing with the Bankruptcy Court.

## ARTICLE III

Section 3.1      Conditions Precedent to Closing for Benefit of Seller.  As conditions precedent for the benefit of Seller, Seller's obligations hereunder, including the obligation to transfer the Assets to Buyer, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Seller in writing on or before the Closing:

(a)      Buyer shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Buyer on or prior to the Closing.

(b)      This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered the Sale Order in the Bankruptcy Case so approving, concurrently with findings of fact and conclusions of law (in form and substance reasonably acceptable to Seller) (the "*Findings*"), and such Sale Order shall be a final order with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Sale closing).

(c)      No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

Section 3.2      Conditions Precedent to Buyer's Closing. As conditions precedent for the benefit of Buyer, Buyer's obligations hereunder, including the obligation to pay the Purchase Price, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Buyer in writing on or before the Closing:

(a)      Within five (5) business days of the Closing, Seller shall turn over to Buyer all documents, records and materials in his or his counsel's possession (including those of Mr. Cuccinelli) related to the Seller's Investigations, including but not limited to the exhibits used during the deposition of Hunter Penn conducted on October 2, 2025, and upon the Closing, all attorney-client privilege, work product protection, and other protections from disclosure between Seller and Mr. Cuccinelli related to the Assets, shall transfer to and be vested solely in Buyer.

(b)     Seller shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Seller on or prior to the Closing.

(c)     This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered the Sale Order in the Bankruptcy Case so approving. concurrently with the Findings (in form and substance reasonably acceptable to Seller) and such Sale Order shall be final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Sale closing).

(d)     Buyer shall be either: (i) the Successful Bidder at the Auction; or (ii) Buyer shall be the Backup Bidder at the Auction and the Successful Bidder shall have failed to close.

(e)     No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

## ARTICLE IV

Section 4.1     <u>Seller's Representations and Warranties</u>. Seller makes the following representations and warranties, which shall survive execution of this Agreement and which shall survive the Closing:

(a)     Seller is the Chapter 7 Trustee in the Bankruptcy Case. Subject to entry of the Sale Order, Seller has the authority to enter into this Agreement and to consummate the transactions contemplated thereby.

(b)     Mr. Cuccinelli's employment as Seller's special counsel was terminated on January 7, 2026.  By email dated January 6, 2026, Mr. Cuccinelli acknowledged to Seller that he is not entitled to or due any contingency fee related to the recovery of the Assets by Seller under the terms of his engagement by Seller.

(c)     Seller has no direct personal knowledge of any transfers of the Assets as of the date of this Agreement.  Seller has received correspondence from third-parties alleging that certain of the Assets have been transferred during the pendency of the Bankruptcy Case, which correspondence shall be provided to the Buyer within two (2) days of execution of this Agreement.

Section 4.2     <u>Buyer's Representations and Warranties</u>. Buyer makes the following representations, warranties and covenants (including, without limitation, those made elsewhere in this Agreement), which shall survive execution of this Agreement and which shall survive the Closing:

(a)     Buyer has the power and authority to enter into this Agreement and consummate the transactions contemplated thereby.

## ARTICLE V

Section 5.1    Cash at Closing. To the extent that Buyer is the Successful Bidder, Buyer shall deliver to Seller the balance of the Purchase Price (minus the Deposit) at the Closing via wire transfer or other immediately available funds. Said sum shall be paid to Seller prior to or on the Closing Date.

Section 5.2    Sales Tax Payable by Buyer.  Buyer shall pay the sales tax due, if any, with respect to the transactions contemplated hereby.

Section 5.3    Seller shall convey title to the Assets to Buyer by bill of sale (the "*Bill of Sale*") and quitclaim assignment (the "*Quitclaim Assignment*") in substantially the forms attached hereto as **Exhibit B** and **Exhibit C**, and as approved by the Bankruptcy Court, free and clear of all liens, claims, licenses, encumbrances and interests pursuant to Section 363 of the Bankruptcy Code.

Section 5.4    No Representations.

