**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| **In re:**  ) | |
| ) | |
| **JASON M. KAHAN,**  ) | **Chapter 7** |
| ) | |
| ) | **Case No. 24-11592 (JEB)** |
| ) | |
| **Debtor.**  ) | |
| ) | |

### DEBTOR'S OBJECTION TO TRUSTEE SALE MOTION

Jason M. Kahan, debtor in the above captioned proceeding (the "Debtor"), hereby submits the following objection (the "Objection") to the *Chapter 7 Trustee's Motion for: (I) Entry of an Order (A) Approving Procedures Governing Trustee's Proposed Sale of Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Form and Manner of Notice of Sale, and (C) Granting Related Relief; and (II) Authority to Sell Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests* (the "Sale Motion") [Dkt. No. 260. As grounds for the objection, the Debtor states as follows:

### BACKGROUND

1.      On August 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and commenced this chapter 7 case in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

2.      Donald Lassman was appointed as Chapter 7 trustee (the "Trustee) for the Debtor's estate (the "Estate") on August 27, 2024.

3.      On or about September 11, 2024, the Debtor filed his schedules and statement of financial affairs (the "Schedules" and "SOFA"). Among the assets listed on the Debtor's Schedule B was the Debtor's interest in certain Bitcoin wallets and Bitcoin addresses (the "BTC Wallets") containing or associated with approximately 1,791 Bitcoin (the "Bitcoin"), which at current market prices represent assets valued in excess of $100,000,000.00.

4.      The Debtor's ownership of the BTC Wallets and the Bitcoin has never been in material dispute, however, access to the BTC Wallets and the Bitcoin contained in the BTC Wallets has been the subject of great controversy that need not be recited at length for the purposes of this Objection.

5.      By way of summary, the Bitcoin is not in the possession of the Trustee or the Debtor, nor has it been since the Petition Date. The Bitcoin was misappropriated through unauthorized access, keystroke logging, theft of private keys, and wire fraud perpetrated by third parties including: Hunter Penn and Nils Trosterud, acting through entities including NordCap Advisors SA and Quantum Resource Group QRG AS (collectively, the "Adverse Parties").

6.      The Trustee has filed the Sale Motion in an effort to liquidate assets of the Estate for the benefit of the Estate's creditors, as is his primary obligation in administering the Estate.

7.      The Sale Motion proposes to sell the BTC Wallets and Bitcoin to a stalking horse bidder, Pioneer Funding Group LLC ("Stalking Horse Bidder"), for $350,000. For frame of reference, as of the date of this Objection the market value of a single Bitcoin is approximately $60,000.

## OBJECTIONS

8.      For each of the following reasons, the Debtor asserts that the proposed sale should be postponed:

*Sale Price is Inadequate*

9.      As set forth in its Objection to the Sale Motion [Dkt. No. 269] at the bidding procedure stage, the Debtor believes that the ostensible value of the total Bitcoin held in the various crypto currency wallets, even at its current pricing, is over $100,000,000. The Stalking Horse Bidder's offer represents a fractional percentage of that value.

10.     The Court has expressed its view that these assets more accurately represent the sale of a right to pursue litigation to recover the Estate's interest; however, at least with regard to a small number of Bitcoin, the Debtor believes that a pathway exists to bring those Bitcoin under Estate control.

11.     The Debtor believes, and reported to the Trustee's counsel, that approximately 185 Bitcoin was moved from one of the crypto wallets being sold by the Estate, by an unknown party on December 4, 2025,[1] to a crypto currency wallet at an entity known as Binance.

12.     Upon information and belief, Binance is a custodial holder of bitcoin and is subject to greater scrutiny and oversight than typical crypto currency wallets.

13.     The Bitcoin was moved in a series of transactions at a time during which the wallet containing the Bitcoin was property of the Debtor's Estate.

14.     The Debtor is unaware of how the Bitcoin was transferred to Binance and has no information concerning the party or entity that initiated the transaction(s). However,

---

[1] The Debtor believes that the Estate Bitcoin has been moved in multiple transactions that can be traced using blockchain analysis.

the Debtor believes that the Bitcoin now held in that Binance wallet may be frozen and recovered by issuance of a court order for turnover pursuant to 11 U.S.C. § 542(a).

