**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

|  |  |  |
|---|---|---|
| | ) | |
| **In re:** | ) | |
| | ) | **Chapter 7** |
| **JASON M. KAHAN,** | ) | |
| | ) | **Case No. 24-11592 (JEB)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**SAMARA CR HOLDINGS, LLC AND DEBTOR'S MOTION TO STAY**
**ORDERS PENDING APPEAL**

Pursuant to Fed. R. Bankr. P. 8007, Samara CR Holdings, LLC ("Samara") and Jason M. Kahan (the "Debtor") move for stay of the Court's order dated July 10, 2026 and the oral rulings issued in open court on July 8, 2026 and July 10, 2026 (the "Orders") pertaining to the *Chapter 7 Trustee's Motion for: (I) Entry of an Order (A) Approving Procedures Governing Trustee's Proposed Sale of Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Form and Manner of Notice of Sale, and (C) Granting Related Relief; and (II) Authority to Sell Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests* (the "Sale Motion"), and the *Response of Samara CR Holdings, LLC in Support of Its Bid* (the "Response"), pending Samara's appeal of the Orders to the United States District Court for the District of Massachusetts. In that appeal, Samara seeks review of the Court's decisions 1) that Samara's initial bid ("Initial Bid") for the Assets[1] identified in the Sale Motion was not qualified, 2) that Samara's sealed bid of $6.1 million dollars (the "Sealed Bid") was not qualified, 3) that Donald R. Lassman, the Chapter 7 bankruptcy trustee (the

---

[1] All capitalized terms not otherwise defined herein shall be ascribed the meaning set forth in the Sale Motion.

"Trustee") improperly selected the Sealed Bid as the highest and best offer for the Assets and 4) accepting the original stalking horse bidder's initial offer of $350,000 (the 'Stalking Horse Bid"). A stay is necessary to protect Samara's interest in the Assets and preserve the value of the Assets for the Debtor's bankruptcy estate, including any surplus, pending the District Court's consideration of the appeal. Emergency determination is requested based on the fact that if a closing occurs, Samara and the Debtor will be irreparably harmed. Samara is ready, willing and able to close this sale.

In further support of this motion, Samara and the Debtor state as follows:

## BACKGROUND

1. On August 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code, commencing the above-captioned case. On August 27, 2024, the Trustee was appointed as the Chapter 7 Trustee for the Debtor's estate (the "Estate").

2. On May 8, 2026, the Trustee filed the Sale Motion in an effort to liquidate assets of the Estate for the benefit of the Estate's creditors, as is his primary obligation in administering the Estate.

3. The Sale Motion proposes to sell the Bitcoin Wallets and Bitcoin (the "Assets") to a stalking horse bidder, Pioneer Funding Group LLC, for $350,000.

4. On June 3, 2026, the Court entered the *Order (A) Approving Procedures Governing Trustee's Proposed Sale of Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free And Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Form and Manner of Notice of Sale, and (C) Granting Related Relief* [Docket No. 274] (the "Sale Procedures Order").

5. Pursuant to the Sale Procedures Order, Pioneer Funding Group LLC ("Pioneer") was named the designated Stalking Horse Bidder under an Asset Purchase Agreement dated May 6, 2026 (the "APA"). On June 26, 2026, Pioneer gave notice that it had assigned all of its rights and obligations as Buyer under the APA to PBTC Recovery Partners, LLC ("PBTC"), with the Trustee's written consent [Docket No. 284]. PBTC stepped into Pioneer's shoes and became the Stalking Horse Bidder. Pioneer and PBTC are referred to herein, as applicable, as the "Stalking Horse Bidder."

6. On June 26, 2026, the Debtor filed an objection to the Sale Motion raising issues concerning the sufficiency of the sale price and possible conflict of interest issues. Those objections were overruled by this Court at the Sale Hearing.

7. Also on June 26, 2026, Samara filed its bid pursuant to the approved bid procedures and on that same date, Ironwood Recovery Holdings, LLC ("Ironwood") filed a competing bid.

8. On June 29, 2026, the Stalking Horse Bidder filed an objection to both competing bids and the Trustee filed an objection to the Ironwood bid.

9. The Sale Hearing was held on the Sale Motion, and an auction sale of the Debtor's Assets was held with the successful bidder being Samara with a bid of $6.1 million dollars. The Trustee accepted the bid, and the Court approved Samara's $6,100,000 bid as the highest bid, with PBTC's $1,050,000 bid designated as the backup bid.

