**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>                       Debtor. | Chapter 7<br>Case No. 24-11592-JEB |

**ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

This matter came before the Court on the motion [Dkt. No. 260] (the "Sale Motion") filed

by Donald Lassman, the Chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 case

(the "Case") of Jason M. Kahan (the "Debtor"), seeking entry of an order, pursuant to

Section 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-5

and 6004-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the

District of Massachusetts (the "MLBR") authorizing and approving the sale (the "Sale") of

certain assets of the Debtor's estate. This order (the "Sale Order") constitutes the findings of fact

and conclusions of law on the Sale Motion pursuant to Federal Rule 52(a), made applicable to

this proceeding by Bankruptcy Rule 7052 and 9014. Any finding of fact deemed a conclusion of

law is adopted as such, and vice versa.

Pursuant to the Sale Motion, the Trustee sought approval of an Asset Purchase

Agreement, dated May 6, 2026 (the "APA"), by and between the Trustee and Pioneer Funding

Group LLC ("Pioneer") attached as Exhibit D to the Sale Motion. Pioneer subsequently assigned

its rights under the APA to PBTC Recovery Partners, LLC ("PBTC" or "Buyer") ("Stalking

Horse Bidder" shall mean Pioneer prior to the assignment and PBTC after the assignment). As

set forth in the Sale Motion and the APA, the Trustee sought to sell the assets of the estate set forth on Exhibit A to the APA, including the Recovery Actions (as defined in Section 3.1 of the APA) (collectively, the "Purchased Assets") to the Stalking Horse Bidder for $350,000, subject to the opportunity for objections and higher offers. As more particularly detailed in the APA, the Purchased Assets included the Estate Bitcoin (as defined in the APA), including Bitcoin wallets, Bitcoin addresses, and any cryptocurrency in such wallets or transferred from such wallets.

On June 3, 2026, the Court entered the *Order (A) Approving Procedures Governing Trustee's Proposed Sale Of Certain Of The Debtor's Assets Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Other Interests, (B) Approving Form And Manner Of Notice Of Sale, And (C) Granting Related Relief* (the "Sale Procedures Order"). The Sale Procedures Order sets forth the deadlines for filing objections to the Sale Motion. In addition, the Sale Procedures Order sets forth the procedures and deadlines for the submission of competing bids and further rounds of bidding. To participate in bidding, a competing bid was required to be a Qualified Bid (as defined in the Sale Procedures Order) and provide certain documents and information. The Sale Procedures Order also included the procedures for further bidding at any hearing on the Sale Motion, including the requirement that each further bid must also be a Qualified Bid.

The Court scheduled a hearing on the Sale Motion for July 1, 2026. As provided in the Sale Procedures Order, the hearing could be adjourned from time to time without further notice other than an announcement in open court. Pursuant to the Sale Procedures Order, the Court approved the *Notice Of (A) Proposed Sale Of Certain Assets Of The Debtor's Estate Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Interests, (B) Sale Procedures, (C) Deadlines For Submitting Overbids Or Objections, And (D)*

*Hearing Date* [Dkt. No. 275] dated June 3, 2026 (the "Notice"). On June 4, 2026, the Trustee

served the Sale Motion and the Notice on all creditors and on potential interested purchasers.

On June 26, 2026, the Debtor filed an objection (the "Objection") to the Sale Motion. In

addition, two potential counteroffers were filed. Samara CR Holdings, LLC ("Samara"),

submitted a bid (the "Samara Bid") to purchase the Purchased Assets for $415,500 executed by

the Debtor as manager of Samara. In accordance with the Sale Procedures Order, Samara

submitted a statement by the Debtor under oath that the Debtor and Ryan Moore were the only

interested parties involved in the bid. Ironwood Recovery Holdings LLC also submitted a bid

(the "Ironwood Bid"). The Ironwood Bid expressly stated that it was not seeking to purchase the

Estate Bitcoin, but was limited to the Recovery Actions.

The Trustee and the Stalking Horse Bidder filed an objection to the designation of the

Ironwood Bid as a Qualified Bid. The Stalking Horse Bidder filed an objection to the designation

of Samara as a Qualified Bidder.

The Court held a hearing on the Sale Motion commencing on July 1, 2026, which was

continued to July 8, 2026, and July 10, 2026 (collectively, the "Sale Hearing"). At the Sale

Hearing, the Trustee made an offer of proof regarding the marketing efforts of the Trustee with

respect to the Purchased Assets. No party sought to cross-examine the Trustee or seek further

evidence on the issue of marketing. The Court accepted the offer of proof as evidence of the

Trustee's efforts to market the Purchased Assets. The Court also took judicial notice of the

record of the Case and the record of related cases involving the Debtor, including *In re Jason*

*Kahan*, Case No. 23-11830 (Bankr. D. Mass.), *Harrington v. Kahan*, Adv. Proc. No. 24-01111

(Bankr. D. Mass.), and the bankruptcy case filed by the Debtor's spouse, *In re Olga Bassa*, Case

No. 24-1040 (Bankr. D. Mass.) (Collectively, the foregoing cases are referred to as the "Related

3

Cases"). Having considered the arguments at the hearing, the evidence proffered by the Trustee, the record of the Case and the Related Cases, the Court overruled the Objection by the Debtor.

