**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**SUPPLEMENT OF PBTC RECOVERY PARTNERS, LLC IN RESPONSE TO THE COURT'S DIRECTIVES AT THE AUGUST 27, 2026 CONTINUED HEARING ON *EXPEDITED* MOTION OF PBTC RECOVERY PARTNERS, LLC PURSUANT TO BANKRUPTCY RULE 2004 SEEKING TO COMPEL DEBTOR AND HUNTER PENN TO PRODUCE HARDWARE RELATED TO ACQUIRED BITCOIN ASSETS**

Pursuant to the *Proceeding Memorandum and Order* [Docket No. 381] and the directions of this Court made on the record at the hearing held on August 27, 2026 (the "Hearing"), PBTC Recovery Partners, LLC ("PBTC"), by and through its undersigned counsel, respectfully submits this supplement (the "Supplement") in further support of the *Expedited Motion Pursuant to Bankruptcy Rule 2004 Seeking to Compel Debtor and Hunter Penn to Produce Hardware Related to Acquired Bitcoin Assets* [Docket No. 359] (the "Hardware Motion"),[1] as previously supplemented by the *PBTC Recovery Partners, LLC's Supplement to Expedited Motion Pursuant to Bankruptcy Rule 2004 Seeking to Compel Debtor and Hunter Penn to Produce Hardware Related to Acquired Bitcoin Assets* [Docket No. 380] (the "Protocol Supplement"). In further support of the Hardware Motion, PBTC respectfully states as follows:

**SUPPLEMENT**

**A. Status of Discussions With Debtor's Counsel Regarding Proposed Forensic Protocol**

1. On August 28, 2026, counsel for PBTC conducted a zoom conference with Mr. Redlener, current counsel for the Debtor, in an attempt to resolve any remaining issues that the

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Hardware Motion.

Debtor has with the *Order (I) Granting Expedited Motion Of PBTC Recovery Partners, LLC Pursuant To Bankruptcy Rule 2004 Seeking To Compel Debtor And Hunter Penn To Produce Hardware Related To Acquired Bitcoin Assets And (II) Approving Protocol For Forensic Investigation And Analysis* (the "Forensic Protocol Order") attached as Exhibit B to the Protocol Supplement. **At that time, Mr. Redlener disclosed that the Debtor is replacing Mr. Redlener with other counsel.** Mr. Redlener did not know the identity of replacement counsel and as of the filing of this Supplement, no new counsel has contacted Nixon Peabody. As a result, the parties were not able to substantively discuss the Forensic Protocol Order.

2. Accordingly, PBTC requests that the Court enter the revised form of the Forensic Protocol Order attached hereto as **Exhibit A**. Attached hereto as **Exhibit B** is a blackline version of the Forensic Protocol Order marked to show the changes made to the version filed with the Protocol Supplement. The only changes made to the Forensic Protocol Order are (i) paragraph 21 has been updated to reflect comments made by the Court at the Hearing, and (ii) Hunter Penn has also been identified by the alias that we have been informed that he is using, as described further below.

**B. Hunter Penn Alias**

3. On August 12, 2026, the Court entered the *Proceeding Memorandum and Order* [Docket No. 366] (the "Proceeding Order"), which prohibited the Debtor and Hunter Penn from deleting, destroying, modifying, encrypting, wiping, transferring, concealing, overwriting, or altering any Hardware. The Proceeding Order also required PBTC to serve a copy of the order on all parties "entitled to notice", which includes Hunter Penn.

4. As more particularly described in the *Expedited Motion Pursuant to Bankruptcy Rule 2004 Seeking to Compel Jason M. Kahan to Disclose the Current Contact Information for Hunter Penn in Order to Serve Proceeding Memorandum and Order and Hunter Penn to*

*Produce Hardware Related to Acquired Bitcoin Assets* [Docket No. 376] (the "Penn Contact Information Motion"), PBTC was unable to locate Mr. Penn at his previously known addresses to serve the Proceeding Order, although he was served via email at various accounts he was believed to use.

5. On August 17, 2026, counsel for PBTC emailed Mr. Redlener and Mr. Harrington, counsel to the Debtor, asking if the Debtor could provide PBTC with Hunter Penn's current address. *See* Penn Contact Information Motion, Ex. C. On August 20, 2026, PBTC filed the Penn Contact Information Motion seeking to compel the Debtor to disclose the current contact information for Mr. Penn to PBTC.

6. On August 26, 2026, counsel to the Debtor emailed counsel to PBTC that Mr. Penn regularly communicates with the Debtor on a messaging platform, "Telegram", with the username @alecolvi and under the alias "Alex Colvin". *See* **Exhibit C**.

7. On August 26, 2026, counsel to PBTC contacted Mr. Penn via his Telegram username @alecolvi to apprise Mr. Penn of the date, time and location of the Hearing, as well as the Courtroom Deputy's contact information to request remote access. The messages sent by PBTC's counsel to Mr. Penn are attached hereto as **Exhibit D**.

WHEREFORE, PBTC respectfully requests that the Court enter the Forensic Protocol Order attached hereto as **Exhibit A** together with such other and further relief as this Court deems just and proper.

