**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11592-JEB |

**ORDER (I) GRANTING EXPEDITED MOTION OF PBTC RECOVERY PARTNERS, LLC PURSUANT TO BANKRUPTCY RULE 2004 SEEKING TO COMPEL DEBTOR AND HUNTER PENN TO PRODUCE HARDWARE RELATED TO ACQUIRED BITCOIN ASSETS AND (II) APPROVING PROTOCOL FOR FORENSIC INVESTIGATION AND ANALYSIS**

This matter came before the Court on the *Expedited Motion of PBTC Recovery Partners, LLC Pursuant to Bankruptcy Rule 2004 Seeking to Compel Debtor and Hunter Penn to Produce Hardware Related To Acquired Bitcoin Assets* ("Motion") filed by PBTC Recovery Partners, LLC ("PBTC"). The Court scheduled an emergency hearing on the Motion. Due notice of the hearing and Motion was given. The Debtor, Jason Kahan, filed an objection to the Motion.

The Court held a hearing on the Motion on August 12, 2026. After hearing the arguments of counsel, the Court entered the Proceeding Memorandum and Order dated August 12, 2026 ("August 12 Order"), granting the Motion in part and continuing the hearing to August 27, 2026. The August 12 Order permitted the parties to file a further supplement to their pleading. On August 27, 2026, in accordance with the Order, PBTC filed a supplement to the Motion ("First Supplement") setting forth a proposed forensic protocol.

The Court held a further hearing on August 27, 2026. In accordance with the order of the Court, on August 28, 2026, PBTC filed a further supplement ("Second Supplement"), which included a revised proposed order. The Second Supplement also stated that Hunter Penn is known under a number of other names and aliases, including Alex Colvin.

Having considered the Motion, the arguments of counsel, and the record of the Proceedings, good cause being shown.

**IT IS ORDERED THAT:**

1. The Motion, as supplemented by the First Supplement and the Second Supplement, is GRANTED as provided in this Order and the August 12 Order. All objections, including the objection of the Debtor, are overruled.

2. The August 12 Order remains in full force and effect.

3. The provisions of the August 12 Order and this Order regarding Hunter Penn shall apply with equal force to Hunter Penn and any alias or other name used by Hunter Penn including, without limitation, Alex Colvin.

4. As more fully set forth at the hearings, the Court deems the Motion a contested matter. In accordance with Bankruptcy Rule 9014 of the Code, Rule 7034 applies to this matter.

5. PBTC is authorized to serve subpoenas pursuant to Bankruptcy Rules 2004, 7034 and 9016 upon the Debtor and Hunter Penn (each separately referred to as an "Examinee") requiring the production of all computers, laptops, desktops, tablets, mobile phones, hardware wallets, external hard drives, thumb drives, SD cards, network-attached storage devices, backup drives, cloud-storage repositories, encrypted containers, memory storage devices, other electronic storage media, as well as any and all means to access such devices ("Hardware") within their respective possession, custody, or control that may contain information relating to the Bitcoin Assets (as defined in the Motion) acquired by PBTC pursuant to the *Order (I) Authorizing And Approving The Sale Of Certain Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (II) Granting Related Relief* [Docket No. 343] ("Sale Order").

6. The Debtor and Hunter Penn each have an independent obligation to comply with the terms of this Order and any subpoena issued pursuant to this Order.

**FORENSIC PROTOCOL**

7. **Scope**. The following protocol for forensic investigation and analysis ( "Protocol") shall govern the handling of inspection, imaging, copying, and preservation of all materials produced by the Debtor and Hunter Penn in response to the subpoenas issued by PBTC. This Protocol applies to Hardware and electronically stored information ("ESI") produced by the Debtor and Hunter Penn that may contain information relating to the Bitcoin Assets acquired by PBTC.

8. **Third-Party Forensic Investigator**. TransPerfect Document Management, Inc. or Chancery Staffing Solutions, LLC (d/b/a TransPerfect Staffing Solutions) (together, "TransPerfect") shall act as the third-party forensic investigator to create forensic images of the Hardware and to conduct forensic evaluations, as described below. PBTC shall be solely responsible for payment for TransPerfect's services consistent with this Protocol. TransPerfect may enter into separate joint agreements with PBTC and the Debtor and Hunter Penn, respectively, to ensure compliance with this Order and the provisions for custody and return. TransPerfect shall be engaged specifically for execution of the directives contained within this Protocol, and cannot be engaged or serve as an expert for any party. TransPerfect shall not offer or provide any opinions, or offer any analysis of data outside the limited scope of this Protocol, but may be called to testify at a deposition, hearing, or trial to explain those steps performed and those items, if any, uncovered in the course of the analysis. PBTC shall provide a copy of this Order to TransPerfect prior to any action required by TransPerfect in accordance with the Protocol set forth in this Order.