(a)    EXCEPT AS EXPRESSLY PROVIDED HEREIN OR IN THE SALE ORDER, BUYER AGREES AND ACKNOWLEDGES THAT THE TRANSFER OF THE ASSETS IS MADE PURSUANT TO ORDER OF THE BANKRUPTCY COURT AND IS MADE "AS IS" AND "WHERE IS", AND ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE TITLE OR CONDITION OF THE ASSETS OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR ANY BUSINESS PROSPECTS, OR VALUATION OF THE ASSETS, OR THE COMPLIANCE OF THE ASSETS IN THEIR CURRENT OR FUTURE STATE WITH APPLICABLE LAWS OR ANY VIOLATIONS THEREOF. BUYER FURTHER ACKNOWLEDGES THAT SELLER SHALL DELIVER TO BUYER THE ASSETS IN SELLER'S OR ITS COUNSEL'S POSSESSION; BUT THAT SELLER DOES NOT HAVE POSSESSION OF ALL OF THE ASSETS, AND THAT TO THE EXTENT SELLER IS NOT IN POSSESSION OF AN ASSET SOLD HEREUNDER, BUYER WILL HAVE SOLE RESPONSIBILITY TO OBTAIN POSSESSION OF THE ASSETS, AT ITS SOLE EXPENSE.

Section 5.5    Buyer assumes responsibility for obtaining all required licenses, copyrights, patents, trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use, sell, distribute or dispose of any of the Assets.

Section 5.6    Deliveries at Closing. The Parties shall make the following deliveries at Closing:

(a)    Buyer shall deliver to Seller a cashier's check or deliver funds via wire transfer to the account of Seller in the amount of the Purchase Price, less the Deposit.

(b)    Seller shall deliver to Buyer a Bill of Sale and Quitclaim Assignment, substantially in the forms attached as **Exhibit B** and **Exhibit C**.

(c)      Upon the Closing, all attorney-client privilege, work product protection, and other protections from disclosure between Seller and Mr. Cucinelli related to the Assets, shall transfer to and be vested solely in Buyer.

Section 5.7     Closing. Closing of the sale (the "*Closing*") shall occur at the offices of ASCENDANT LAW GROUP LLC, 2 Dundee Park Drive, Suite 102, Andover, MA 01810, or such other location as mutually agreed upon by the Parties, on a date to be mutually agreed upon by the Parties (the "*Closing Date*"), but in no event later than five (5) business days after the Sale Order is final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Sale closing); provided, however, that in the event that the Closing has failed to occur by July 15, 2026 (the "*Outside Date*"), this Agreement may be terminated as provided in and subject to the terms of Section 6.1. The Parties may mutually agree in writing to effect the Closing on an earlier or a later date at their sole discretion. The existence of the Outside Date for the Closing in this Section 5.7 shall not relieve either Party of their respective obligations under this Agreement to use commercially reasonable efforts to perform and satisfy all conditions to their respective obligations to consummate the transactions contemplated by this Agreement.

Section 5.8     Backup Bidder Closing. If the Successful Bidder shall fail to close, (i) the Backup Bidder shall be obligated to close within ten (10) business days of being notified that the Closing with the Successful Bidder has failed to close due to breach by the Successful Bidder; and (ii) the Outside Date shall be extended by thirty (30) calendar days.

## ARTICLE VI

Section 6.1     Termination.  This Agreement may be terminated by the mutual written consent of the Parties.  Either Seller or Buyer may also terminate this Agreement by written notice to the other if the Closing shall not have occurred by the Outside Date contemplated in Section 5.7 due to no breach by the terminating Party.  Buyer may also terminate this Agreement by written notice to Seller, if any of the conditions in Section 3.2 are not satisfied by the Outside Date, or Seller shall breach any of its obligations under this Agreement. Seller may also terminate this Agreement by written notice to Buyer if any of the conditions in Section 3.1 are not satisfied by the Outside Date, or Buyer shall breach any of its obligations under this Agreement. No termination under this Section 6.1 shall release either Party from, or act as a waiver of, any claim against the other Party, at law or in equity as a result of such termination or as a result of any breach or default under this Agreement. This Agreement may be terminated as provided herein without further order of the Bankruptcy Court.