15. Upon information and belief, the Trustee has taken no action to seek such an order from this Court for turnover of the Bitcoin to the Estate. If the 185 Bitcoin were recovered by the Estate, the current value of those Bitcoin alone would be sufficient to satisfy all claims filed in the Debtor's bankruptcy proceeding and provide a surplus to the Debtor.

16. Upon further information and belief, information concerning the status of the 185 Bitcoin was shared with the Stalking Horse Bidder shortly after the information was conveyed to Trustee's counsel.

17. The Debtor asserts that the sale should be postponed for a short period of time to allow the Trustee to investigate the possibility of recovering the Bitcoin from Binance. Simply passing along valuable information to advantage the Staking Horse Bidder does nothing to increase the recovery for the Estate and its creditors.

18. The Debtor alerted the Trustee to this relatively straightforward process in his effort to present the Trustee with a pathway for recovering assets sufficient to pay all creditors in full and as an attempt to demonstrate the Debtor's continuing good faith. The Debtor opted for this path rather than using the information to advantage himself in the auction process. He should not now be disadvantaged for doing the right thing, particularly where there is the possibility of maximizing recovery for all of the Estate's creditors.

***Possible Conflict of Interest***

19.     In addition, and by way of further objection, the Debtor calls the Court's attention to the possibility that certain actions and communications by and among third parties may have adversely affected the sale process

20.     On or about August 26, 2025, the Debtor had engaged Howard Jahre ("Jahre"), to raise funds to support his effort to litigate various issues concerning the recovery of Estate Bitcoin.

21.     Over the course of the next several months, Jahre engaged in direct communications with, among others, the Trustee, Trustee's counsel and representatives of the Stalking Horse Bidder, during which Jahre either gained from or provided to these parties (among others) information about the Estate's Bitcoin assets.

22.     Jahre, an attorney and a broker, was engaged with the Debtor as a broker and advisor and became aware of confidential and sensitive information regarding the Debtor's recover the Bitcoin for the Estate. At all relevant times, the Debtor believed Jahre to be advocating on his behalf toward the common goal of recovery.

23.     Jahre introduced the Debtor to the Stalking Horse Bidder in or about February 2026 as a potential funding source.

24.     It is unclear what information Jahre shared with the Stalking Horse Bidder, if any, and how that may have influenced the Stalking Horse Bidder. The Debtor believes that these communications may have had an influence on the proposed sale to the detriment of a fair and robust sale process.

25.     It is also unclear whether Jahre had or has a financial stake in the outcome of the sale to the Stalking Horse Bidder. The Debtor asserts that the Stalking Horse Bidder should be ordered to disclose any connection with Jahre, any communications with him

and any arrangement, financial or otherwise the Stalking Horse Bidder (or its proposed assign) may have had leading up to the sale.

26.     At a minimum, the Debtor would ask that the Court postpone any approval of the Sale Motion pending an opportunity for the Debtor and all parties involved to take steps to better understand the extent and implications of Jahre's conduct and its impact on the sale process.

**WHEREFORE**, the Debtor respectfully requests that the Court i) DENY the Trustee's Sale Motion, ii) in the alternative, postpone the July 1, 2026 hearing on the Trustee's Sale Motion to allow the Debtor and interested parties to determine whether Jahre's involvement in the sale process adversely impacted the Estate's interest in the Assets being sold; and iii) for such other relief as may be just and proper.

Respectfully submitted,

*/s/ Jesse I. Redlener*
Jesse I. Redlener (BBO #646851)
Ascendant Law Group LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810
Phone: (978) 409-2038
jr@ascendantlawgroup.com

Dated: June 26, 2026

## <u>CERTIFICATE OF SERVICE</u>

I, Jesse I. Redlener, hereby certify that on June 26, 2026, I served a copy of the *Debtor's Objection to Sale*, in the above-captioned proceeding on all parties via the Court's Electronic Case Filing system or by first class mail upon those parties requesting service by regular mail.

Respectfully submitted,

*/s/ Jesse I. Redlener*