10. The Court issued its Proceeding Memorandum and Order on July 2, 2026 (the "July 2nd Order") stating in relevant part "[f]or the reasons set forth on the record, the Court overruled the objection of PBTC to the designation of the bid of Samara CR Holdings, LLC, as a qualified bid. The bid of Samara is determined to be a qualified bid. The Court expressly reserved and did

not rule on whether Samara qualified as a good faith purchaser entitled to the protections of Section 363(m) of the Code." See July 2nd Order.

11.     The only issue the Court reserved was the right to challenge the "good faith" of the bidders at a hearing scheduled for July 8, 2026, as an evidentiary hearing. No other issues were scheduled for that hearing.

12.     After hearing testimony from the Debtor and Samara on July 8, 2026, the Court indicated that it was not prepared to find that Samara was a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m). No order to that effect has been entered on the docket.

13.     Counsel to the Stalking Horse Bidder suggested during the July 8th hearing that he could "do this by way of moving to reconsideration" of the Court's determination that Samara was a qualified bidder in accordance with the terms of the Sale Procedures order dated June 3, 2026. See July 8 Tr. 72:19-20.  Counsel repeated that he was "happy to do that by way of a motion for reconsideration…" See July 8 Tr. 73: 15-16.

14.     The Court initially pushed back correctly stating that "[t]he issue is I accepted them as a qualified bidder for their initial bid. Once the initial bid and the auction was in play, that was -- that was -- that was where they were a qualified bid and that's what triggered the auction. Had we done a further round based on the second -- the bid they made, your -- the only challenge here, I don't see that you have challenged undue back to the 350. You have -- you've -- at that point, although **of course you can appeal and dispute my finding that they were a qualified bidder** with the initial bid, which was 415." See July 8 Tr. 91: 17-25 – 92:1 (emphasis added).

15.     Subsequently, the Court indicated that it would entertain reconsideration of its July 2 Order and continued the matter to a further session that afternoon providing the parties three hours to prepare for an evidentiary hearing. See July 8 Tr. 84: 15-17. The Court stated at the

conclusion of the morning hearing that "[t]he burden is on the Trustee to produce -- and Mr. Redlener to produce [Mr. Kahan]. If they don't, I'm not going to just take an offer of proof." See July 8 Tr. 84: 15-17. To date, no order reconsidering the July 2 Order or disqualifying Samara has been entered on the docket, and no notice of any such reconsideration has been served on creditors or parties in interest.

16.     The Court, in open court, allowed the motion to reconsider stating "[i]n light of the testimony this morning and in light of the lack of any offer or any evidence as to why that bid should have been accepted as the highest and best bid beyond the dollar amount because there were considerable questions, I have indicated that to the extent I did, in fact, make that finding, **I'm reconsidering it**." See July 8 Tr. 89: 6-11 (emphasis added).

17.     The Court went on to say, "I am going to turn back the clock and have the Trustee advise why he -- you know, the Trustee an opportunity to present evidence as to why he believes the six million of Samara is the best bid." See July 8 Tr. 89: 25 – 90:1-3.

18.     On July 10, 2026, Samara submitted a supplemental response in support of its Sealed Bid [Docket No. 290] and in response to the Sale Hearing. The Response raised many issues with the conduct of the hearing on July 8th including, among other things and without limitation, a failure of due process, inadequate time to respond to the Stalking Horse Bidder's motion for reconsideration and the qualification of the Samara bids.

19.     On July 10, 2026, the Court recognized its error concerning due process stating "I am mindful of a due process," (July 10 Tr. 7:18) and attempted to remedy that error by permitting an offer of proof from Samara during the hearing. The Court failed to allow evidence to be presented or otherwise determined that evidence in support of the Samara bids was not necessary.

20. During the July 10th hearing the Court stated, "I had a continued hearing on evidence. There was a need to move this fast. My notice of sale made clear that the court would adjourn it and the only announcement would be in open court. So I do not find there was any reason to give no -- that the notice is -- to other parties was required. They could have showed up in the hearing and heard when I was continuing it to." July 10 Tr. 23:24-24:5.

21. The Stalking Horse Bidder's speculation about Samara's finances is just that: speculation, unsupported by any evidence. Samara complied with every financial requirement of the Sale Procedures: it timely delivered its $35,000 deposit to the Trustee, and it timely delivered evidence of its financial ability to consummate the transaction, including the source of its funds, to Trustee's counsel as paragraphs 4(b) and 5 of the Sale Procedures require.

22. The Trustee, the fiduciary charged with vetting bidders, accepted Samara's bid. The record confirms it: Trustee's counsel stated on the record that the documentation Samara provided evidencing its financial ability to consummate the sale was satisfactory to the Trustee, July 1 Tr. 8:17–24, and, after the auction, the Trustee confirmed that he has received information that Samara has the financial resources to pay the increased $6,100,000 purchase price. Id. 37:4–9.