At the Sale Hearing, the Court then addressed the issues regarding the counteroffers. The Court sustained the objections of the Trustee and the Stalking Horse Bidder to the Ironwood Bid and struck the Ironwood Bid. After further argument, the Court initially overruled the objection of the Stalking Horse Bidder to the Samara Bid, but reserved the issue of whether Samara was entitled to the protections of Section 363(m) as a good faith purchaser. As more fully set forth below, after considering further evidence, the Court subsequently reconsidered its initial ruling and found that the Samara Bid was not a Qualified Bid entitled to participate in further bidding.

After the initial ruling on the Samara Bid, the Court permitted further bidding to determine the highest and best bid through a round of sealed bids. Samara submitted a further bid of $6,100,000 (the "Samara Second Bid"), and PBTC submitted a further bid of $1,050,000 (the "PBTC Second Bid"). The Trustee accepted the Samara Second Bid as the highest and best bid and the PBTC Second Bid as the back-up bid. The Trustee did not request that the Court approve the bids at the July 1, 2026, hearing, nor did he provide any offer of proof or evidence that Samara had the financial ability to consummate the sale or funding for the Samara Second Bid.

At the July 1, 2026, hearing, Samara made an offer of proof on the issue of whether they were a good faith purchaser within the meaning of Section 363(m) of the Code. The Trustee declined to make an offer of proof that Samara was a good faith purchaser. PBTC requested an opportunity to cross-examine the Debtor on behalf of Samara on the issue.

PBTC made an offer of proof on the issue of whether they were a good faith purchaser within the meaning of Section 363(m) of the Code. The Trustee also made an offer of proof on the issue of the good faith of PBTC. Samara requested an opportunity to cross-examine a

4

representative of PBTC on the issue.

Although the Trustee had not requested that the Court approve the bids at the hearing, the Court entered an order dated July 2, 2026 (the "July 2 Order"), stating that the Court had approved the Samara Second Bid as the highest bid and the PBTC Second Bid as the backup bid. The Court continued the Sale Hearing to July 8, 2026, to consider the issue of the good faith of the bidders.

At the continued hearing on July 8, 2026, PBTC raised additional issues regarding the Samara Second Bid and the Samara Bid. In particular, PBTC objected to the Court's prior ruling that the Samara Second Bid was the successful bid, highlighting the failure of the Trustee to ask for approval or set forth evidence on the record that Samara was reasonably likely to perform the Second Bid. PBTC referred to the Sale Procedures Order, which required that the bids submitted during the auction be Qualified Bids. PBTC also raised concerns that the Trustee and Samara had declined to produce documents that PBTC had requested prior to the hearing. The Court reserved for later determination the additional issues raised by PBTC.

The Court conducted an evidentiary hearing on the good faith of the bidders. At the hearing, the Court treated the prior offers of proof of the bidders to be the direct testimony for each bidder on the issue of good faith under Section 363(m). Adam Stein-Sapir testified on behalf of PBTC. At the conclusion of his testimony, Samara declined to offer further argument on the issue of PBTC's good faith. As more fully set forth on the record, and incorporated in the findings below, the Court found that PBTC was a good faith buyer entitled to the protections of Section 363(m).

The Debtor testified on behalf of Samara. In addition to the testimony of the Debtor and the exhibit that had been submitted, the Court heard further argument by Samara and PBTC on

5

the good faith of Samara. As more fully set forth on the record, and incorporated in the findings

below, based on the evidence, the Court found that Samara was not a good faith buyer and not

entitled to the protections of Section 363(m).

As more fully set forth on the record, and incorporated in the findings below, based on

the evidence and the record of the Sale Hearing, the Court held that the finding that the Samara

Second Bid was the highest and best bid was not supported by the record and its ruling was

improvidently granted. As an alternative basis, the Court granted the oral motion of PBTC to

reconsider the ruling. The Court continued the hearing to later in the day to consider further

evidence. Neither the Trustee nor Samara objected to the continuance of the hearing or the

request for evidence on the issue. Neither the Trustee nor Samara requested additional time to

response to the reconsideration of the issue or to continue the hearing.