Dated: August 28, 2026

Respectfully submitted,

/s/ *Richard C. Pedone*
Richard C. Pedone (BBO # 630716)
Morgan C. Nighan (BBO # 679546)
Daniel P. McMonagle (BBO # 713426)
NIXON PEABODY LLP

Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 345-1000
Email: rpedone@nixonpeabody.com

*Counsel to PBTC Recovery Partners, LLC*

**CERTIFICATE OF SERVICE**

I, Richard C. Pedone, hereby certify that on August 28, 2026, I served a copy of the *SUPPLEMENT OF PBTC RECOVERY PARTNERS, LLC IN RESPONSE TO THE COURT'S DIRECTIVES AT THE AUGUST 27, 2026 CONTINUED HEARING ON EXPEDITED MOTION OF PBTC RECOVERY PARTNERS, LLC PURSUANT TO BANKRUPTCY RULE 2004 SEEKING TO COMPEL DEBTOR AND HUNTER PENN TO PRODUCE HARDWARE RELATED TO ACQUIRED BITCOIN ASSETS* (i) on all parties requesting service via the Court's Electronic Case Filing system, (ii) on Hunter Penn via Telegram to the username @alecolvi, and (iii) by email on the parties listed below:

1. counsel for the Debtor (barry@levineslaw.com, jredlener@ascendantlawgroup.com; rwhynottlaw@gmail.com)
2. the Trustee (don@lassmanlaw.com)
3. counsel to the Trustee (zgregoricus@harrisbeachmurtha.com; mdegiacomo@harrisbeachmurtha.com)
4. Hunter Penn
   soobstorypen@gmail.com
   paralaxpenn@gmail.com
   Alexcolvin@protonmail.com
   HunterKellyPenn@gmail.com
   HunterKellyPenn16@gmail.com

Respectfully submitted,

/s/ *Richard C. Pedone*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**ORDER (I) GRANTING EXPEDITED MOTION OF PBTC RECOVERY PARTNERS, LLC PURSUANT TO BANKRUPTCY RULE 2004 SEEKING TO COMPEL DEBTOR AND HUNTER PENN TO PRODUCE HARDWARE RELATED TO ACQUIRED BITCOIN ASSETS AND (II) APPROVING PROTOCOL FOR FORENSIC INVESTIGATION AND ANALYSIS**

Upon consideration of the *Expedited Motion of PBTC Recovery Partners, LLC Pursuant to Bankruptcy Rule 2004 Seeking to Compel Debtor and Hunter Penn to Produce Hardware Related To Acquired Bitcoin Assets* (the "Motion")[1] filed by PBTC Recovery Partners, LLC ("PBTC"); a hearing having been held on the Motion; the Court having reviewed the Motion and previously entered the *Proceeding Memorandum and Order* [Docket No. 366] partially granting the Motion; and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED and all objections thereto are overruled.

2. All terms of the *Proceeding Memorandum and Order* remain in full force and effect.

3. PBTC is authorized to serve subpoenas pursuant to Bankruptcy Rules 2004 and 9016 upon Jason M. Kahan and Hunter Penn requiring the production of all computers, laptops, desktops, tablets, mobile phones, hardware wallets, external hard drives, thumb drives, SD cards,

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

network-attached storage devices, backup drives, cloud-storage repositories, encrypted containers, memory storage devices, other electronic storage media, as well as any and all means to access such devices (the "Hardware") within their possession, custody, or control that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the *Order (I) Authorizing And Approving The Sale Of Certain Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (II) Granting Related Relief* [Docket No. 343] (the "Sale Order").

4. The following protocol for forensic investigation and analysis (the "Protocol") shall govern the handling of inspection, imaging, copying, and preservation of all materials produced by Jason M. Kahan (the "Debtor") and Hunter Penn a/k/a Alex Colvin ("Hunter Penn") in response to the subpoenas issued by PBTC. This Protocol applies to Hardware and ESI produced by the Debtor and Hunter Penn.

**FORENSIC PROTOCOL**

5. **Scope**. This protocol sets forth the process for the identification, preservation, collection, forensic imaging, processing, search, review, and production of Hardware produced by the Debtor and/or Hunter Penn that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order.

6. **Third-Party Forensic Investigator**. TransPerfect Document Management, Inc. and/or Chancery Staffing Solutions, LLC (d/b/a TransPerfect Staffing Solutions) (together, "TransPerfect") shall act as the third-party forensic investigator to create forensic images of the Hardware and to conduct forensic evaluations, as described below. TransPerfect shall be jointly engaged by the parties and PBTC shall pay for TransPerfect's services consistent with this Protocol. TransPerfect is engaged specifically for execution of the directives contained within

this Protocol, and is not engaged as an expert for any party. TransPerfect shall not offer or provide any opinions, or offer any analysis of data outside the limited scope of this Protocol, but may be called to testify at a deposition, hearing, or trial to explain those steps performed and those items, if any, uncovered in the course of the analysis. TransPerfect shall receive a copy of this Protocol prior to executing any of the directives contained in this Protocol.

7. **Identification of Hardware Subject to Protocol**. Within three (3) calendar days of Court approval of this Protocol, the Debtor and Hunter Penn shall provide a certification under penalty of perjury (the "Certification") regarding any Hardware in their possession, custody, or control that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order (the "Protocol Hardware"). The Certification shall contain the following information regarding each item of Protocol Hardware:

| Device Type (Laptop, Tablet, etc) | Brand | Make/Model | Operating System on Device | Storage Capacity |
|---|---|---|---|---|
| | | | | |
| | | | | |

In the Certification, the Debtor and Hunter Penn shall also identify (i) any Hardware in their possession, custody or control that the Debtor and Hunter Penn assert does not contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order and thus is not being made available to TransPerfect pursuant to this Protocol; and (ii) any Hardware that may previously have contained information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order, but no longer contains such information or no longer is within the Debtor or Hunter Penn's possession, custody or control, along with a description of the circumstances that resulted in the Hardware no longer containing information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order and/or no longer being within the

Debtor or Hunter Penn's possession, custody or control. The Debtor and Hunter Penn have a continuing obligation to notify PBTC of the discovery of any Hardware that may be subject to this Protocol.