9. **<u>Identification of Hardware Subject to Protocol</u>**.

a. No later than three (3) calendar days after service of the subpoena issued pursuant to this Order, the Debtor and Hunter Penn shall each separately deliver to counsel for PBTC a certification under penalty of perjury ("Certification") regarding any Hardware in their possession, custody, or control that may contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order ("Protocol Hardware"). The Certification shall contain the following information regarding each item of the Protocol Hardware that an Examinee identifies:

| Device Type (Laptop, Tablet, etc.) | Brand | Make/Model | Operating System on Device | Storage Capacity |
|---|---|---|---|---|
| | | | | |
| | | | | |

b. In the Certification, each Examinee shall also identify (i) any Hardware in their possession, custody or control that the Examinee asserts does not contain information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order and thus is not being made available to TransPerfect pursuant to this Protocol; and (ii) any Hardware that may previously have contained information relating to the Bitcoin Assets acquired by PBTC pursuant to the Sale Order, but no longer contains such information or no longer is within the Examinee's possession, custody or control, along with a description of the circumstances that resulted in the Hardware no longer containing such information and no longer being within the Examinee's possession, custody or control. Each Examinee has a continuing obligation to notify PBTC of the discovery of any Hardware that may be subject to this Protocol.

10. **<u>Availability and Certification</u>**. No later than seven (7) days after an Examinee provides the certification to PBTC's counsel**,** the Examinee shall make their Protocol Hardware available to TransPerfect, which shall provide forensic services to fulfill execution of this Protocol. TransPerfect shall take possession of and create a forensic image of the respective Protocol Hardware. The imaging shall take place at TransPerfect's Boston Digital Forensics Laboratory at 1 Mill & Main Place, Suite 200, Maynard, MA.

11. **<u>Chain of Custody</u>**.

a. TransPerfect shall, with cooperation by the parties and any courier service, complete proper chain of custody documentation, which shall identify all persons who handled or transported the respective Protocol Hardware and any component

part thereof, and identify the locations and conditions under which the Protocol Hardware was provided to TransPerfect. All forensic images, extracted data, credentials, and productions shall be encrypted at rest and in transit. Access shall be limited to personnel reasonably necessary to perform work under this Protocol. TransPerfect shall maintain access logs and shall promptly notify PBTC and the affected Examinee of any suspected unauthorized access, disclosure, loss, or compromise.

b. TransPerfect shall return the respective physical Protocol Hardware to each Examinee within five (5) business days after completion and verification of the forensic imaging described below, unless continued retention is reasonably necessary to complete collection, address technical issues, or comply with further order of the Court.

12. **Debtor and Hunter Penn Cooperation with TransPerfect**.

a. The Debtor and Hunter Penn shall each separately provide all passwords, passcodes, decryption keys, access credentials, recovery phrases, two-factor authentication access, and other information necessary to access any of the Protocol Hardware that they provided in response to any subpoenas issued by PBTC, subject to any applicable privilege, Fifth Amendment, or other rights preserved by law and any further order of this Court.

b. Any credentials or authentication information provided by an Examinee shall be provided to TransPerfect only, shall be maintained in encrypted form, shall be used solely to access and collect data authorized by this Protocol, and shall not be disclosed to PBTC or included in any production absent further Court order or written consent of such Examinee.

13. **Preparation for Imaging**. Before imaging any Protocol Hardware, TransPerfect shall record the specifications, characteristics, and serial number identifiers (both physical and volume) for the Protocol Hardware to document its current physical condition and operability. Before imaging, TransPerfect shall properly prepare suitable forensic storage media ("Target Media") for receipt of any forensic images created through its execution of any directives under this Protocol by preparing a blank hard drive for receipt of forensic image (container) files.