Section 6.2     **BUYER AND SELLER AGREE THAT: (A) IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE ASSETS PURSUANT TO THIS AGREEMENT BY REASON OF BUYER'S BREACH OF THIS AGREEMENT, THEN SELLER'S SOLE AND EXCLUSIVE REMEDY SHALL BE TO TERMINATE THIS AGREEMENT AND RECEIVE AND RETAIN THE DEPOSIT TO THE EXTENT THAT IT HAS BECOME NONREFUNDABLE TO BUYER PURSUANT TO THIS AGREEMENT AS LIQUIDATED DAMAGES AND NOT AS A PENALTY, AND UNDER SUCH CIRCUMSTANCES, SELLER WAIVES ALL RIGHTS TO OBTAIN BUYER'S SPECIFIC PERFORMANCE; AND (B) BECAUSE OF THE NATURE OF THE TRANSACTION CONTEMPLATED BY**

**THIS AGREEMENT, IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX SELLER'S ACTUAL DAMAGES IF SUCH A BREACH OCCURS AND THEREFORE THE AMOUNT OF LIQUIDATED DAMAGES SPECIFIED ABOVE SHALL BE PRESUMED TO BE THE AMOUNT OF DAMAGES SELLER WOULD SUSTAIN BY REASON OF SUCH A BREACH AND REPRESENTS A REASONABLE ESTIMATE OF THOSE DAMAGES, TAKING INTO ACCOUNT, AMONG OTHER FACTORS, THE CIRCUMSTANCES EXISTING AS OF THE TIME OF ENTRY INTO THIS AGREEMENT.**

Section 6.3    Commissions. Buyer and Seller each represent and warrant to the other that no person or entity has been engaged by it as a broker, agent or finder, licensed or otherwise, in connection with the transaction contemplated by this Agreement.

## ARTICLE VII

Section 7.1    Entire Agreement. This Agreement and the written agreements referred to herein and executed in connection herewith constitute the entire understanding among the parties with respect to the subject matter hereof and supersede all negotiations, prior discussions or other agreements, oral or written.

Section 7.2    Governing Law; Venue. This Agreement has been negotiated and entered into in the Commonwealth of Massachusetts, and shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts in effect at the time of its execution, without reference or regard to the principles of conflict of laws. Any action arising out of this Agreement must be brought and maintained in the Bankruptcy Court, and the Parties hereto consent to the jurisdiction of the Bankruptcy Court; provided, after the Bankruptcy Case is closed, any action may be brought in a court located in Suffolk County, Massachusetts with jurisdiction.

Section 7.3    Nothing contained in this Agreement shall be construed to place the parties in the relationship of partners, principal and agent, employer/employee or joint venturer. The parties agree that they shall neither have the power or right to bind or obligate the other, nor shall either hold itself out as having such authority.

Section 7.4    This Agreement may be executed in counterparts. In the event that any signature to this Agreement or any amendment hereto is delivered by facsimile transmission, by e-mail delivery of a ".pdf" or by other electronic format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile, ".pdf" or other electronic format data file signature page were an original thereof (and the same shall be deemed as originals).

Section 7.5    If any action, including any arbitration proceeding, is instituted to enforce the terms or provisions of this Agreement, including an action instituted after the bankruptcy of a party, the prevailing party in such action shall be entitled to collect as part of its recovery all reasonable costs, charges and fees, including but not limited to its expert witness fees and attorneys' fees and costs, incurred in connection with such action.

Section 7.6    Amendment. This Agreement may only be amended or modified by the written agreement of the Parties.

Section 7.7    Severability. If any of the provisions of this Agreement are held invalid under any law, such invalidity shall not affect the remainder of the Agreement.