23. Nothing in the transcript from the Sale Hearing indicates that the Court had questions or concerns relating to the Samara bid of $6,100,000 and the bid was accepted by the Trustee. The Sale Hearing was not continued for any reason other than the good faith of the bidders.

24. The only evidence that Samara was required to produce during the July 8th hearing was evidence in support of its request to be designated a "good faith purchaser" as defined in 11 U.S.C. § 363(m). See July 1 Tr. 37: 10-18. Neither Samara nor the Trustee were ever put on notice

that the Court would require evidence concerning the sufficiency of the Samara bids until the conclusion of the good faith portion of the July 8th hearing.

25.     The Response, the exhibits and the proffer made to the Court during the July 10th hearing, taken together, provided ample evidence that the Samara Sealed Bid has a high likelihood of closing, that it was clearly the highest and best offer, that both the Sealed Bid and the Initial bid were "qualified" AND that if given the opportunity and sufficient time to produce that evidence, both Samara and the Trustee would have done so.

**RELIEF REQUESTED**

26.     By this Motion, Samara and the Debtor seek entry of an emergency stay of the Order pending appeal.

**BASIS FOR RELIEF REQUESTED**

27.     Bankruptcy Rule 8007 authorizes the Court to "stay the effect of a bankruptcy court order pending a resolution on appeal." In re Revel, AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015).

28.     Both Samara and the Debtor have standing to appeal the Orders issued by the Court as both are each a "person aggrieved." See In re Thompson (Kowal v. Malkemus ), 965 F.2d 1136, 1142 n. 9 (1st Cir.1992). The challenged Orders serve to reduce the outcome of the bankruptcy auction from $6,100,000 to $350,000. The $6,100,000 bid of Samara would have resulted in a distribution to all creditors, payment of all outstanding administrative claims and a surplus to be returned to the Debtor. As such, the Debtor asserts that it has standing in connection with his appeal. Samara is also an aggrieved party such that the Court's Orders divested it of an opportunity to obtain the Assets where its bid was clearly the highest and best offer.

29.     In deciding a motion to stay, courts weigh (1) the likelihood of success on the merits of the appeal; (2) whether the moving party will suffer irreparable harm if a stay is not granted; (3)

whether the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and (4) the public interest would not be adversely affected by the issuance of the stay. In re Access Cardiosystems, Inc., 340 B.R. 656, 659 (Bankr. D. Mass. 2006); In re Miraj and Sons, Inc., 201 B.R. 23, 26 (Bankr. D. Mass. 1996). Courts will consider a balance of the four factors in determining whether a stay is warranted. See In re Public Serv. Co., 116 B.R. 347, 348 (Bankr.D.N.H.1990). The Court need not give equal weight to each factor, and the moving party must merely demonstrate that each part of the test is "minimally satisfied." See In re Access Cardiosystems, Inc., 340 B.R. at 659-60. Each of these elements can be clearly established.

### SAMARA AND THE DEBTOR HAVE A STRONG CASE ON APPEAL

30.     Samara and the Debtor have a high likelihood of success on the merits pursuant to the record of the sale proceedings. The Court concluded the Sale Hearing and reserved a single issue, 363(m) status of Samara and the Stalking Horse Bidder, for an evidentiary hearing to be conducted on July 8, 2026.

31.     The Court conducted that hearing and after concluding the hearing on good faith, reconsidered the findings in its July 2 Order and conducted an evidentiary hearing on the sufficiency of the Samara bids and whether the Trustee exercised his reasonable business judgment in accepting the $6,100,000 bid as the highest and best offer at auction. No advance notice of the hearing was provided to any party and was conducted sua sponte.

32.     The hearing was held upon the request for reconsideration of the Court's order approving Samara as the highest and best bid in open court by the Stalking Horse Bidder. The Trustee, Samara and the Debtor were not provided sufficient time to respond to the request, let alone to prepare

to present evidence supporting the Trustee's determination. The Court's assertion that the there was a "need to move this fast" is unsupported by the record and the evidence. See July 10 Tr. 23: 25.

33.     Due process was not afforded to Samara or the Trustee in reconsidering the Court's own rulings set forth in the July 2 Order. Notice is a key component of the sale process and in bankruptcy proceedings in general. Notice was not provided here. Notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" is the minimum the Due Process Clause demands. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Efforts by the Court to retroactively remedy procedural errors are not and should not be sufficient here.