After a break, the Court resumed the evidentiary hearing. The Trustee and the Debtor

testified and additional exhibits were submitted, including the documents submitted to the

Trustee with the Samara Bid. During the break, the Trustee provided PBTC with the documents

that Samara had submitted to demonstrate its financial ability to consummate the sale. The

Trustee testified that the documents submitted with the Samara Bid were the only evidence that

he considered to determine that the Second Samara Bid was a Qualified Bid and that Samara was

reasonably likely to close consummate the sale pursuant to the bid. The documents consisted of a

letter from an individual named Kyle Biancardi that authorized a bid on behalf of an entity

named NARG LLC to participate in a bid with Samara up to $3,000,000, and a bank statement

dated a month earlier with such funds in the name of NARG LLC. The Debtor testified that

neither the Debtor nor the other principal of Samara, Ryan Moore, had funds to support the bid.

Accordingly, the Court found that the Trustee had no support to show that Samara had the

6

requisite funding to be capable of funding a bid of $6,100,000.

As more fully set forth on the record, and incorporated in the findings below, based on the evidence and the record of the Sale Hearing, the Court found that the Samara Second Bid was not a Qualified Bid. The Court also found that the Samara Second Bid could not be approved as the highest and best bid since Samara did not have the financial ability to close the Samara Second Bid at the time it was made. In addition, as more fully set forth on the record, and incorporated in the findings below, the Court found cause to reconsider its initial finding that Samara was a Qualified Bidder for the Samara Bid. The Court found that the Samara Bid was not a Qualified Bid since, *inter alia*, (i) Samara had failed to disclose that Biancardi and NARG LLC were also interested parties in the bid, and (ii) the documents failed to show that Samara had the funding for the bid. Based on its rulings, the Court struck the Samara Bid and the Samara Second Bid.

After the Court struck the Samara Bid and the Samara Second Bid, the Trustee accepted and the Court approved PBTC as the Successful Bidder pursuant to the terms of the APA. After the rulings, the Court continued the hearing to a nonevidentiary hearing on July 10, 2026, to consider the proposed sale order. Samara filed a request for the Court to revisit the rulings that the Samara Bid and the Second Samara Bid were not Qualified Bids. The Court heard further argument and afforded Samara and the Trustee an opportunity to make an offer of proof of additional evidence that it would submit if the Court reopened the evidence. Neither Samara nor the Trustee proffered evidence that Samara had in place the funding for the Second Samara Bid of $6,100,000 at the time it was made on July 1, 2026. The only evidence that Samara proffered was an agreement dated July 9, 2026, eight days after the auction and almost two weeks after the Samara Bid was submitted, that Samara had a commitment to fund the Second Samara Bid. The

7

Court declined to reinstate its initial rulings.

Having considered the Sale Motion, the APA, the Objection, the evidence and testimony submitted at the Sale Hearing, the record of these proceedings and the related proceedings which the Court took judicial notice, good cause being shown

**IT IS FOUND THAT:**

A.      The Court has jurisdiction to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Venue of this Case and in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief granted herein are included in Sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and MLBR 2002-1 and 6004-1.

D.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

E.      For the reasons set forth on the record at the Sale Hearing, which are incorporated by reference as if fully set forth herein, PBTC is the Successful Bidder to purchase the Purchased Assets on the terms of the APA for $350,000.

**Marketing and Sale Process**

F.      On August 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and commenced this chapter 7 case in the United States Bankruptcy Court for the District of Massachusetts (this "Court").

G.      In January of 2026, the Trustee commenced the marketing of the Purchased

8

Assets for sale. The Trustee provided notice to over 100 persons, and ultimately received five bids. After extensive negotiations over a period of months, the Trustee and the Stalking Horse Bidder negotiated and finalized in good faith and at arm's length the APA and all related documents necessary to consummate the transactions and agreements contemplated therein (the "Sale Transaction").

H.      The Court entered the Sale Procedures Order on June 3, 2026, which approved the Notice.

I.      After the Court entered the Sale Procedures Order, the Trustee served the Notice by first-class and electronic mail to all creditors in the Debtor's bankruptcy case and all persons and other parties who the Trustee believed might have been interested in purchasing the Purchased Assets, including persons who had directly or indirectly expressed an interest in the Purchased Assets during the course of the Debtor's bankruptcy case.

J.      The Sale Procedures (as defined in the Sale Procedures Order) approved by this Court afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Trustee and his counsel conducted a marketing and sale process with respect to the Purchased Assets, and the Successful Bidder participated, each in a fair, good faith, and non-collusive manner.

K.      For the reasons set forth on the record at the Sale Hearing, which is incorporated by reference as if fully set forth herein, the Ironwood Bid was not a Qualified Bid and is stricken.