8. **Availability and Certification**. On or before seven (7) days after the Debtor and/or Hunter Penn provide the Certification to PBTC's counsel, the Debtor and/or Hunter Penn shall make the Protocol Hardware available to TransPerfect, which shall provide forensic services to fulfill execution of this Protocol. TransPerfect shall take possession of and create a forensic image of the Protocol Hardware provided by the Debtor and/or Hunter Penn. The imaging shall take place at TransPerfect's Boston Digital Forensics Laboratory at 1 Mill & Main Place, Suite 200, Maynard, MA.

9. **Chain of Custody**. TransPerfect shall, with cooperation by the parties and any courier service, complete proper chain of custody documentation, which shall identify all persons who handled or transported the Protocol Hardware and any component part thereof, and identify the locations and conditions under which the Protocol Hardware were provided to TransPerfect. All forensic images, extracted data, credentials, and productions shall be encrypted at rest and in transit. Access shall be limited to personnel reasonably necessary to perform work under this Protocol. TransPerfect shall maintain access logs and shall promptly notify the Parties of any suspected unauthorized access, disclosure, loss, or compromise.

10. TransPerfect shall return the physical Protocol Hardware to the Debtor and/or Hunter Penn within five (5) business days after completion and verification of the forensic imaging described below, unless continued retention is reasonably necessary to complete collection, address technical issues, or comply with further order of the Court.

11. **Debtor and Hunter Penn Cooperation with TransPerfect**. The Debtor and/or Hunter Penn shall provide all passwords, passcodes, decryption keys, access credentials, recovery phrases, two-factor authentication access, and other information necessary to access any Protocol Hardware provided in response to any subpoenas issued by PBTC, subject to any applicable privilege, Fifth Amendment, or other rights preserved by law and any further order of this Court.

12. Any credentials or authentication information provided by the Debtor and/or Hunter Penn shall be provided to TransPerfect only, shall be maintained in encrypted form, shall be used solely to access and collect data authorized by this Protocol, and shall not be disclosed to PBTC or included in any production absent further Court order or written consent of the Debtor and/or Hunter Penn.

13. **Preparation for Imaging**. Before imaging any Protocol Hardware, TransPerfect shall record the specifications, characteristics, and serial number identifiers (both physical and volume) for the Protocol Hardware to document its current physical condition and operability. Before imaging, TransPerfect shall properly prepare suitable forensic storage media ("Target Media") for receipt of any forensic images created through its execution of any directives under this Protocol by preparing a blank hard drive for receipt of forensic image (container) files.

14. **Forensic Image Specifications**. Where possible, TransPerfect shall make one full forensic bit-stream copy of each piece of Protocol Hardware onto Target Media using a properly functioning forensic write-blocking device or software and an imaging device. For media and devices, TransPerfect shall make a forensic image by making a bit-for-bit evidentiary image (or other comprehensive copy) of the Protocol Hardware using a procedure that is generally

accepted as forensically sound. Generally accepted forensically sound procedures include, but are not limited to:

a. Removing the physical hard drive or other data storage component and attaching it to a forensic acquisition system that is running the operating system via a write blocker which will prevent any writing to the evidence drive.

b. Using a specifically modified boot USB drive which boots the Protocol Hardware into an operating system designed for forensic collection of data.

c. Removing the physical hard drive or other data storage component from Protocol Hardware and attaching it to a hardware-based forensic imager.

d. In limited circumstances due to certain hardware/software restrictions, creating a live forensic image of the Protocol Hardware using forensic acquisition software.

e. The acquired image shall be written to a clean, wiped formatted and encrypted, hard drive. During this process, an MD5 Hash value for each evidence drive image will be computed and saved by the acquisition software.

f. TransPerfect shall conduct forensic verification of all images made. The forensic verification process of the digital data shall be done by processing the evidence files to obtain a new MD5 Hash value for each image file. The MD5 Hash values generated during the verification process must match the MD5 Hash values generated by the acquisition process.

15. For cloud accounts and cloud-based data repositories, TransPerfect shall make an evidentiary copy of the data, by accessing the account using the Debtor and/or Hunter Penn's credentials and two-factor authentication, and using generally accepted forensically sound procedures to download all available data (including available metadata). TransPerfect shall access and collect all data on cloud accounts and cloud-based data repositories, create logical evidence files of the same, and include within the logical evidence file properties any and all information necessary to identify the original source of the virtual repositories. The Debtor and/or Hunter Penn shall provide necessary usernames and passwords to TransPerfect to ensure

prompt and full access to such repositories. TransPerfect shall access cloud repositories solely for collection purposes and shall not send communications, alter settings, delete or move data, mark items as read where avoidable, or enable ongoing synchronization or monitoring, except as necessary to perform a defensible collection.