14. **Forensic Image Specifications**.

a. Where possible, TransPerfect shall make one full forensic bit-stream copy of each piece of Protocol Hardware onto Target Media using a properly functioning forensic write-blocking device or software and an imaging device. For media and devices, TransPerfect shall make a forensic image by making a bit-for-bit

evidentiary image (or other comprehensive copy) of the Protocol Hardware using a procedure that is generally accepted as forensically sound. Based on the Motion as supplemented, generally accepted forensically sound procedures include, but are not limited to:

i. Removing the physical hard drive or other data storage component and attaching it to a forensic acquisition system that is running the operating system via a write blocker which will prevent any writing to the evidence drive.

ii. Using a specifically modified boot USB drive which boots the Protocol Hardware into an operating system designed for forensic collection of data.

iii. Removing the physical hard drive or other data storage component from Protocol Hardware and attaching it to a hardware-based forensic imager.

iv. In limited circumstances due to certain hardware/software restrictions, creating a live forensic image of the Protocol Hardware using forensic acquisition software.

v. The acquired image shall be written to a clean, wiped formatted and encrypted, hard drive. During this process, an MD5 Hash value for each evidence drive image will be computed and saved by the acquisition software.

vi. TransPerfect shall conduct forensic verification of all images made. The forensic verification process of the digital data shall be done by processing the evidence files to obtain a new MD5 Hash value for each image file. The MD5 Hash values generated during the verification process must match the MD5 Hash values generated by the acquisition process.

b. For cloud accounts and cloud-based data repositories, TransPerfect shall make an evidentiary copy of the data, by accessing the account using the credential of the respective account holder, the Debtor or Hunter Penn, and two-factor authentication, and using generally accepted forensically sound procedures to download all available data (including available metadata). TransPerfect shall access and collect all data on cloud accounts and cloud-based data repositories, create logical evidence files of the same, and include within the logical evidence file properties any and all information necessary to identify the original source of the virtual repositories. Each Examinee shall provide necessary usernames and passwords to TransPerfect to ensure prompt and full access to such repositories. TransPerfect shall access cloud repositories solely for collection purposes and shall not send communications, alter settings, delete or move data,

mark items as read where avoidable, or enable ongoing synchronization or monitoring, except as necessary to perform a defensible collection.

c. For mobile devices, TransPerfect shall make an evidentiary data acquisition (or other comprehensive copy as available) of the mobile device, using a procedure that is generally accepted as forensically sound for mobile device forensics. Each Examinee shall provide necessary passwords and credentials to TransPerfect to ensure prompt and full access to their mobile devices. Based on the Motion as supplemented, generally accepted forensically sound procedures include, but are not limited to:

i. Utilizing Cellebrite UFED, Cellebrite Premium, Magnet Verakey or similar mobile device forensic software to create the evidentiary acquisition.

ii. Conducting forensic verification of all acquisitions via Digital Forensics software as available.

iii. Upon completion of the forensic acquisition process, TransPerfect will extract for searching:

(a) All available text messages/iMessages, direct messages, and Chats from native and third-party applications and convert them into Relativity Short Message Format (“RSMF”) format, segmented into 24-hour periods.

(b) Calendar data

(c) Calls Logs

(d) Voicemails

(e) Contacts

(f) Media (Pictures, Audio, Videos)

(g) Notes

(h) Documents

d. TransPerfect shall be entitled to make additional copies of any forensic image created under this Protocol for purposes of redundancy and disaster recovery.

e. If TransPerfect identifies encrypted containers, password managers, wallet applications, backup files, or other protected repositories, TransPerfect shall document their existence and request necessary access credentials

from the appropriate party, the Debtor or Hunter Penn, subject to any rights preserved by law and further Court order.

15. **Forensic Imaging Process**.

a. Upon completion of the forensic imaging of any Protocol Hardware provided by an Examinee, TransPerfect shall provide notification to PBTC and the respective Examinee of the completion of imaging, as well as a complete list of the files that are contained in those images along with the file name, file path, date, and other relevant data fields. Such notice may be provided by email ("Forensic Imaging Notification"). For the avoidance of doubt, the forensic imaging of any Protocol Hardware shall take place on a rolling basis and TransPerfect shall issue a Forensic Imaging Notification upon the completion of the forensic imaging of each item of Hardware.

b. Within fourteen (14) days of receiving the Forensic Imaging Notification, each Examinee shall notify PBTC and TransPerfect of the files that such Examinee asserts should be withheld. Unless otherwise ordered by the Court, each Examinee may only seek to withhold files they produced, and may not challenge any files produced or delivered by the other Examinee. Unless otherwise ordered by the Court, an Examinee may only request to withhold files on the basis of privilege, work-product protection, or on the ground that such file is non-responsive ("Designated Materials"). The request shall include a log containing a description of the Designated Materials to be withheld, the file name, file path, date, author, recipients, file type, hash value, and basis for withholding ( "Log"). For forensic artifacts or data fragments for which such information is not reasonably available, the Examinee may provide a categorical log identifying the artifact type, source, and basis for withholding.