Section 7.8    No Assignment. Neither this Agreement nor any rights or obligations hereunder shall be assigned by any Party without the prior written consent of the other Parties hereto. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

Section 7.9    Headings; Construction. The headings of the various Sections of this Agreement are for convenience only and are not intended to explain or modify any of the provisions of this Agreement. No rule of strict construction will be applied in the interpretation or construction of this Agreement. When used in this Agreement, "including" means "including without limitation." In the event of any conflict or ambiguity between this Agreement and any Exhibit, this Agreement will control. Whenever the context requires: (a) the singular number shall include the plural, and vice versa; (b) the masculine gender shall include the feminine and neuter genders; (c) the feminine gender shall include the masculine and neuter genders; and (d) the neuter gender shall include the masculine and feminine genders.

Section 7.10   Notices. All notices to be given by any Party to this Agreement to the other Party shall be in writing, and shall be given by certified United States mail, return receipt requested, postage prepaid, to the other, sent by telefax or facsimile transmission, or personally delivered, at the addresses set forth below (or at such other address for a Party has specified by like notice) and shall be deemed given when received if sent by facsimile transmission or personally delivered, or if mailed as provided herein, on the second day after it is so placed in the mail.

The addresses referred to above are:

| Buyer: | Samara CR Holdings LLC |
| | Attn: Jason M. Kahan |
| | 23 Sagamore Lane, |
| | Boxford, Massachusetts 01921 |

With a courtesy copy to:
Jesse I. Redlener
ASCENDANT LAW GROUP LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810

Tel: 978-409-2038

Email: jr@ascendantlawgroup.com

| Seller: | Donald Lassman |

Chapter 7 Trustee
P. O. Box 920385
Needham, MA 02492
Tel: 781-455-8400

With a courtesy copy to:    Mark G. DeGiacomo
Harris Beach Murtha Cullina PLLC
33 Arch Street, 12th Floor
Boston, MA 02110
Tel: 617-457-4000

Any Party at any time may give notice to the other Party of a different address other than that set forth above in accordance with the provisions of this Section 7.10. Failure of any Party to provide courtesy-only copies of notices, demands and other communications shall not impair, modify, limit or otherwise affect any Party's rights or remedies nor any Party's obligations under this Agreement.

Section 7.11    Interpretation. Each Party has had an opportunity to review and revise this Agreement and consult with counsel, and any rule of contract interpretation to the effect that ambiguities or uncertainties are to be interpreted against the drafting party or the party who caused it to exist shall not be employed in the interpretation of this Agreement or any document executed in connection herewith.

Section 7.12    Survival of Obligations. All obligations of the Parties set forth in this Agreement shall survive the Closing and Closing Date.

Section 7.13    Waiver. No Party shall be deemed to have waived any claim arising out of this Agreement, or any power, right, privilege or remedy under this Agreement, unless the waiver of such claim, power, right, privilege or remedy is expressly set forth in a written instrument duly executed and delivered on behalf of such Party; and any such waiver shall not be applicable or have any effect except in the specific instance in which it is given.

Section 7.14    Further Assurances. Buyer and Seller shall each promptly sign and deliver all additional documents and perform all acts reasonably necessary to perform its obligations and carry out the intent expressed in this Agreement.

Section 7.15    No Waiver. A waiver by either Party of a default by the other Party is effective only if it is in writing and shall not be construed as a waiver of any other default.

Section 7.16    No Beneficiaries. No person or entity besides Buyer, Seller and their permitted successors and assigns has any rights or remedies under this Agreement.

Section 7.17    Incorporation. Any exhibits attached hereto and referred to herein are incorporated into this Agreement.

Section 7.18    Effect of Course of Dealing. No course of dealing between the Parties in exercising any of their respective rights under this Agreement shall operate as a waiver of any such rights, except where expressly waived in writing. Further, nothing herein shall require either Party to terminate this Agreement upon breach or default of this Agreement by the other Party.

Section 7.19     Time. Time is of the essence of this Agreement and each and every provision hereof.

***[Remainder of Page Intentionally Left Blank]***

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be fully executed as of the day and year first above written.

**DONALD LASSMAN, CHAPTER 7 TRUSTEE
OF THE BANKRUPTCY ESTATE OF JASON
M. KAHAN, AND NOT INDIVIDUALLY,
AS SELLER**

By: _____
Name: _____
Title: _____

**SAMARA CR HOLDINGS LLC,
AS BUYER**

By: _____
Name: _____
Title: _____