34.     As set forth in the Response filed by Samara, there is no genuine question about Samara's ability to close; the Stalking Horse Bidder offers only speculation in an effort to derail Samara's bid. In addition to timely delivering its deposit and evidence of financial wherewithal to the Trustee, Samara's funding is secured by a binding commitment from its capital source, Soda Ventures ("Soda"), which has committed to provide the full $6,100,000 required to close upon entry of a Sale Order and that is subject to absolutely no contingencies whatsoever. See Response ¶ 21.

35.     No party, including the Court, timely questioned the ability to close other than a simple question to the Trustee. "I've looked at the issue -- one of the questions I have for the Trustee because this is a substantial change where the Trustee is -- has information that Samara has the financial resources to make that payment. MR. GREGORICUS: He has received that information Your Honor." July 1 Tr. 37:4-9. To the extent an objection was pending, the Court overruled it in the July 2 Order.

36.     The Trustee's months-long marketing efforts were placed on the record by an offer of proof that no party sought to test on cross-examination, July 1 Tr. 12:7–13:23, 17:7–11, and the Court credited the Trustee's extensive marketing in overruling the objections to the sale. *Id.* 23:21–24.

37.     The Trustee, exercising the business judgment the law commits to him, accepted Samara's $6,100,000 bid as the highest and best. The Court approved that acceptance on July 2, 2026.

38.     The Court committed reversible error by granting a motion to reconsider the July 2 Order and violated Due Process by failing to permit Samara and the Trustee adequate notice and time to prepare for an evidentiary hearing and to present evidence in support of the Sealed Bid.

**SAMARA AND THE DEBTOR FACE IRREPARABLE HARM IF THE STAY IS NOT GRANTED**

39.     The moving parties in the appeal will be irreparably harmed if the Court declines to issue a stay pending appeal.

40.     The Stalking Horse Bidder has indicated its intention to close immediately and has taken specific steps to ensure the fastest closing possible, including, without limitation, requesting and receiving a waiver of the Rule 6004 stay pending appeal.

41.     The Court has granted the waiver and the Stalking Horse Bidder is, upon information and belief, taking all available steps to foreclose the rights of Samara and the Debtor.

42.     Samara and the Debtor have expended considerable time, energy and resources in connection with this sale process. Further, while the Debtor has received a discharge in the Chapter 7 proceeding, he continues to maintain that the Assets are valuable and that sufficient equity exists in the Assets to pay all creditors in full.

**THE BALANCE OF EQUITIES TIPS DECIDEDLY IN FAVOR OF A STAY PENDING APPEAL**

43.     Harm to the Stalking Horse Bidder will pale in comparison to that of Samara and the Debtor if the Court fails to issue a stay pending appeal.

44.     The assertions by the Stalking Horse Bidder that the Assets are at risk of being transferred are self-serving and are not supported by any evidence in the record or the publicly available information contained in the Blockchain.

45.     The value of the Assets, even by the Stalking Horse Bidder's estimation based upon its sealed bid, are considerably more valuable than the paltry offer of $350,000 accepted by the Court and now forced upon the Trustee. There is no indication that the value of the Assets will be impacted by a stay.

**A STAY PENDING APPEAL IS NECESSARY TO PROTECT PUBLIC POLICY AND ESTATE CREDITORS**

46.     Both the public interest and more importantly, the creditors of the bankruptcy Estate will be adversely impacted by the failure of the Court to issue a stay in this matter. The risk of loss to the Estate is $5,750,000 (creditor claims in this case are approximately $4,700,000). If a stay is not granted, the Estate creditors will not receive a distribution and the administrative claims are unlikely to be paid in full.

47.     The paramount goal of any Section 363 sale is to maximize the value of the estate for the benefit of creditors, and the Court's role at a sale approval hearing is to assure that the process was fair, that the price is the highest or otherwise best reasonably attainable, and that the sale serves the best interests of the estate.

48.     The integrity of judicial sales depends on honoring the results of a fair and properly conducted auction.  The First Circuit has long recognized that judicial sales must be conducted, and their results honored, in a manner that preserves bidder confidence in the integrity of the

process; a court should not upset the result of a properly conducted auction absent compelling circumstances such as fraud or unfairness in the conduct of the sale. *See In re Gil-Bern Indus., Inc.*, 526 F.2d 627, (1st Cir. 1975).

49.     If the result of an open, Court-supervised auction can be discarded after the fact in favor of a losing bid one-sixth its size, or better yet to the losing bid's original $350,000 stalking horse bid, no rational bidder will trust the auction process in this District again. The damage would extend far beyond this case.