L.      For the reasons set forth on the record at the Sale Hearing, which are incorporated by reference as if fully set forth herein:

    i.      The finding in the July 2 Order that the Samara Bid was a Qualified Bid is vacated.

ii.   The findings in the July 2 Order that the Second Samara Bid was approved as the highest bid and that the PBTC Second Bid was approved as the back-up Bid are vacated.

iii.   The Samara Second Bid could not be approved as the highest and best bid since Samara did not have the financial ability to consummate the Samara Second Bid at the time it was made. The Second Samara Bid was also not a Qualified Bid as required under the Sale Procedures Order. The Second Samara Bid was stricken.

iv.   The Samara Bid was not a Qualified Bid since, *inter alia*, (i) Samara had failed to disclose that Biancardi and NARG LLC were also interested parties in the bid, and (ii) the documents failed to show that Samara had financial funding for the bid. The Samara Bid was stricken.

v.   Since the Samara Bid and the Ironwood Bid were stricken, the only Qualified Bid was the initial bid of PBTC.

vi.   In accordance with the Sale Procedures Order, PBTC is the Successful Bidder on the terms of the initial APA, which shall be deemed the Successful Bid.

M.   The Successful Bid of the Successful Bidder constitutes the highest and best offer for the Purchased Assets, and the Trustee's determination that the APA maximizes value for the benefit of the Debtor's estate and constitutes the highest or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

N.   The Successful Bid provides fair and reasonable terms for the purchase of the Purchased Assets, and reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets. As more fully set forth on the record at the Sale Hearing, which are incorporated by reference as if fully set forth herein, the only offers

submitted have been found by this Court as not constituting a Qualified Bid. No other offers were submitted.

O.      Approval of the Sale Motion and the Successful Bid, and the prompt consummation of the Sale Transaction contemplated thereby, will maximize the value of the Debtor's estate under the circumstances and are in the best interests of the Debtor's estate, creditors and other parties in interest.

P.      The Successful Bidder has complied with all applicable orders of the Court in negotiating and entering into the APA.

### Sale Hearing

Q.      The Court conducted the Sale Hearing at which time the Court considered the Sale Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Sale Motion and approval of the APA and the transactions contemplated by the APA.

R.      All objections to the Sale Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

### Sound Business Purpose

S.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction contemplated by the APA in accordance with the requirements of Section 363(b) of the Bankruptcy Code. The value of the Debtor's estate will be maximized through a sale of the Purchased Assets. Approval of the APA is necessary to preserve the value of the Debtor's assets. The Trustee has determined, in his reasonable business judgment that the Purchased Assets will have the greatest value if promptly sold to the Successful Bidder.

11

T.      As a result, the proposed Sale Transaction pursuant to Sections 105(a) and 363 of the Bankruptcy Code, upon the terms and conditions set forth in the APA subject to this Sale Order, is the best alternative available to the Trustee for recovering value for the benefit of the Debtor's estate. The Sale Transaction contemplated by the APA maximizes the value of the Purchased Assets.

### Fair Purchase Price

U.      The total consideration to be provided by the Successful Bidder pursuant to the Successful Bid as set forth in the APA is the highest or otherwise best offer received by the Debtor and constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Purchased Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia. The terms of the Sale Transaction contemplated in the APA are fair and reasonable.

### Compliance With Notice Requirements

V.      As evidenced by the notices and affidavits of service filed in the case, and based upon representations of the Trustee's counsel at the Sale Hearing, the Notice was adequate and sufficient under the circumstances, and the Trustee provided sufficient notice of the Sale Motion, the Sale Hearing, and the Trustee's intent to consummate a sale of the Purchased Assets as contemplated by the APA and this Sale Order. The Notice was provided to all parties who the Trustee believes may be in possession or control of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, NordCap Advisors SA and the Debtor.

12

W.      The Notice was provided in accordance with Sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, and 9014, and MLBR 2002-5 and 6004-1. The Trustee has complied with all obligations to provide notice of the Sale Motion, the Sale Hearing, the APA, this Sale Order, and the Sale Transaction. Such Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the APA, this Sale Order, or the Sale Transaction is or shall be required. All parties in interest had a full and fair opportunity to object to the relief granted in this Sale Order.

### Good Faith of the Buyer

X.      The Buyer is purchasing the Purchased Assets and has negotiated and entered into the APA at arm's length and in good faith and without collusion. Accordingly, the Buyer is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the full protections of such provision. Any designee or assignee of the Buyer that is an entity wholly owned by the Buyer shall be deemed a good faith purchaser entitled to all of the protections afforded by Section 363(m). The good faith of the Buyer is evidenced by, *inter alia*, the following facts:

  i.    The sale process conducted by the Trustee was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.

  ii.   The Buyer's Successful Bid is the product of good faith negotiations with the Trustee.

  iii.  No other potential bidder submitted a Qualified Bid for the Purchased Assets.

  iv.   All payments to be made by the Buyer and other agreements or arrangements in connection with the APA have been disclosed.