16. For mobile devices, TransPerfect shall make an evidentiary data acquisition (or other comprehensive copy as available) of the mobile device, using a procedure that is generally accepted as forensically sound for mobile device forensics. The Debtor and/or Hunter Penn shall provide necessary passwords and credentials to TransPerfect to ensure prompt and full access to such mobile devices. Generally accepted forensically sound procedures include, but are not limited to:

a. Utilizing Cellebrite UFED, Cellebrite Premium, Magnet Verakey or similar mobile device forensic software to create the evidentiary acquisition.

b. Conducting forensic verification of all acquisitions via Digital Forensics software as available.

c. Upon completion of the forensic acquisition process, TransPerfect will extract for searching:

  i. All available text messages/iMessages, direct messages, and Chats from native and third-party applications and convert them into Relativity Short Message Format ("RSMF") format, segmented into 24-hour periods.

  ii. Calendar data

  iii. Calls Logs

  iv. Voicemails

  v. Contacts

  vi. Media (Pictures, Audio, Videos)

  vii. Notes

  viii. Documents

17. TransPerfect shall be entitled to make additional copies of any forensic image created under this Protocol for purposes of redundancy and disaster recovery.

18. If TransPerfect identifies encrypted containers, password managers, wallet applications, backup files, or other protected repositories, TransPerfect shall document their existence and request necessary access credentials from the Debtor and/or Hunter Penn, subject to any rights preserved by law and further Court order.

19. **Forensic Imaging Process**. Upon completion of the forensic imaging of any Protocol Hardware provided by the Debtor and/or Hunter Penn, TransPerfect shall provide notification to the parties of completion of imaging, as well as a complete list of the files that are contained in those images along with the file name, file path, date, and other relevant data fields. Such notice may be provided by email (the "Forensic Imaging Notification"). For the avoidance of doubt, the forensic imaging of any Protocol Hardware shall take place on a rolling basis and TransPerfect shall issue a Forensic Imaging Notification upon the completion of the forensic imaging of each item of Hardware.

20. Within fourteen (14) days of receiving the Forensic Imaging Notification, the Debtor and/or Hunter Penn shall notify PBTC and TransPerfect of which files the Debtor and/or Hunter Penn assert should be withheld on the basis of privilege, work-product protection, or on the ground that such file is non-responsive (the "Designated Materials"), along with a log containing a description of the Designated Materials to be withheld, the file name, file path, date, author, recipients, file type, hash value, and basis for withholding (the "Log"). For forensic artifacts or data fragments for which such information is not reasonably available, the Debtor and/or Hunter Penn may provide a categorical log identifying the artifact type, source, and basis for withholding.

21. If PBTC disagrees with the withholding of any Designated Materials, PBTC shall identify any challenge to a withheld item to the Debtor and/or Hunter Penn in writing, and the Parties shall meet and confer within three (3) business days thereafter. If unresolved, any party may submit the dispute via motion to the Court within five (5) business days after the meet-and-confer, which motion may be heard on an expedited basis. Pursuant to Federal Rule of Evidence 502(d), production of privileged or work-product-protected information, whether inadvertent or otherwise, shall not constitute a waiver in this proceeding or in any other federal or state proceeding.

22. Within a commercially reasonable amount of time after the Debtor and/or Hunter Penn notifies PBTC and TransPerfect of the Designated Materials, TransPerfect shall deliver the forensic image of each item of Protocol Hardware to the parties, but shall not produce any Designated Materials. Any Designated Materials shall only be provided to PBTC upon order of the Court or with the consent of the parties. Productions shall be made in native format where reasonably practicable, together with reasonably available metadata, including source device, file path, file name, file extension, created/modified/accessed dates, hash value, and custodian/source. For artifacts not reasonably producible natively, TransPerfect may produce screenshots, reports, exports, or PDFs sufficient to show the content and relevant metadata.

23. There is no restriction on any party obtaining its own forensic examiner to review, analyze, and report, under protection of any applicable privilege, any materials produced to the parties by TransPerfect under this Protocol. No party's forensic examiner may access any full forensic image except under the terms of this Protocol, any applicable protective order, and/or any further order of the Court resolving privilege, privacy, relevance, and security issues.

24. **Confidentiality Obligations of TransPerfect**. At all times from and after employment in connection with this Protocol, TransPerfect shall hold all documents and information provided to TransPerfect in connection with this Protocol in strict confidence and shall not divulge, disclose, or be in a position to inevitably disclose, or otherwise communicate, directly or indirectly, to any person or entity, any information, document or image accessed in connection with this Protocol, except as required in compliance with this Protocol or subsequent court order. TransPerfect shall not duplicate, copy, or remove any property or information accessed or obtained in connection with this Protocol, except as set forth under this Protocol or subsequent court order. TransPerfect shall not make or retain any copy, note, or other item intended to memorialize any such data or information, except as set forth under this Protocol.

25. No person, including TransPerfect, PBTC, the Debtor, Hunter Penn, or any forensic examiner, shall use any private key, seed phrase, recovery phrase, passphrase, wallet file, hardware wallet, exchange credential, two-factor authentication method, or other access mechanism discovered or provided under this Protocol to transfer, move, sell, pledge, encumber, conceal, alter, or otherwise exercise control over any digital asset, except upon further order of the Court or written agreement of the parties.