c. If PBTC disagrees with the withholding of any Designated Materials, PBTC shall identify any challenge to a withheld item in writing to the Examinee. Each of those parties shall meet and confer within three (3) business days thereafter. If unresolved, PBTC or the Examinee may submit the dispute via motion to the Court within five (5) business days after the meet-and-confer, and may request that the Motion be heard on an expedited basis. Unless otherwise ordered by the Court, the Court waives the requirement for the parties to request a premotion conference. Pursuant to Federal Rule of Evidence 502(d), production of privileged or work-product-protected information, whether inadvertent or otherwise, shall not constitute a waiver in this proceeding or in any other federal or state proceeding.

d. Within a commercially reasonable amount of time after an Examinee notifies PBTC and TransPerfect of the Designated Materials, TransPerfect shall deliver the forensic image of each item of Protocol Hardware to the parties, but shall not produce any Designated Materials. Any Designated Materials shall only be provided to PBTC upon order of the Court or with the consent of the respective Examinee and PBTC. Productions shall be made in native format where

reasonably practicable, together with reasonably available metadata, including source device, file path, file name, file extension, created/modified/accessed dates, hash value, and custodian/source. For artifacts not reasonably producible natively, TransPerfect may produce screenshots, reports, exports, or PDFs sufficient to show the content and relevant metadata.

e. There is no restriction on any party obtaining its own forensic examiner to review, analyze, and report, under protection of any applicable privilege, any materials produced to the parties by TransPerfect under this Protocol. No party's forensic examiner may access any full forensic image except under the terms of this Protocol, any applicable protective order, or any further order of the Court resolving privilege, privacy, relevance, and security issues.

16. **Confidentiality Obligations of TransPerfect**.

a. At all times from and after employment in connection with this Protocol, TransPerfect shall hold all documents and information provided to TransPerfect in connection with this Protocol in strict confidence and shall not divulge, disclose, or be in a position to inevitably disclose, or otherwise communicate, directly or indirectly, to any person or entity, any information, document or image accessed in connection with this Protocol, except as required in compliance with this Protocol or subsequent court order. TransPerfect shall not duplicate, copy, or remove any property or information accessed or obtained in connection with this Protocol, except as set forth under this Protocol or subsequent court order. TransPerfect shall not make or retain any copy, note, or other item intended to memorialize any such data or information, except as set forth under this Protocol.

b. No person, including TransPerfect, PBTC, the Debtor, Hunter Penn, or any forensic examiner, shall use any private key, seed phrase, recovery phrase, passphrase, wallet file, hardware wallet, exchange credential, two-factor authentication method, or other access mechanism discovered or provided under this Protocol to transfer, move, sell, pledge, encumber, conceal, alter, or otherwise exercise control over any digital asset, except upon further order of the Court or written agreement of the parties.

17. **Additional Provisions**.

a. All copies of the forensic images of the Protocol Hardware will be destroyed by TransPerfect at a time which the parties mutually agree that the imaged copies may be destroyed/deleted ( "Expiration Period"), as communicated to TransPerfect by joint written assent of counsel for the parties or as ordered by the Court. When so directed, TransPerfect shall destroy/delete from TransPerfect's systems within thirty (30) days of the Expiration Period. TransPerfect will provide verification of the destruction of the imaged copies of the Protocol Hardware to counsel for the parties.

b. The parties will make all commercially reasonable efforts to facilitate this Protocol. Any party can petition the Court for some relief of fees and costs associated with this Protocol that it believes in good faith are commercially unreasonable or prohibitively expensive.

c. The inadvertent production or disclosure of any document in connection with the forensic examination described in this Order shall be without prejudice to any claim that such material is protected by any legally cognizable privilege or evidentiary protection including, but not limited to the attorney-client privilege, or the work product doctrine, and no party shall be held to have waived any rights by such inadvertent production.

d. Nothing contained in this Protocol shall affect or restrict the rights of any party with respect to its own documents or to information obtained or developed independently.

18. PBTC shall by **September 9, 2026,** serve a copy of this Order on the Debtor and his counsel, TransPerfect, and Hunter Penn in a manner intended to provide immediate notice. Such service on Hunter Penn may be at the best-known address available to PBTC.

19. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: September 8, 2026

Janet E. Bostwick

JANET E. BOSTWICK
UNITED STATES BANKRUPTCY JUDGE