**BOND FOR STAY PENDING APPEAL**

50.     Samara and the Debtor are prepared to post a bond for $350,000 or such other amount that may be determined by this Court to ensure the value to the Estate during the appeal process. This Court has full discretion to grant the stay on any terms it sees fit, including imposing a stay without a bond. See Westfield High Sch. L.I.F.E. Club v. City of Westfield, 249 F. Supp. 2d 98, 128 (D. Mass. 2003).

[remainder of page intentionally left blank]

## CONCLUSION

**WHEREFORE**, for all of the forgoing reasons, Samara and the Debtor respectfully request that the Court issue a stay pending appeal of the Orders, both written and oral, 1) that Samara's Initial Bid for the Assets identified in the Sale Motion of $415,500 was not qualified, 2) that Samara's Sealed Bid of $6,100,000 was not qualified, 3) that Trustee improperly selected the Sealed Bid as the highest and best offer for the Assets and 4) authorizing the Trustee to accept the original Stalking Horse Bidder's initial offer of $350,000.

Respectfully submitted,

*/s/ Jesse I. Redlener*
Jesse I. Redlener (BBO #646851)
Ascendant Law Group LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810
Phone: (978) 409-2038
jr@ascendantlawgroup.com

Dated: July 13, 2026

<u>CERTIFICATE OF SERVICE</u>

I, Jesse I. Redlener, hereby certify that on July 13, 2026, I served a copy of the forgoing document, in the above-captioned proceeding on all parties via the Court's Electronic Case Filing system as set forth below.


Respectfully submitted,

*/s/ Jesse I. Redlener*
Jesse I. Redlener

SERVICE LIST:

Darren Azman on behalf of Samara CR Holdings LLC
dazman@mcdermottlaw.com,
mco@mwe.com;nalindogan@mcdermottlaw.com;dnorthrop@mcdermottlaw.com

Alan L. Braunstein on behalf of Creditor First Boston Association LLC
abraunstein@riemerlaw.com, ahall@riemerlaw.com;ndailey@riemerlaw.com

Alan M. Cohen on behalf of Creditor Fidelis Residential Bridge Loan Venture V LP
acohen@collections-law.com

Kathleen R. Cruickshank on behalf of Interested Party Harold Murphy
kcruickshank@murphyking.com, bankruptcy@murphyking.com;kflynn@murphyking.com;ecf-
f3829d9f3bd3@ecf.pacerpro.com

Mark G. DeGiacomo on behalf of Trustee Donald Lassman
mdegiacomo@harrisbeachmurtha.com, lmulvehill@harrisbeachmurtha.com

Richard N. Gottlieb on behalf of Creditor Mark M. Newberg and Alexis G. Malkin, Individually
and as Trustees of the 5 Wigglesworth Condominium Trust
rnglaw@verizon.net, r39800@notify.bestcase.com

Zachary J. Gregoricus on behalf of Trustee Donald Lassman
zgregoricus@harrisbeachmurtha.com

Sara Kathryn Jackson on behalf of Assistant U.S. Trustee Richard King - B
sara.kathryn.jackson@usdoj.gov

Sara Kathryn Jackson on behalf of Plaintiff William K. Harrington
sara.kathryn.jackson@usdoj.gov

Jay P. Johnson on behalf of Creditor Commonwealth Real Estate Holdings, LLC
Jay.Johnson@Barsh-Cohen.com, Johnson.JayB147131@notify.bestcase.com

Richard King - B
USTPRegion01.BO.ECF@USDOJ.GOV

Donald Lassman
don@lassmanlaw.com, dlassman@ecf.axosfs.com

Barry R. Levine on behalf of Debtor Jason M Kahan
barry@levineslaw.com, kathy@levineslaw.com;r39812@notify.bestcase.com

Barry R. Levine on behalf of Defendant Jason M Kahan
barry@levineslaw.com, kathy@levineslaw.com;r39812@notify.bestcase.com

Jeremy Moskowitz on behalf of Creditor Commonwealth Real Estate Holdings, LLC
jmoskowitz@barsh-cohen.com

Morgan Nighan on behalf of Interested Party PBTC Recovery Partners, LLC
mnighan@nixonpeabody.com

Morgan Nighan on behalf of Interested Party Pioneer Funding Group LLC
mnighan@nixonpeabody.com

Richard C. Pedone on behalf of Interested Party PBTC Recovery Partners, LLC
rpedone@nixonpeabody.com,
bos.managing.clerk@nixonpeabody.com,rmcmullin@nixonpeabody.com

Richard C. Pedone on behalf of Interested Party Pioneer Funding Group LLC
rpedone@nixonpeabody.com,
bos.managing.clerk@nixonpeabody.com,rmcmullin@nixonpeabody.com

Robert F. Tenney on behalf of Creditor Enterprise Bank and Trust Company
rtenney@cmlaw.net