13

v.    The Buyer has not violated the provisions of Section 363(n) of the Bankruptcy

Code by any action or inaction.

vi.    The Buyer is a third-party purchaser and is unrelated to the Debtor or the Trustee.

Neither the Buyer nor any of its affiliates, subsidiaries, officers, directors,

members, partners, principals, or any of their respective representatives,

successors, or assigns is an "insider" of the Debtor, as that term is defined in

Section 101(31)(A) of the Bankruptcy Code.

vii.    The Trustee and the Buyer have engaged in substantial arm's length negotiations

in good faith. The APA is the product of arm's length bargaining among the

parties.

Y.    The sale of the Purchased Assets pursuant to the APA and this Sale Order, all

covenants therein and conditions thereto, and all relief requested in the Sale Motion are an

integrated transaction, meaning that each component is an essential part of every other

component and that the entire transaction can be consummated only if all of its components are

consummated. Accordingly, the entire transaction is subject to, and is protected by, the

provisions of Section 363(m) of the Bankruptcy Code.

**Sale Free and Clear**

Z.    On and after the Closing of the Sale Transaction, no entity shall have any Lien,

Claim and/or Interest (as defined herein) in or against the Purchased Assets.

AA.    All Liens, Claims and/or Interests that existed against the Purchased Assets prior

to the Closing, whether pre-petition or post-petition, shall, upon Closing, attach solely to the sale

proceeds that the Trustee and the Debtor's estate receive under the Sale Transaction. Those

Liens, Claims and/or Interests will attach to the proceeds of the Sale Transaction in the same

order of relative priority and with the same validity, force, and effect that the holder of such

14

Lien, Claim and/or Interest had against the Purchased Assets prior to Closing (including, for the avoidance of doubt, as set forth in any other applicable Orders of this Court), and will be subject to any claims and defenses the Trustee or Debtor's estate may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Sale Order.

BB.    Pursuant to Section 363(f) of the Bankruptcy Code, a trustee is authorized to sell property of the estate free and clear of any liens, claims, interests, and encumbrances if any of the following requirements is satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (ii) the entity holding the alleged lien, claim, interest, or encumbrance consents; (iii) such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property (Section 363(f)(3) of the Bankruptcy Code); (iv) such lien, claim, interest, or encumbrance is subject to a bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance.

CC.    For the following reasons, the provisions of Section 363(f) of the Bankruptcy Code have been satisfied:

i.    All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction contemplated by the APA are deemed to have consented. Alleged holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the subsections of Section 363(f) of the Bankruptcy Code.

ii.    The Trustee is not aware of any remaining interests in the Purchased Assets, and, if any such interests exist, they are in bona fide dispute as to the extent, validity, perfection, and viability of those interests.

iii.    Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances or such interest is a lien and the price at which such encumbered property is to be sold under the APA is greater than the aggregate value of all liens on such encumbered property.

DD.    Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets will be transferred to the Buyer free and clear of all Liens, Claims, Interests and rights of setoff and recoupment, with all other applicable Liens, Claims and/or Interests to attach to the proceeds of the sale of the Purchased Assets in the order of their priority with the validity, force, and effect that they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Trustee and the Debtor's estate and all interested parties with respect to such Liens, Claims and/or Interests and with the net proceeds from the sale of the Purchased Assets to be available for the benefit of the Debtor's estate.

EE.    Accordingly, the Trustee has satisfied the standard set forth in Section 363(f) of the Bankruptcy Code for selling the Purchased Assets free and clear of all Liens, Claims and/or Interests.

### Sale Free and Clear Required by the Buyer

FF.    In connection with the APA, the Buyer expressly negotiated for the protection of obtaining the Purchased Assets free and clear of all Liens, Claims, Interests and rights of setoff and recoupment (including, without limitation, any potential successor liability claims). The Buyer would have paid substantially less consideration for the Purchased Assets, or not

purchased the Purchased Assets at all, if the Buyer were not purchasing the Purchased Assets

free and clear of any Liens, Claims, Interests and rights of setoff and recoupment.

## No Successor Liability

GG.     To the greatest extent permitted by law, neither the Buyer nor its affiliates,

officers, directors, members, partners, and principals or any of their respective representatives,

successors, or assigns shall be deemed, as a result of the consummation of the Sale Transaction

contemplated by the APA or otherwise, to be liable for any claim based on successor liability,

transferee liability, derivative liability, vicarious liability, or any similar theories under

applicable state or federal law, or otherwise. The Buyer shall have no liability or obligation of

the Trustee, the Debtor or the Debtor's estate and the Buyer is not otherwise, expressly or

impliedly, assuming any of the debts or obligations of the Trustee, the Debtor or the Debtor's

estate. No party may assert any rights of setoff or recoupment against the Buyer to the extent

such rights were assertable against the Debtor or the Debtor's estate prior to the Closing of the

Sale Transaction.