26. **Additional Provisions**.

a. All copies of the forensic images of the Protocol Hardware will be destroyed by TransPerfect at a time which the parties mutually agree that the imaged copies may be destroyed/deleted (the "Expiration Period"), as communicated to TransPerfect by joint written assent of counsel for the parties. When so directed, TransPerfect shall destroy/delete from TransPerfect's systems within thirty (30) days of the Expiration Period. TransPerfect will provide verification of the destruction of the imaged copies of the Protocol Hardware to counsel for the parties.

b. The parties will make all commercially reasonable efforts to facilitate this Protocol. Any party can petition the Court for some relief of fees and costs associated with this Protocol that it believes in good faith are commercially unreasonable or prohibitively expensive.

c. The inadvertent production or disclosure of any document in connection with the forensic examination described in this Order shall be without prejudice to any claim that such material is protected by any legally cognizable privilege or evidentiary protection including, but not limited to the attorney-client privilege, or the work product doctrine, and no party shall be held to have waived any rights by such inadvertent production.

d. Nothing contained in this Protocol shall affect or restrict the rights of any party with respect to its own documents or to information obtained or developed independently.

27. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: ___________________

JANET E. BOSTWICK
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**ORDER (I) GRANTING EXPEDITED MOTION OF PBTC RECOVERY PARTNERS, LLC PURSUANT TO BANKRUPTCY RULE 2004 SEEKING TO COMPEL DEBTOR AND HUNTER PENN TO PRODUCE HARDWARE RELATED TO ACQUIRED BITCOIN ASSETS AND (II) APPROVING PROTOCOL FOR FORENSIC INVESTIGATION AND ANALYSIS**

Upon consideration of the *Expedited Motion of PBTC Recovery Partners, LLC Pursuant to Bankruptcy Rule 2004 Seeking to Compel Debtor and Hunter Penn to Produce Hardware Related To Acquired Bitcoin Assets* (the "Motion")[1] filed by PBTC Recovery Partners, LLC ("PBTC"); a hearing having been held on the Motion; the Court having reviewed the Motion and previously entered the *Proceeding Memorandum and Order* [Docket No. 366] partially granting the Motion; and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED and all objections thereto are overruled.

2. All terms of the *Proceeding Memorandum and Order* remain in full force and effect.

3. PBTC is authorized to serve subpoenas pursuant to Bankruptcy Rules 2004 and 9016 upon Jason M. Kahan and Hunter Penn requiring the production of all computers, laptops, desktops, tablets, mobile phones, hardware wallets, external hard drives, thumb drives, SD cards,

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

network-attached storage devices, backup drives, cloud-storage repositories, encrypted containers, memory storage devices, other electronic storage media, as well as any and all means to access such devices (the "Hardware") within their possession, custody, or control that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the *Order (I) Authorizing And Approving The Sale Of Certain Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (II) Granting Related Relief* [Docket No. 343] (the "Sale Order").

4. The following protocol for forensic investigation and analysis (the "Protocol") shall govern the handling of inspection, imaging, copying, and preservation of all materials produced by Jason M. Kahan (the "Debtor") and Hunter Penn a/k/a Alex Colvin ("Hunter Penn") in response to the subpoenas issued by PBTC. This Protocol applies to Hardware and ESI produced by the Debtor and Hunter Penn.

**FORENSIC PROTOCOL**

5. **Scope**. This protocol sets forth the process for the identification, preservation, collection, forensic imaging, processing, search, review, and production of Hardware produced by the Debtor and/or Hunter Penn that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order.

6. **Third-Party Forensic Investigator**. TransPerfect Document Management, Inc. and/or Chancery Staffing Solutions, LLC (d/b/a TransPerfect Staffing Solutions) (together, "TransPerfect") shall act as the third-party forensic investigator to create forensic images of the Hardware and to conduct forensic evaluations, as described below. TransPerfect shall be jointly engaged by the parties and PBTC shall pay for TransPerfect's services consistent with this Protocol. TransPerfect is engaged specifically for execution of the directives contained within

this Protocol, and is not engaged as an expert for any party. TransPerfect shall not offer or provide any opinions, or offer any analysis of data outside the limited scope of this Protocol, but may be called to testify at a deposition, hearing, or trial to explain those steps performed and those items, if any, uncovered in the course of the analysis. TransPerfect shall receive a copy of this Protocol prior to executing any of the directives contained in this Protocol.

7. **Identification of Hardware Subject to Protocol**. Within three (3) calendar days of Court approval of this Protocol, the Debtor and Hunter Penn shall provide a certification under penalty of perjury (the "Certification") regarding any Hardware in their possession, custody, or control that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order (the "Protocol Hardware"). The Certification shall contain the following information regarding each item of Protocol Hardware:

| Device Type (Laptop, Tablet, etc) | Brand | Make/Model | Operating System on Device | Storage Capacity |
|---|---|---|---|---|
| | | | | |
| | | | | |

In the Certification, the Debtor and Hunter Penn shall also identify (i) any Hardware in their possession, custody or control that the Debtor and Hunter Penn assert does not contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order and thus is not being made available to TransPerfect pursuant to this Protocol; and (ii) any Hardware that may previously have contained information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order, but no longer contains such information or no longer is within the Debtor or Hunter Penn's possession, custody or control, along with a description of the circumstances that resulted in the Hardware no longer containing information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order and/or no longer being within the

Debtor or Hunter Penn's possession, custody or control. The Debtor and Hunter Penn have a continuing obligation to notify PBTC of the discovery of any Hardware that may be subject to this Protocol.

8. **Availability and Certification**. On or before seven (7) days after the Debtor and/or Hunter Penn provide the Certification to PBTC's counsel, the Debtor and/or Hunter Penn shall make the Protocol Hardware available to TransPerfect, which shall provide forensic services to fulfill execution of this Protocol. TransPerfect shall take possession of and create a forensic image of the Protocol Hardware provided by the Debtor and/or Hunter Penn. The imaging shall take place at TransPerfect's Boston Digital Forensics Laboratory at 1 Mill & Main Place, Suite 200, Maynard, MA.