HH.     The Buyer and the Trustee are not entering into the APA fraudulently or in order

to escape liability for the Debtor's obligations.

## No Fraudulent Intent

II.     The APA was not entered into, and the Sale Transaction contemplated by the

APA will not be consummated, for the purpose of hindering, delaying, or defrauding the

Debtor's present or future creditors for purposes of the Bankruptcy Code, any other applicable

laws of the United States, and any applicable laws of any state, territory, or possession thereof, or

the District of Columbia. Neither the Debtor nor the Buyer is entering into the APA or

consummating the Sale Transaction contemplated by the APA with any fraudulent or otherwise

17

improper purpose.

**Purchased Assets**

JJ.      The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of the Bankruptcy Code. As the duly appointed chapter 7 trustee of the Debtor's estate, the Trustee has all title, interest, and/or rights in the Purchased Assets required to transfer and to convey the Purchased Assets to the Buyer, as required by the APA.

KK.      The Trustee acknowledges that some of the Purchased Assets are currently being improperly withheld by third parties. To the greatest extent permitted by law, the Buyer may initiate the Recovery Actions, including claims, causes of action, contested matters, adversary proceedings or other litigation in connection with recovery and access to the Purchased Assets. To the greatest extent permitted by law, the Buyer shall have the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor. Any and all proceeds and recoveries from any Recovery Actions shall be the sole property of the Buyer. The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. As provided in the APA, the Trustee shall provide reasonable good-faith cooperation to the Buyer in connection with its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation brought by the Buyer relating to the Recovery Actions. The Trustee further agrees not to interfere with the Buyer's Recovery Actions.

LL.      Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under

18

section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). The Purchased Assets are not of inconsequential value or benefit to the estate. To the extent any third party is in possession, control or in any way interfering with the Buyer's access to any of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS and NordCap Advisors SA, such third parties shall immediately deliver possession, control, and access to the Purchased Assets (and any proceeds thereof) to the Buyer to the greatest extent permitted by law. To the extent permitted under applicable law, this Court shall retain jurisdiction over any action, suit or proceeding brought by the Buyer to compel turnover of the Purchased Assets, including but not limited to any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code or applicable law.

### Prompt Consummation

MM.   To maximize the value of the Purchased Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the APA. Time is of the essence in consummating the Sale Transaction contemplated by the APA. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction. Accordingly, there is cause to grant relief from the stay established by Bankruptcy Rule 6004.

### Section 363 Sale

NN.   The proposed sale of the Purchased Assets to the Buyer pursuant to the APA constitutes a sale of property of the Debtor's estate outside the ordinary course of business within

19

the meaning of Section 363(b) of the Bankruptcy Code.

OO.    Under the circumstances of the case, the sale of the Purchased Assets to the Buyer pursuant to Sections 105(a) and 363(b) and (f) of the Bankruptcy Code is both justified and appropriate.

PP.    The sale of the Purchased Assets to the Buyer free and clear of any and all Liens, Claims, Interests and rights of setoff and recoupment upon the terms and conditions set forth in the APA is in the best interests of the Debtor's estate.

QQ.    Given the circumstances of the case, the reasonable opportunity afforded other parties to make competing bids or offers for the Purchased Assets, and the adequacy and fair value of the consideration being paid by the Buyer under the APA, the proposed sale of the Purchased Assets to the Buyer constitutes a reasonable and sound exercise of the Trustee's business judgment and is approved.

**Retention of Jurisdiction**

RR.    It is necessary and appropriate for the Court to retain jurisdiction to, among other things, (i) interpret and enforce the terms and provisions of this Sale Order and the APA, (ii) to adjudicate, if necessary, any and all actions, suits or proceedings brought by the Trustee or the Buyer to compel turnover of the Purchased Assets from third parties, including but not limited to any action under 11 U.S.C. § 542, any other provision of Chapter 5 of the Bankruptcy Code or applicable law, to the extent permitted under applicable law, and (iii) to adjudicate, if necessary, any alleged right, title, or property interest, including ownership claims, relating to the Purchased Assets and the proceeds thereof, as well as the extent, validity, perfection, and priority of any alleged lien or claim relating to the Debtor's estate and/or the Purchased Assets, to the extent permitted under applicable law.