9. **Chain of Custody**. TransPerfect shall, with cooperation by the parties and any courier service, complete proper chain of custody documentation, which shall identify all persons who handled or transported the Protocol Hardware and any component part thereof, and identify the locations and conditions under which the Protocol Hardware were provided to TransPerfect. All forensic images, extracted data, credentials, and productions shall be encrypted at rest and in transit. Access shall be limited to personnel reasonably necessary to perform work under this Protocol. TransPerfect shall maintain access logs and shall promptly notify the Parties of any suspected unauthorized access, disclosure, loss, or compromise.

10. TransPerfect shall return the physical Protocol Hardware to the Debtor and/or Hunter Penn within five (5) business days after completion and verification of the forensic imaging described below, unless continued retention is reasonably necessary to complete collection, address technical issues, or comply with further order of the Court.

11. **Debtor and Hunter Penn Cooperation with TransPerfect**. The Debtor and/or Hunter Penn shall provide all passwords, passcodes, decryption keys, access credentials, recovery phrases, two-factor authentication access, and other information necessary to access any Protocol Hardware provided in response to any subpoenas issued by PBTC, subject to any applicable privilege, Fifth Amendment, or other rights preserved by law and any further order of this Court.

12. Any credentials or authentication information provided by the Debtor and/or Hunter Penn shall be provided to TransPerfect only, shall be maintained in encrypted form, shall be used solely to access and collect data authorized by this Protocol, and shall not be disclosed to PBTC or included in any production absent further Court order or written consent of the Debtor and/or Hunter Penn.

13. **Preparation for Imaging**. Before imaging any Protocol Hardware, TransPerfect shall record the specifications, characteristics, and serial number identifiers (both physical and volume) for the Protocol Hardware to document its current physical condition and operability. Before imaging, TransPerfect shall properly prepare suitable forensic storage media ("Target Media") for receipt of any forensic images created through its execution of any directives under this Protocol by preparing a blank hard drive for receipt of forensic image (container) files.

14. **Forensic Image Specifications**. Where possible, TransPerfect shall make one full forensic bit-stream copy of each piece of Protocol Hardware onto Target Media using a properly functioning forensic write-blocking device or software and an imaging device. For media and devices, TransPerfect shall make a forensic image by making a bit-for-bit evidentiary image (or other comprehensive copy) of the Protocol Hardware using a procedure that is generally accepted

as forensically sound. Generally accepted forensically sound procedures include, but are not limited to:

a. Removing the physical hard drive or other data storage component and attaching it to a forensic acquisition system that is running the operating system via a write blocker which will prevent any writing to the evidence drive.

b. Using a specifically modified boot USB drive which boots the Protocol Hardware into an operating system designed for forensic collection of data.

c. Removing the physical hard drive or other data storage component from Protocol Hardware and attaching it to a hardware-based forensic imager.

d. In limited circumstances due to certain hardware/software restrictions, creating a live forensic image of the Protocol Hardware using forensic acquisition software.

e. The acquired image shall be written to a clean, wiped formatted and encrypted, hard drive. During this process, an MD5 Hash value for each evidence drive image will be computed and saved by the acquisition software.

f. TransPerfect shall conduct forensic verification of all images made. The forensic verification process of the digital data shall be done by processing the evidence files to obtain a new MD5 Hash value for each image file. The MD5 Hash values generated during the verification process must match the MD5 Hash values generated by the acquisition process.

15. For cloud accounts and cloud-based data repositories, TransPerfect shall make an evidentiary copy of the data, by accessing the account using the Debtor and/or Hunter Penn's credentials and two-factor authentication, and using generally accepted forensically sound procedures to download all available data (including available metadata). TransPerfect shall access and collect all data on cloud accounts and cloud-based data repositories, create logical evidence files of the same, and include within the logical evidence file properties any and all information necessary to identify the original source of the virtual repositories. The Debtor and/or Hunter Penn shall provide necessary usernames and passwords to TransPerfect to ensure

prompt and full access to such repositories. TransPerfect shall access cloud repositories solely for collection purposes and shall not send communications, alter settings, delete or move data, mark items as read where avoidable, or enable ongoing synchronization or monitoring, except as necessary to perform a defensible collection.

16. For mobile devices, TransPerfect shall make an evidentiary data acquisition (or other comprehensive copy as available) of the mobile device, using a procedure that is generally accepted as forensically sound for mobile device forensics. The Debtor and/or Hunter Penn shall provide necessary passwords and credentials to TransPerfect to ensure prompt and full access to such mobile devices. Generally accepted forensically sound procedures include, but are not limited to:

a. Utilizing Cellebrite UFED, Cellebrite Premium, Magnet Verakey or similar mobile device forensic software to create the evidentiary acquisition.

b. Conducting forensic verification of all acquisitions via Digital Forensics software as available.

c. Upon completion of the forensic acquisition process, TransPerfect will extract for searching:

i. All available text messages/iMessages, direct messages, and Chats from native and third-party applications and convert them into Relativity Short Message Format ("RSMF") format, segmented into 24-hour periods.

ii. Calendar data

iii. Calls Logs

iv. Voicemails

v. Contacts

vi. Media (Pictures, Audio, Videos)

vii. Notes

viii. Documents

17. TransPerfect shall be entitled to make additional copies of any forensic image created under this Protocol for purposes of redundancy and disaster recovery.