20

**IT IS ORDERED AS FOLLOWS:**

1.      The Sale Motion is granted and approved as set forth and subject to the terms of this Sale Order.

### The Sale Transaction is Approved

2.      The Sale Transaction contemplated by the APA is approved as set forth and subject to the terms of this Sale Order.

3.      The Trustee is authorized and directed to sell the Purchased Assets to the Buyer upon and subject to the terms and conditions set forth in the APA.

4.      The Trustee is authorized and directed to perform, consummate, and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take any and all further actions as may be necessary or appropriate to the performance of their respective obligations as contemplated by the APA or this Sale Order.

5.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Purchased Assets shall be transferred, sold, and delivered to the Buyer free and clear of all Liens, Claims, Interests and rights of setoff and recoupment. All other Liens, Claims and/or Interests that existed against the Purchased Assets prior to the Closing shall attach to the sale proceeds the Trustee receives under the Sale Transaction. Those Liens, Claims and/or Interests will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such Lien, Claim and/or Interest had against the Purchased Assets prior to Closing (including, for the avoidance of doubt, in accordance with any other applicable Orders of this Court), and will be subject to any claims and defenses the Trustee may possess with respect thereto. The interests of the holders of such Liens, Claims and/or Interests are being adequately protected pursuant to the provisions of this Sale Order by

21

having their Liens, Claims and/or Interests, if any, in each instance against the Debtor's estate or any of the Purchased Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Purchased Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Trustee and the Debtor's estate may possess with respect thereto.

6. To the greatest extent permitted by law, as a result of the Sale Transaction contemplated by the APA, the Buyer will have no liability for any Liens, Claims and/or Interests against the Debtor's estate as a result of any application of successor liability or other theories.

7. Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the APA, the Purchased Assets shall be transferred to the Buyer free and clear of all liens, claims, encumbrances and interests, which are collectively referred to herein as the "Liens, Claims and/or Interests," which include, by way of illustration and without limitation, each of the following:

    i. liens (as that term is defined in the Bankruptcy Code), including, without limitation, mechanics', materialmens', contractors' subcontractors', and other consensual and non-consensual liens and statutory liens, mortgages, hypothecations, charges, consents, judicial liens (as defined in the Bankruptcy Code), instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Encumbrances, covenants, easements, servitudes, and liens and security interests granted under Sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court;

    ii. interests, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

    iii. rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Trustee's or the Buyer's interest in the Purchased Assets, or any similar rights, in each case with respect to the Sale Transaction;

22

iv.     judgments and/or decrees of any court or foreign or domestic Governmental Authority or governmental entity (to the extent permitted by law);

v.      charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets;

vi.     debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, acts, or failures to act of the Debtor;

vii.    claims (as that term is defined in the Bankruptcy Code), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

viii.   to the maximum extent permitted by law, any other interest whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise.

8.      No person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against the Buyer or its successors in interest any Lien, Claim, Interest or right of setoff or recoupment that such person or entity had, have, or may have against the Debtor or the Debtor's estate, or any Lien, Claim, Interest or right of setoff or recoupment relating to or arising from the Purchased Assets.

9.      The Sale Order shall be binding in all respects upon the Trustee, the Debtor, the Debtor's estate, the estate's creditors, and all parties in interest, including any and all successors and assigns.

10.     All entities holding Liens, Claims, Interests or rights of setoff or recoupment against the Purchased Assets shall be, and they hereby are, barred from asserting such Liens, Claims, Interests or rights of setoff or recoupment against the Buyer, its successors and assigns, and/or the Purchased Assets. All entities holding such Liens, Claims, Interests or rights of setoff or recoupment shall be deemed to have released the Purchased Assets to the Buyer and to have limited the assertion of their Liens, Claims, Interests or rights of setoff or recoupment against the Purchased Assets to the sale proceeds the Trustee and Debtor's estate receive for the sale of the Purchased Assets and any other available property of the Debtor's estate that does not constitute the Purchased Assets.

11.     This Sale Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12.     All Liens, Claims and/or Interests of record against the Purchased Assets shall, upon Closing, be terminated as against the Purchased Assets, and all the entities described in the immediately preceding paragraph of this Sale Order are authorized and directed to (a) terminate all recorded Liens, Claims and/or Interests against the Purchased Assets from their records, official, and otherwise, in each case solely with respect to the Purchased Assets, and (b) accept

for filing or recording this Sale Order and all instruments made or delivered by the Trustee or the Buyer, and any other documents relating to the conveyance of the Purchased Assets to the Buyer.

13.     If any person or entity that has filed statements, documents or agreements evidencing liens or claims on or in the Purchased Assets shall not have delivered to the Debtor or Trustee prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims and/or Interests that the person or entity has or may assert with respect to the Purchased Assets, the Trustee and the Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets or, at the Buyer's request, such person or entity shall promptly execute and file such statements, instruments, releases, and other documents evidencing the release and/or satisfaction of such Liens, Claims and/or Interests.