18. If TransPerfect identifies encrypted containers, password managers, wallet applications, backup files, or other protected repositories, TransPerfect shall document their existence and request necessary access credentials from the Debtor and/or Hunter Penn, subject to any rights preserved by law and further Court order.

19. **Forensic Imaging Process**. Upon completion of the forensic imaging of any Protocol Hardware provided by the Debtor and/or Hunter Penn, TransPerfect shall provide notification to the parties of completion of imaging, as well as a complete list of the files that are contained in those images along with the file name, file path, date, and other relevant data fields. Such notice may be provided by email (the "Forensic Imaging Notification"). For the avoidance of doubt, the forensic imaging of any Protocol Hardware shall take place on a rolling basis and TransPerfect shall issue a Forensic Imaging Notification upon the completion of the forensic imaging of each item of Hardware.

20. Within fourteen (14) days of receiving the Forensic Imaging Notification, the Debtor and/or Hunter Penn shall notify PBTC and TransPerfect of which files the Debtor and/or Hunter Penn assert should be withheld on the basis of privilege, work-product protection, or on the ground that such file is non-responsive (the "Designated Materials"), along with a log containing a description of the Designated Materials to be withheld, the file name, file path, date, author, recipients, file type, hash value, and basis for withholding (the "Log"). For forensic artifacts or data fragments for which such information is not reasonably available, the Debtor

and/or Hunter Penn may provide a categorical log identifying the artifact type, source, and basis for withholding.

21. If PBTC disagrees with the withholding of any Designated Materials, PBTC shall identify any challenge to a withheld item to the Debtor and/or Hunter Penn in writing, and the Parties shall meet and confer within three (3) business days thereafter. If unresolved, any party may submit the dispute via ~~letter~~ motion to the Court within five (5) business days after the meet-and-confer, which ~~letter~~ motion may be heard on an expedited basis. Pursuant to Federal Rule of Evidence 502(d), production of privileged or work-product-protected information, whether inadvertent or otherwise, shall not constitute a waiver in this proceeding or in any other federal or state proceeding.

22. Within a commercially reasonable amount of time after the Debtor and/or Hunter Penn notifies PBTC and TransPerfect of the Designated Materials, TransPerfect shall deliver the forensic image of each item of Protocol Hardware to the parties, but shall not produce any Designated Materials. Any Designated Materials shall only be provided to PBTC upon order of the Court or with the consent of the parties. Productions shall be made in native format where reasonably practicable, together with reasonably available metadata, including source device, file path, file name, file extension, created/modified/accessed dates, hash value, and custodian/source. For artifacts not reasonably producible natively, TransPerfect may produce screenshots, reports, exports, or PDFs sufficient to show the content and relevant metadata.

23. There is no restriction on any party obtaining its own forensic examiner to review, analyze, and report, under protection of any applicable privilege, any materials produced to the parties by TransPerfect under this Protocol. No party's forensic examiner may access any full

forensic image except under the terms of this Protocol, any applicable protective order, and/or any further order of the Court resolving privilege, privacy, relevance, and security issues.

24. **Confidentiality Obligations of TransPerfect**. At all times from and after employment in connection with this Protocol, TransPerfect shall hold all documents and information provided to TransPerfect in connection with this Protocol in strict confidence and shall not divulge, disclose, or be in a position to inevitably disclose, or otherwise communicate, directly or indirectly, to any person or entity, any information, document or image accessed in connection with this Protocol, except as required in compliance with this Protocol or subsequent court order. TransPerfect shall not duplicate, copy, or remove any property or information accessed or obtained in connection with this Protocol, except as set forth under this Protocol or subsequent court order. TransPerfect shall not make or retain any copy, note, or other item intended to memorialize any such data or information, except as set forth under this Protocol.

25. No person, including TransPerfect, PBTC, the Debtor, Hunter Penn, or any forensic examiner, shall use any private key, seed phrase, recovery phrase, passphrase, wallet file, hardware wallet, exchange credential, two-factor authentication method, or other access mechanism discovered or provided under this Protocol to transfer, move, sell, pledge, encumber, conceal, alter, or otherwise exercise control over any digital asset, except upon further order of the Court or written agreement of the parties.

26. **Additional Provisions**.

a. All copies of the forensic images of the Protocol Hardware will be destroyed by TransPerfect at a time which the parties mutually agree that the imaged copies may be destroyed/deleted (the "Expiration Period"), as communicated to TransPerfect by joint written assent of counsel for the parties. When so directed, TransPerfect shall destroy/delete from TransPerfect's systems within thirty (30) days of the Expiration Period. TransPerfect will provide verification of the destruction of the imaged copies of the Protocol Hardware to counsel for the parties.

b. The parties will make all commercially reasonable efforts to facilitate this Protocol. Any party can petition the Court for some relief of fees and costs associated with this Protocol that it believes in good faith are commercially unreasonable or prohibitively expensive.

c. The inadvertent production or disclosure of any document in connection with the forensic examination described in this Order shall be without prejudice to any claim that such material is protected by any legally cognizable privilege or evidentiary protection including, but not limited to the attorney-client privilege, or the work product doctrine, and no party shall be held to have waived any rights by such inadvertent production.

d. Nothing contained in this Protocol shall affect or restrict the rights of any party with respect to its own documents or to information obtained or developed independently.

27. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: ___________________

________________________________________
JANET E. BOSTWICK
UNITED STATES BANKRUPTCY JUDGE

| **Summary report: Litera Compare for Word 11.10.0.38 Document comparison done on 8/28/2026 3:03:53 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4919-0729-9272/9/Kahan - Forensic Protocol.docx | |
| **Modified DMS:** nd://4919-0729-9272/10/Kahan - Forensic Protocol.docx | |
| **Changes:** | |
| Add | 5 |
| ~~Delete~~ | 5 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 10 |

**EXHIBIT C**

**From:** Jesse Redlener <jr@ascendantlawgroup.com>
**Sent:** Wednesday, August 26, 2026 9:51 AM
**To:** Fong, Christopher; Lee Harrington
**Cc:** Pedone, Richard; Nighan, Morgan
**Subject:** Re: In re Kahan - Hunter Penn Address and Revised Protocol

**[EXTERNAL E-MAIL]**
Be Aware of Links and Attachments

Chris:

This draft still does not address some of the concerns that I raised on our call yesterday. Morgan suggested and I concurred, that production of the various devises can and should be staged or staggered. That would be the least intrusive way to handle the turnover. I would further suggest that the company should come to him to the extent that is possible. I would also ask that we start with the devices and information in his possession at the time of the petition or earlier should go first and if that is unproductive, move to the postpetition information. You are looking to unlock the wallets, if you get that information from the first tranche of information, well done, your guys are wealthy beyond their wildest dreams and you don't need to upend the debtor's life more than you already have. The amount of time that you are providing to examine 13 years of data is simply insufficient. Again, if we stage it out, I can probably comply with the 14 day window but if this is terabytes of information as I suspect it will be, I just don't know how that is possible. We can discuss further on the call.

It is my understanding from the debtor that Hunter Penn's last known physical address is the Bel Air Inn in Springfield MA, you can look it up. His Telegram name is Alecolvi under the name Alex Colvin. That is how the debtor communicated with him. I have asked for additional contact information but that is all I have right now.

Best,
Jesse

**Jesse I. Redlener, Esq.**
**ASCENDANT LAW GROUP LLC**
2 Dundee Park Drive, Suite 102
Andover, MA 01810
jr@ascendantlawgroup.com
Main (978) 393-0850
Direct (978) 409-2038
Fax (978) 274-7877

---

**From:** Fong, Christopher <cfong@nixonpeabody.com>
**Sent:** Tuesday, August 25, 2026 5:10 PM
**To:** Jesse Redlener <jr@ascendantlawgroup.com>; Lee Harrington <lh@ascendantlawgroup.com>
**Cc:** Pedone, Richard <RPEDONE@nixonpeabody.com>; Nighan, Morgan <mnighan@nixonpeabody.com>
**Subject:** Re: In re Kahan - Hunter Penn Address and Revised Protocol

Jesse - Transperfect is able to join our 10 am call tomorrow. Let me know if you have any issues with having them on the call.

Chris

On Aug 25, 2026, at 4:19 PM, Fong, Christopher <cfong@nixonpeabody.com> wrote:

Jesse,

As a follow-up to our call, please provide Hunter Penn's contact information as soon as possible so we can properly serve him.

In addition, I've attached a revised version of the forensic protocol, along with a redline showing the changes that were made.

I am trying to see if Transperfect is available for our 10 am call tomorrow to discuss the specific issues you raised about the imaging process.

Regards,
Chris

---

**From:** Fong, Christopher
**Sent:** Monday, August 17, 2026 3:59 PM
**To:** Jesse Redlener <jr@ascendantlawgroup.com>; Lee Harrington <lh@ascendantlawgroup.com>
**Cc:** Pedone, Richard <RPEDONE@nixonpeabody.com>; Nighan, Morgan <mnighan@nixonpeabody.com>
**Subject:** In re Kahan - Hunter Penn Address

Jesse,

We have attempted to serve Hunter Penn at the two addresses listed below, but have been informed that Hunter no longer resides at either address:

1153 Elm Street
Apartment 3L
West Springfield, MA 01089

42 South St.
Plymouth, CT 06782-2315

The Debtor previously testified that he has been in recent contact with Hunter. Can you ask Jason if he knows Hunter's current address?

Thanks,
Chris

**Christopher J. Fong**
**Counsel**
cfong@nixonpeabody.com
T/ +1 212.940.3724 M/ +1 917.969.6795 F/ +1 855.900.8613

Nixon Peabody LLP
Tower 46, 55 West 46th Street, New York, NY 10036-4120
LinkedIn | Subscribe

This email message and any attachments are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you are not an intended recipient, please notify the sender immediately and delete the message from your email system. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful. Thank you.

**EXHIBIT D**


Alex Colvin
last seen recently
Hunter-This is Rick Pedone, a lawyer with Nixon Peabody. I represent PBTC LLC. We are in the process of obtaining a court order requiring you do take certain actions and produce communications and documents. Can you provide an email or other means we can deliver documents to you? There is a hearing tomorrow at 11:00 at the bankruptcy court in Boston. You can call me at +1 (617) 974-0195, or email me at rpedone@nixonpeabody.com.
11:04 AM
The hearing is in Judge Bostwick's courtroom on the 13th floor, 5 Post Office Square in Boston. If you would like to appear by zoom you can e-mail the court clerk for a zoom link atLisa_Belanger@mab.uscourts.gov
11:22 AM