14.     To the greatest extent permitted by law, the Buyer may initiate Recovery Actions to recover and gain access to the Purchased Assets. The Buyer has the sole right to pursue and prosecute all Recovery Actions, at its own cost, and on its own behalf and as successor-in-interest to the Debtor's estate and the Debtor. Any and all proceeds and recoveries from the Recovery Actions shall be the sole property of the Buyer. The Trustee, the Debtor, the Debtor's estate and its creditors shall have no interest or claim to any proceeds and recoveries from the Recovery Actions. As provided in the APA, the Trustee shall provide reasonable good-faith cooperation to the Buyer in connection with its pursuit of the Recovery Actions, provided however that any such cooperation shall be at no cost or expense to the Trustee and the Debtor's bankruptcy estate and, at no time, shall the Trustee be required to join as a party to any litigation

25

brought by the Buyer relating to the Recovery Actions. The Trustee further agrees not to interfere with the Buyer's pursuit of the Recovery Actions.

15.   The Purchased Assets are not of inconsequential value or benefit to the estate. To the extent any third party is in possession, control or in any way interfering with the Buyer's access to any of the Purchased Assets, including Mr. Hunter Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS, and NordCap Advisors SA, such third parties shall immediately deliver possession, control and access to the Purchased Assets (and any proceeds thereof) to the Buyer to the greatest extent permitted by law.

16.   The Trustee and the Buyer, as applicable, are authorized to (a) take such action as may be necessary to implement the provisions of the APA and any other document executed in connection therewith, and (b) execute and file any necessary document with any governmental or regulatory unit. This Sale Order shall constitute all approvals and consents, if any, required by the laws of any state necessary to file, record, and accept such documents.

17.   To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization and approvals with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

18.   The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA has been undertaken, by the Trustee, the Buyer, and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the

26

validity of the Sale Transaction, whether or not the Buyer knew or knows of the pendency of the appeal, unless such authorization and such Sale Transaction are stayed pending appeal prior to closing. The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code. Any designee or assignee of the Buyer that is an entity wholly owned by the Buyer shall be deemed a good faith purchaser entitled to all of the protections afforded by Section 363(m).

19. Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or damages or costs to be imposed, under Section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Purchased Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under Section 363(n) of the Bankruptcy Code.

20. To the extent there is a conflict between the terms of this Sale Order and the APA, the terms of this Sale Order shall control.

21. The Trustee is authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and provisions of the APA and all other agreements related thereto and the Trustee is authorized to and shall take any other action that may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, and conveying any or all of the Purchased Assets.

## Additional Implementation Provisions

22. The Court retains jurisdiction, even after the closing of the case, to interpret, implement, and enforce the terms and provisions of this Sale Order, the APA, and any other

27

agreement executed in connection therewith. In addition, to the extent permitted under applicable

law, the Court retains jurisdiction even after the closing of the case, with respect to all other

matters arising from or related to the enforcement of this Sale Order, including to:

(a)  protect the Buyer, or any of the Purchased Assets, against any Liens, Claims and/or Interests;

(b)  resolve any disputes arising under or related to the APA, the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Purchased Assets;

(c)  adjudicate all issues concerning all Liens, Claims and/or Interests in and to the Purchased Assets, including the extent, validity, enforceability, priority, and nature of all such Liens, Claims and/or Interests; and

(d)  adjudicate any and all issues and/or disputes relating to the Trustee's or the Buyer's right, title, or interest in the Purchased Assets and the proceeds thereof, including any action, suit or proceeding brought by the Trustee or the Buyer to compel turnover of the Purchased Assets, including but not limited to, and to the greatest extent permitted by law, any action under 11 U.S.C.§ 542, any other provision of Chapter 5 of the Bankruptcy Code related to the Purchased Assets or applicable law.

23.  The provisions of this Sale Order are nonseverable and mutually dependent.

24.  Except as may be expressly provided in this Sale Order or the Sale Procedures

Order, nothing in this Sale Order shall alter or amend the APA and the obligations of the Trustee

and the Buyer thereunder.

25.  The failure specifically to include any particular provisions of the APA in this

Sale Order shall not diminish or impair the efficacy of such provision.

26.     This Order shall be effective and enforceable immediately. The Court finds that time is of the essence to the Buyer's ability to preserve and recover the Purchased Assets and that good cause has been shown to waive any stay of this Order. The provision of Bankruptcy Rule 6004(h) is waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the APA immediately upon entry of this Order.

Dated:  July 17, 2026

_____
Janet E. Bostwick
United States Bankruptcy Judge